**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | ) | Case No. 20-30336 (DRJ) |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING, (II) ESTABLISHING PLAN AND DISCLOSURE STATEMENT OBJECTION AND REPLY DEADLINES AND RELATED PROCEDURES, (III) APPROVING THE FORM AND MANNER OF NOTICE OF COMMENCEMENT, (IV) APPROVING THE RIGHTS OFFERING PROCEDURES AND RELATED MATERIALS, (V) WAIVING THE REQUIREMENT THAT THE U.S. TRUSTEE CONVENE A MEETING OF CREDITORS, (VI) WAIVING THE REQUIREMENT THAT THE DEBTORS FILE SCHEDULES AND STATEMENTS, (VII) APPROVING THE FORM AND MANNER OF NOTICE OF BID DEADLINES AND AN AUCTION, AND (VIII) GRANTING RELATED RELIEF**

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY 23, 2020, AT 9:00 A.M. IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN THURSDAY, JANUARY 23, 2020.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):

a. scheduling a combined hearing (the "Combined Hearing") to consider (i) approval of the disclosure statement (the "Disclosure Statement") for the *Joint Chapter 11 Plan of Reorganization of McDermott International, Inc. and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), (ii) confirmation of the Plan, and (iii) approval of the sale (the "Sale"), and allowing the notice period for the Disclosure Statement and the Combined Hearing to run concurrently;[2]

b. establishing a deadline to file objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline"), and a deadline for the Debtors to reply thereto and file papers in support of approval of the Disclosure Statement and confirmation of the Plan (the "Reply Deadline") and for parties to file objections to the sale (the "Sale Objection Deadline");

c. approving the form and manner of notice of commencement of these chapter 11 cases and the Combined Hearing (the "Combined Notice");

d. approving the procedures and instructions for exercising Subscription Rights (as defined in the Plan) (the "Rights Offering Procedures"), related dates and deadlines (the "Rights Offering Dates and Deadlines"), and the form of materials necessary to the consummation of the Rights Offering under the terms of the Rights Offering Procedures, including (i) the Subscription Agreement; and (ii) the Subscription Form (collectively, the "Rights Offering Materials");

e. directing that the United States Trustee for the Southern District of Texas (the "U.S. Trustee") not convene a meeting of creditors (the "Creditors' Meeting") under section 341(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, provided that the Plan is confirmed within seventy-five (75) days of the Petition Date (as defined herein);

f. waiving the requirement that the Debtors file statements of financial affairs and schedules of assets and liabilities, provided that the Plan is confirmed within 75 days of the Petition Date;

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan and the Disclosure Statement, as applicable.

g. in connection with the Debtors' sale of the Lummus Assets and Interests (as defined herein), approving of the form of notice of certain dates and deadlines (collectively, the "Sale Dates and Deadlines"): and

h. granting related relief.

2. In connection with the foregoing, and subject to this Court's availability, the Debtors respectfully request that the Court approve the following schedule of proposed dates to govern approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Schedule"):

| Event | Date |
|---|---|
| Voting Record Date | **Friday, January 17, 2020** |
| Solicitation Launch | **Tuesday, January 21, 2020** |
| Petition Date | **Tuesday, January 21, 2020** |
| Voting Deadline | **Wednesday, February 19, 2020** |
| Objection Deadline | **Sunday, March 1, 2020** |
| Reply Deadline | **Monday, March 9, 2020** |
| Combined Hearing | **Friday, March 13, 2020** |

**Jurisdiction and Venue**

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), *Sections D, K, and L of the Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures"), Bankruptcy Rules 2002(b), 2002(d), 3016, 3017, and 3020, and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules").

6.     A detailed description of the relevant solicitation procedures is set forth in the *Affidavit of Service of Solicitation Materials* (the "Affidavit of Service") filed contemporaneously herewith.

7.     On January 21, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of David Dickson, President and Chief Executive Officer of McDermott International, Inc., in Support of the Chapter 11 Petitions* (the "Dickson Declaration") and the *Declaration of John R. Castellano, Chief Transformation Officer of McDermott International, Inc., in Support of the Debtors' First Day Motions* (the "Castellano Declaration," together with the Dickson Declaration, the "First Day Declarations"), filed contemporaneously with this Motion and incorporated by reference herein.

**Preliminary Statement**

8.     The Debtors have commenced these chapter 11 cases with a restructuring support agreement (the  "RSA") supported by more than 86% of the Debtors' prepetition letter of credit institutions, 85% of the Debtors' prepetition revolving lenders, 74% of the Debtors' prepetition term lenders, and  67% of the Debtors' prepetition senior note holders (collectively, the "Consenting Stakeholders").  The transactions described in and contemplated by the RSA and Plan will substantially deleverage the Debtors' balance sheet and provide the go-forward credit support to allow the Debtors to capitalize on their attractive project backlog and achieve their business

plan.  More specifically, the transactions described in and contemplated by the RSA, Plan, and

Disclosure Statement, and provide for, among other things:

a.    an aggregate $2.81 billion debtor in possession financing package provided by the Debtors' senior secured lenders, which includes $1.2 billion in new secured term loans, $543 million in incremental letter of credit capacity, and the "roll up" of the $800 million in superpriority term loans and $200 million in superpriority letters of credit;

b.    an agreement by the Debtors' senior secured term lenders to substantially equitize more than $3 billion in funded debt in exchange for 94% of the equity in the Reorganized Debtors (subject to certain adjustments) and $500 million in take back senior secured term loans;

c.    commitments from the Debtors' letter of credit issuing banks to (a) allow for the renewal of existing letters of credit (on existing terms) during these chapter 11 cases, (b) provide the incremental letter of credit capacity under the DIP Facility, and (c) provide for an aggregate of up to $2.44 billion in letter of credit capacity to support the Debtors' go-forward business on emergence from chapter 11 under three senior secured exit letter of credit facilities;

d.    the sale of the Lummus Technology Business for at least $2.725 billion, as set forth in the stalking horse purchase agreement entered into by the Debtors and The Chatterjee Group and Rhone Capital as stalking horse purchaser prior to the Petition Date, the proceeds of which will be used to (a) fund a minimum $820 million cash balance to support the Debtors' go-forward business and (b) repay the funded obligations under the DIP Facility;

e.    recovery for unsecured bondholders in form of 6% of the equity in the Reorganized Debtors and certain warrants (convertible into up to 20% of the equity in the Reorganized Debtors on a fully diluted basis);

f.    repayment in full or reinstatement of all unsecured trade claims;

g.    assumption of all project-related executory contracts (in some instances, as amended pursuant to agreement between the Debtors and the applicable customers);

h.    reinstatement and assumption of unsecured bi-lateral facility letter of credit obligations and surety obligations;

i.    payment in full in cash of all administrative and priority claims; and

j.    cancellation of all existing preferred and common equity interests.

9.     The Debtors commenced these chapter 11 cases to implement the transaction contemplated in the RSA, and believe that the proposed restructuring transactions are value-maximizing for all of the Debtors' stakeholders.  A right-sized capital structure will allow the Debtors to capitalize on their record backlog and achieve their business plan, ultimately maximizing value for the benefit of all stakeholders.  In addition, the compromises and settlements embodied in the RSA, and to be implemented pursuant to the Plan, preserve value by enabling the Debtors to avoid protracted, value-destructive litigation over potential recoveries and other causes of action that could delay the Debtors' emergence from chapter 11.  To that end, the Debtors have wasted no time and filed the Plan, a related Disclosure Statement, and a confirmation scheduling motion seeking a Combined Hearing on the Debtors' proposed Sale, Disclosure Statement, and Plan on Friday, March 13, 2020, subject to this Court's availability.

10.     Importantly, no parties in interest are prejudiced by the relief requested.  As set forth herein, the Debtors have complied or will comply with all notice requirements under the Bankruptcy Rules and Bankruptcy Local Rules, and are implementing a robust noticing program that ensures all stakeholders (including creditors receiving payment in full in the ordinary course) are given due process in these chapter 11 cases.  The Debtors provided all known holders of Claims in the Voting Class (as defined herein) as of the Voting Record Date with a Ballot (as defined herein) as well as a copy of the Plan and Disclosure Statement.  *See* Affidavit of Service ¶ 2. Notably, an "opt out box" is included in both the Ballots (as defined below) and the Notice of Non-Voting Status and Opportunity to Opt Out, meaning every known stakeholder, including unimpaired creditors and equity interest holders, has been, or will be, actually served with the means by which they can opt out of the Third-Party Release.

11. The Debtors intend to provide every known stakeholder with an expansive notice of the filing these chapter 11 cases as soon as practicable upon entry of the Order, which notice shall include a request that the Combined Hearing to consider approval of the Sale, Disclosure Statement, and confirmation of the Plan be held on Friday, March 13, 2020, subject to this Court's availability. The Notices[3] will also summarize the material terms of the Plan, including classification and treatment of claims, provided the full text of the release, exculpation, and injunction provisions in the Plan, and offered multiple methods by which stakeholders could obtain copies of the Plan, Disclosure Statement, and RSA in the format of their choosing. Further, the Auction Notice will apprise interested parties of the Debtors' proposed Sale.

12. The Debtors will serve the Notices on all parties in interest, and will publish the Publication Notice in full in the *New York Times* and the *Houston Chronicle* within seven business days following entry of the Order, or as soon as reasonably practicable thereafter. This Publication Notice will also be made available on the Debtors' chapter 11 website at https://cases.primeclerk.com/McDermott. Creditors will be given at least 40 days' notice of the proposed Objection Deadline of Sunday, March 1, 2020, and 52 days' notice of the proposed Combined Hearing on Friday, March 13, 2020. Significantly, these procedures comply with all of the required time periods under the Bankruptcy Code and the proposed Confirmation Schedule in this Motion does not change any parties' rights under the Bankruptcy Code.

13. Given their solicitation prior to the Petition Date and the robust noticing efforts to be implemented as soon as practicable following entry of the Order, and given the overwhelming support of their creditors as evidenced by the RSA, the Debtors respectfully submit that their

---

[3] "Notices" means, collectively, the notice attached to the Order as **Exhibit 1** (the "Combined Notice") and the notice attached to the Order as **Exhibit 2** (the "Publication Notice").

proposed Confirmation Schedule and Sale Dates and Deadlines are justified to preserve consensus and value for their stakeholders.

## I. Proposed Confirmation Schedule, Form and Manner of Solicitation and Notice.

### A. Noticing Program for the Combined Notice.

14. As soon as practicable following entry of the Order, the Debtors intend to mail, or cause to be delivered, to all known parties in interest (including all parties listed on the creditor matrix as of the Voting Record Date, which total approximately 273,000), as well as all securities holders of record as of the Voting Record Date, the Combined Notice, attached as **Exhibit 1** to the Order, which will inform recipients of (a) the Debtors' commencement of these chapter 11 cases on Tuesday, January 21, 2020, (b) the Court's approval of a combined hearing to consider approval of the Disclosure Statement and confirmation of the Plan on Friday, March 13, 2020 (subject to this Court's availability), (c) the key terms of the Plan, including classification and treatment of claims and interests, (d) key dates and information regarding approval of the Disclosure Statement and confirmation of the Plan and the Objection Deadline, (e) the methods by which parties may request copies of the Plan, Disclosure Statement, and Restructuring Support Agreement, and (f) the full text of the release, exculpation, and injunction provisions set forth in the Plan. Further, the Debtors will cause the Publication Notice, attached as **Exhibit 2** to the Order, to be published in full in *The New York Times* and the *Houston Chronicle* within seven business days following entry of the Order, or as soon as reasonably practicable thereafter. Both the Notices prominently note the various methods by which holders may obtain at no cost copies of the Plan and Disclosure Statement in paper or electronic form, at their election, thereby ensuring that any holder that wishes to review the documents may do so easily, quickly, and in their preferred format.

15. The Plan and Disclosure Statement describe in detail the transactions contemplated by the Plan and the recoveries provided for holders of claims and interests. The following chart summarizes the classes of claims and interests, their status, and voting rights:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Other Prepetition Financing Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 4 | Bilateral Facility Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 5 | 2021 Letter of Credit Claims | Impaired | Entitled to Vote |
| Class 6A | 2023 Letter of Credit Claims | Impaired | Entitled to Vote |
| Class 6B | Revolving Credit Claims | Impaired | Entitled to Vote |
| Class 6C | Term Loan Claims | Impaired | Entitled to Vote |
| Class 6D | Credit Agreement Hedging Claims | Impaired | Entitled to Vote |
| Class 7 | Cash Secured Letter of Credit Claims | Impaired | Entitled to Vote |
| Class 8 | Lloyds Letter of Credit Claims | Impaired | Entitled to Vote |
| Class 9 | Senior Notes Claims | Impaired | Entitled to Vote |
| Class 10 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 11 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 12 | Existing Equity Interests Other Than in McDermott | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 13 | Existing Preferred Equity Interests in McDermott | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 14 | Existing Common Equity Interests in McDermott | Impaired | Not Entitled to Vote (Deemed to Reject) |

### B. Notice Provided to Voting Classes

16. On Tuesday, January 21, 2020 ("Solicitation Launch"), the Debtors' solicitation agent, Prime Clerk LLC (the "Solicitation Agent"), distributed to holders of claims the Voting Classes as of Friday, January 17, 2020, the Voting Record Date, packages including the Disclosure

Statement filed contemporaneously herewith and the appropriate form of ballot (the "Solicitation Materials"). The Debtors, with the assistance of the Solicitation Agent, will complete a final tabulation of the Ballots and submit a final voting report following expiration of the proposed Wednesday, February 19, 2020, the Voting Deadline.

17. The Debtors will complete a final tabulation of the Ballots on Friday, March, 6, 2020. The Debtors' procedures and standard assumptions for tabulating Ballots include the following criteria for tabulating Ballots:

**Votes Not Counted**

- any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;
- any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court;
- any unsigned Ballot;
- any Ballot that partially rejects and partially accepts the Plan in a particular Voting Class;
- any Ballot not marked to accept or reject the Plan in a particular Voting Class or marked both to accept and reject the Plan in a particular Voting Class;
- any Ballot superseded by a later, timely submitted valid Ballot; and
- any improperly submitted Ballot.

**No Vote Splitting**

- Holders are required to vote all of their Claims in a particular Voting Class to either accept or reject the Plan and are not permitted to split any votes in a particular Voting Class.

**Establishing Claim Amounts**

- Holders must indicate the aggregate Claims amounts for each Voting Class in which the Holder votes Claims, as applicable.
- Upon return of a completed Ballot to the Solicitation Agent, the aggregate amounts of claims held in each Voting Class in which a Holder votes Claims as indicated on the Ballot shall be reconciled against the applicable lender registry for each Voting Class.
- To the extent that any discrepancy exists between the aggregate Claims amount as indicated on a Ballot by a Holder of Claims in one or more Voting Classes and the aggregate Claims amount as listed on the applicable lender registry for each Voting Class in which a Holder votes Claims, the aggregate Claims amount as listed on the applicable lender registry shall govern for tabulation purposes.

The Debtors reserved the right to, in their sole and absolute discretion, make any exception to any of the foregoing assumptions and criteria.

**C. Notice Provided to Non-Voting Classes**

18. As soon as practicable following entry of the Order, the Debtors will mail, or cause to be delivered, to approximately 273,000 parties on the creditor matrix and all equity holders of record as of the Voting Record Date, the Notice of Non-Voting Status and Opportunity to Opt Out, which will (a) inform recipients of their status as holders or potential holders of claims or interests in non-voting classes, (b) provide the full text of the release, exculpation, and injunction provisions set forth in the Plan, (c) included a form by which holders could elect to opt out of the Third-Party Release by checking a prominently featured and clearly labeled box, and (d) enclose a postage prepaid, return-addressed envelope in which holders could return their opt out elections to the Solicitation Agent.

19. The following chart summarizes the notices provided or to be provided to each stakeholder by the Debtors through their noticing program:

| Party | Type of Notice Provided / To Be Provided |
|---|---|
| **Impaired Voting Creditors** | • The Joint Ballot and, if in Class 9, a Master Ballot and Beneficial Ballots as appropriate<br>• The Disclosure Statement, which contained the following documents: the Plan, Restructuring Support Agreement, Corporate Organization Chart, Liquidation Analysis, Financial Projections, and Valuation Analysis<br>• Holders in Class 9 also received pre-addressed postage paid envelopes for return of ballots not otherwise submitted by a representative<br>• Following entry of the Order, the Combined Notice |

| Party | Type of Notice Provided / To Be Provided |
|---|---|
| **Unimpaired Non-Voting Creditors** | • Following entry of the Order, the Combined Notice<br>• Following entry of the Order, the Notice of Non-Voting Status and Opportunity to Opt Out, which details the non-voting status of the individual creditor and provides information regarding how to access relevant chapter 11 information and how to opt out of the Third-Party Release<br>    • The Opt Out Form, a form detailing the procedures to opt out of the Third-Party Release contained in the Plan<br>    • A pre-addressed postage paid envelope for the return of executed Opt Out Forms |
| **Impaired Equity Holders** | • Following entry of the Order, the Combined Notice<br>• Following entry of the Order, the Notice of Non-Voting Status and Opportunity to Opt Out, which details the non-voting status of the individual creditor and provides information regarding how to access relevant chapter 11 information and how to opt out of the Third-Party Release<br>    • The Opt Out Form, a form detailing the procedures to opt out of the Third-Party Release contained in the Plan<br>    • A pre-addressed postage paid return envelope for the return of executed Opt Out Forms |

## II. Proposed Rights Offering Procedures.[4]

20. In parallel with the plan solicitation process, the Debtors intend to commence the subscription process for the debt and equity rights offerings contemplated by the Plan. The Debtors will consummate a non-backstopped common equity Rights Offering providing for subscription rights to purchase up to $150 million of the New Common Stock valued at the Plan Equity Value and otherwise in accordance with the RSA and Rights Offering Procedures. As set forth in the Plan and the RSA, Consenting Stakeholders who are holders of Senior Notes Claims in Class 9

[4] Capitalized terms used in this section but not otherwise defined shall have the meanings ascribed to them in the *McDermott International, Inc. Rights Offering Procedures* (the "Rights Offering Procedures"), filed contemporaneously herewith as **Exhibit 3** to the Order. Additional information regarding the Debtors' proposed sale process, and the bidding procedures related thereto, may be found in the Bidding Procedures Motion.

(the "Consenting Noteholders") are entitled to participate in their pro rata portion of the Rights Offering.

21. To avoid the potential expense and delay of registering the securities to be issued pursuant to the Rights Offerings with the SEC during this chapter 11 cases, the Debtors will seek to issue the securities pursuant to the Rights Offerings in reliance on the registration exemptions set forth in section 4(a)(2) of the Securities Act of 1933 (the "Securities Act") and Regulation S promulgated thereunder. Thus, in simple terms, only certain investors are eligible to participate in the Rights Offerings. Pursuant to these registration exemptions, only Consenting Noteholders that qualify as "accredited" or "qualified" investors are eligible to participate in the rights offerings. The Debtors believe that all Consenting Noteholders are either Accredited or Qualified Investors.

22. Only Consenting Noteholders with Claims allowed prior to the expiration of the Rights Offering's subscription period shall be allowed to participate pursuant to the Plan and Rights Offering Procedures. The Rights Offering subscription rights are a component of the Consenting Noteholder consent fee set forth in section 12 of the RSA and was a key incentive to build consensus in these chapter 11 cases. In accordance with the RSA, the Subscription Expiration Deadline (as defined in the Rights Offering Procedures) for Consenting Holders to elect to participate in the Rights Offering is the Voting Deadline. For more information regarding subscription to the Rights Offerings, Consenting Noteholders should refer to the Rights Offering Procedures, the form of which is attached as **Exhibit 3** to the Order. The Rights Offering Procedures have been designed to efficiently transmit all materials necessary for participation in the Rights Offering in compliance with applicable bankruptcy and non-bankruptcy law. Moreover, the Subscription Agreement and the Subscription Form, the form of which are attached as **Exhibit 4A** and **Exhibit 4B**, respectively, are designed to assure the clear communication of the

requirements for, and to facilitate, such participation. In connection with the foregoing, the Debtors respectfully request that the Court approve the following schedule of proposed dates to govern the Rights Offering:

| Event | Date |
|---|---|
| Rights Offering Record Date | **Friday, January 17, 2020** |
| Subscription Commencement Date | **Friday, January 24, 2020** |
| Subscription Expiration Deadline | **Wednesday, February 19, 2020** |

23. The Rights Offering is a key component of the Debtors' proposed restructuring and a key source of value for eligible participants. The terms of the Rights Offerings have been extensively negotiated among the Debtors and the Consenting Stakeholders. Further, the Rights Offering Procedures afford Consenting Noteholders a fair and reasonable opportunity to participate in the Rights Offering. Accordingly, the Debtors request that the form and manner of the Rights Offering Materials be approved.

## III. Proposed Sale Schedule, Form and Manner of Sale Notice.[5]

24. In accordance with the Milestones and in consultation with the Consenting Stakeholders, the Debtors anticipate the following schedule (collectively, the "Sale Dates and Deadlines") for the Debtors' proposed marketing and sale process for the Lummus Technology business:

| Event | Date |
|---|---|
| Indication of Interest Deadline | **Wednesday, February 5, 2020** |
| Bidding Procedures Objection Deadline | **Tuesday, February 11, 2020** |

[5] Capitalized terms used in this section but not otherwise defined shall have the meanings ascribed to them in the *Debtors' Motion for Entry of (A) an Order (I) Approving the Bid Protections, (II) Approving Bidding Procedures for the Sale of the Lummus Assets and Interests, and (III) Approving Contract Assumption and Assignment Procedures, and (B) an Order Authorizing the Debtors to Enter into a Definitive Purchase Agreement Subject to Entry of the Confirmation Order* (the "Bidding Procedures Motion"), filed contemporaneously herewith. Additional information regarding the Debtors' proposed sale process, and the bidding procedures related thereto, may be found in the Bidding Procedures Motion.

| Event | Date |
|---|---|
| Bid Deadline | **Sunday, March 1, 2020** |
| Auction | **Friday, March 6, 2020** |
| Sale Objection Deadline | **Monday, March 9, 2020** |
| Combined Hearing | **Friday, March 13, 2020** |

25.    In light of the fact the Debtors contemplate than an Auction will take place approximately 45 days after the Petition Date and the bidding procedures related to the Lummus Technology business marketing and sale process will not be approved until the second day hearing in these chapter 11 cases, the Debtors seek approval of a form of notice of the Auction and key related dates and deadlines to give parties adequate notice and ability to participate in the process. To the extent these dates are later altered following the conclusion of the bidding procedures hearing, the Debtors will provide the appropriate supplemental notice.

26.    As soon as practicable after entry of the Order, the Debtors will cause a notice of the Debtors sale process and auction (if any), attached hereto as **Exhibit 5** (the "Auction Notice"), to be served on the following parties or their respective counsel, if known (collectively, the "Notice Parties"):  (a) the Office of the United States Trustee for the Southern District of Texas; (b) entities listed as holding the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Consultation Parties; (d) the agents for each of the Debtors' secured credit facilities, and counsel thereto; (e) the indenture trustee for each of the Debtors' unsecured notes, and counsel thereto; (f) the Office of the United States Attorney for the Southern District of Texas; (g) the state attorneys general for states in which the Debtors conduct business; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (k) counsel to the Stalking Horse Bidder; (l) all parties who have expressed a written interest in some or all of the

Lummus Assets and Interests; (m) all known holders of liens, encumbrances, and other claims secured by the Lummus Assets and Interests; (n) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.

27.     In addition, within seven business days following entry of the Order, or as soon as reasonably practicable thereafter, the Debtors will publish the Auction Notice, with any modifications necessary for ease of publication, in *The New York Times (National Edition)* to provide notice to any other potential interested parties.

28.     The Debtors submit that the Auction Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Sale, including (a) the date, time, and place of the Auction (if one is held); (b) the proposed Bidding Procedures and the dates and deadlines related thereto; (c) the Sale Objection Deadline; (d) reasonably specific identification of the Lummus Assets and Interests; (e) instructions for promptly obtaining a copy of the Stalking Horse Purchase Agreement and the Definitive Purchase Agreement; (f) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances with respect to the Lummus Assets and Interests which are currently property of the Debtors' estates, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; and (g) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors.

29.     Accordingly, the Debtors request that the form and manner of the Sale Notice be approved and that the Court determine that no other or further notice of the Sale is required.

## Basis for Relief

### I. The Confirmation Schedule Complies with Applicable Bankruptcy Law.

30. Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."

31. Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary." Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

32. The Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan. *See* 11 U.S.C. §§ 1125(g) (allowing the prepetition solicitation of votes through non-bankruptcy law); 105(d)(2)(B)(vi) (authorizing the Court to combine a hearing on approval of a disclosure statement with the confirmation hearing). In addition, Section L of the Procedures for Complex Chapter 11 cases in the Southern District of Texas (the "Complex Chapter 11 Procedures") allows the Court to combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan, upon the consideration of certain factors, including: (a) whether it is important to the success of the reorganization that the case move expeditiously; (b) the terms and complexity of the proposed plan; (c) the extent to which the proposed plan is consensual; and (d) whether a class treated under section 1129(b) of the Bankruptcy receives due process if not given 25 days' notice of the Disclosure Statement and

a subsequent 25 days' notice of a confirmation hearing.  The Complex Chapter 11 Procedures allow the Court to combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan, so long as contemporaneously with the filing of a disclosure statement and proposed plan, a plan proponent files a motion requesting:  (a) final approval of the balloting and voting procedures to be utilized; (b) final approval of the form of notice to be provided to creditors and holders of interests; (c) final approval of the form of ballot which will be provided to creditors and interest holders entitled to vote on the proposed plan; (d) establishment of a record date pursuant to Bankruptcy Rules 3017(d) and 3018(a); and (e) establishment of a voting deadline—as this Motion does.

33.     The Debtors request that the Court approve the proposed Confirmation Schedule. The Debtors also request that the Court require that objections to the Disclosure Statement or confirmation of the Plan must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties (as defined herein) so as to be actually received by the Objection Deadline.

34.     The Debtors respectfully submit that the proposed Confirmation Schedule is reasonable and appropriate because it is in compliance with the applicable sections of the Bankruptcy Code and the Bankruptcy Rules and satisfies the standard under the Complex Chapter 11 Procedures for concurrent notice periods.

35. ***First***, the proposed Voting Deadline of Wednesday, February 19, 2020, 2020 is 29 calendar days and 21 business days after Solicitation Launch, and the proposed Objection Deadline which is in compliance with the time periods required by statute.

36. ***Second,*** the Debtors have commenced these chapter 11 cases with a RSA supported by approximately 86% of the Debtors' prepetition letter of credit institutions, 85% of the Debtors' prepetition revolving lenders, 74% of the Debtors' prepetition term lenders, and 67% of the Debtors' prepetition senior note holders, who have all committed to support the Debtors' Plan.

37. ***Third,*** concurrent notice periods will permit the Debtors to achieve the milestones set forth in the RSA which were heavily negotiated between the Debtors and the Consenting Stakeholders, a key inducement and factor for the creditors' support and intended to preserve value for the Debtors' creditors by reducing the administrative costs of a chapter 11 proceeding. Failure to meet the milestones would permit the Consenting Stakeholders to terminate the RSA and withdraw their support of and their votes to accept the Plan. Without the RSA and the consents obtained thereby, the Debtors may not readily be able to confirm a Plan. Therefore, the Debtors believe concurrent notice periods to permit the Combined Hearing to take place, as proposed, on Friday, March 13, 2020 is essential to the success of the reorganization.

38. ***Finally***, as described herein and in Affidavit of Service, the Debtors implemented a fulsome solicitation plan that provided, or will provide, creditors in Voting Classes with sufficient information to vote to accept or reject the Debtors' Plan, including the third-party releases, and the opportunity to opt out of such releases. *See* Affidavit of Service ¶ 2. As soon as practicable following entry of the Order, the Debtors intend to implement a robust noticing plan that will provide the approximately 273,000 parties on the creditor matrix and all equity holders

as of the Voting Record Date with actual notice of the Combined Hearing, the material terms of the Plan, the third-party releases, and the opportunity to opt out of such releases.

39.     Courts in this district have approved confirmation schedules that provide for concurrent notice periods under appropriate circumstances, including with shorter notice periods than that provided for here. *See, e.g.*, *In re Jones Energy Holdings*, 19-32112 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2019) (scheduling a combined hearing 22 days after notice was provided); *In re Ameriforge Group Inc.*, No. 17-32660 (DRJ) (Bankr. S.D. Tex. May 1, 2017) (scheduling a combined hearing 28 days after notice was provided); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. Mar. 29, 2016) (scheduling combined hearing approximately 21 days after notice was provided).[6]

40.     For the foregoing reasons, the Debtors believe the Confirmation Schedule is reasonable, appropriate, in compliance with the applicable rules, and, most importantly, gives due process to all of their stakeholders.

## II.     Approval of the Disclosure Statement at the Combined Hearing.

41.     The Debtors will request that, at the Combined Hearing, the Court find that the Disclosure Statement contains "adequate information" as defined in section 1125(a) of the Bankruptcy Code. *See* 11 U.S.C. § 1126(b)(2) (because there is no nonbankruptcy law governing the solicitation of claim and interest holders prior to the Debtors commencing these chapter 11 cases, such solicitation must have been based on the Debtors providing such holders "adequate information").

---

[6]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

42. The Disclosure Statement contains adequate information because it is extensive and comprehensive. What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable parties to vote in an informed way, and that standard is easily met here.[7] Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation:

| **Category** | **Description** | **Location in Disclosure Statement** |
|---|---|---|
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article V; Exhibit C |
| Events Leading to the Chapter 11 Filings | An overview of the Debtors' out-of-court restructuring efforts in response to deteriorating economic conditions, including the negotiations with respect to the Plan and the RSA. | Article VI |
| The Debtors' RSA and Plan | An overview of the terms of Debtors' RSA and Plan | Article IV; Exhibit A; Exhibit B |
| Material Developments and Anticipated Events of the Chapter 11 Cases | A summary of the projected course of events in the chapter 11 cases. | Article VII |
| Projected Financial Information | A projected consolidated income statement. | Exhibit E |
| Valuation Analysis | A valuation of the post-Confirmation going concern value of the Debtors. | Exhibit F |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. | Exhibit D |
| Risk Factors | Certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article VIII |

[7] *See* 11 U.S.C. § 1125(a)(1); *see also Mabey v. SW Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.),* 150 F.3d 503, 518 (5th Cir. 1998) (Courts are vested with wide discretion to determine whether a disclosure statement contains "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan") (internal quotations omitted); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (The determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case).

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Solicitation, and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article IX |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, including a liquidation analysis, financial projections, and a valuation. | Article X; Exhibit D; Exhibit E; Exhibit F |
| Certain Securities Laws Matters | A description of the applicability of section 1145 of the Bankruptcy Code and the issuance of New Common Stock and other Securities under the Plan. | Article XI |
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law and Bermuda tax law consequences of the Plan. | Article XII |
| Recommendation | A recommendation by the Debtors that holders of Claims in the Voting Classes should vote to accept the Plan. | Article XIII |

Further, the Disclosure Statement contains an extensive description of the Debtors' prepetition marketing process for the Technology Business Sale and competing bids received to date.

43. In addition, and as noted above, the Disclosure Statement and the Plan were subject to extensive review and comment by the Consenting Stakeholders. Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

## III. Approval of the Form and Manner of the Notice.

44. The Debtors request approval of the Combined Notice, substantially in the form of **Exhibit 1** attached to the Order. In accordance with Bankruptcy Rules 2002 and 3017(d), the Combined Notice will: (a) provide notice of the commencement of these chapter 11 cases; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Combined Hearing; (d) disclose the date and time of the Objection Deadline and the procedures for objecting to the

Disclosure Statement and the Plan; and (e) provide the record date for receiving distributions under the Plan.

45. The Combined Notice will be served upon the Debtors' creditor matrix and all Holders of Claims and Interests of record, which service will occur as soon as practicable after the Court's approval of the Combined Notice. The Combined Notice likewise will be served upon the Notice Parties (as defined herein).

46. Bankruptcy Rule 2002(l) also permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Prior to the Combined Hearing, the Debtors propose to publish a notice, substantially in the form attached to the Order as **Exhibit 2**, in the *New York Times* and the *Houston Chronicle* within seven business days following entry of the Order, or as soon as reasonably practicable thereafter (the "Publication Notice"). In addition, the Publication Notice will be available on the Debtors' chapter 11 website at https://cases.primeclerk.com/McDermott. The Debtors believe that the Publication Notice will provide sufficient notice of the pending approval of the Disclosure Statement, the Combined Hearing, and the Objection Deadline to entities who will not otherwise receive notice by mail as provided herein and through the Solicitation Procedures.

## IV. Approval of the Rights Offering Procedures.

47. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In the Fifth Circuit, bankruptcy courts have authorized the use or sale of property of the estate outside the ordinary course of business when such use or sale is grounded upon a "sound business purpose" and is proposed in good faith. *See, e.g., Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy

its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).   Once a debtor articulates a valid business justification under section 363, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company.  *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) (holding that the 'business judgment test' "requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment"); *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008).  Further, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp., (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

48.     As described in the Disclosure Statement, the Rights Offering is a key component of the Plan.  The Debtors submit that the approval of the Rights Offering Procedures and the Rights Offerings Materials are necessary to the successful effectuation of the Rights Offering and provide

Eligible Holders (as defined in the Rights Offering Procedures) a fair and reasonable opportunity to participate in the Rights Offering. Thus, Debtors believe that approval of the Rights Offering Procedures and the Rights Offering Materials is in the best interests of their estates and creditors and an appropriate exercise of business judgment.

49. Moreover, under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In essence, the Court may enter an order that safeguards the value of the debtor's estate if doing so is consistent with the Bankruptcy Code. *See e.g.*, *Chinichian v. Campolongo* (*In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (acknowledging that "the [b]ankruptcy [c]ourt is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

50. Moreover, courts have approved rights offerings procedures at the first day hearing commenced postpetition pursuant to a prepackaged plan. *See, e.g.*, *In re Halcón Res. Corp.*, No. 19-34446 (DRJ) (S.D. Tex. Aug. 9, 2019) (approving postpetition rights offering procedures as part of first day relief along with the combined prepackaged hearing schedule); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S.D. Tex. July 2, 2019) (same); *In re Fieldwood Energy LLC*, No. 18-30648 (DRJ) (Bankr. S.D. Tex. Feb. 16, 2018) (same).

51. To the extent that approval of the Rights Offerings Procedures and the Rights Offerings Materials is necessary to effectuate consummation of the Plan—which represents the

Debtors' best means of maximizing the value of their estates—the Debtors believe that the Court's application of section 105(a) of the Bankruptcy Code here is appropriate.

## V. Cause Exists to Waive the Requirement that the U.S. Trustee Convene a Meeting of Creditors or Equity Holders

52. The Debtors respectfully submit that the circumstances of these chapter 11 cases merit a conditional waiver of the requirements that the U.S. Trustee convene a Creditors' Meeting. This relief is appropriate because the Plan already carries the support of the majority of the Voting Classes and will satisfy all General Unsecured Claims in full.

53. Section 341 of the Bankruptcy Code allows a court to waive the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and solicited acceptances of a plan prior to the commencement of a chapter 11 case. More specifically, section 341(e) of the Bankruptcy Code provides that:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).

54. The Debtors filed the Plan contemporaneously with this Motion on the Petition Date, and the Debtors commenced solicitation of votes to accept or reject the Plan on Tuesday, January 21, 2020, prior to the Petition Date, thereby satisfying the threshold statutory requirement.

55. Cause exists to waive the section 341 meeting as set forth herein because unsecured creditors holding allowed Claims, other than Senior Notes Claims, will be paid in full under the Plan and other "first day" relief sought by the Debtors. In addition, Holders of Claims entitled to vote on the Plan will not be harmed because they were adequately represented by sophisticated counsel during the Plan negotiation process, which lasted more than three months. The RSA,

moreover, requires the Debtors to confirm the Plan within a prescribed timeframe, the failure of which could jeopardize the current support for the Plan.  The Debtors thus respectfully submit that such creditors are not prejudiced by the lack of a Creditors' Meeting.  A section 341 meeting may force the Debtors to delay the Combined Hearing, thereby causing additional administrative expenses and professional fees to the detriment of the Debtors' estates.  For these reasons, the Debtors submit that sufficient cause exists to waive the requirement of a section 341 meeting as set forth herein.

56.     Courts in this district have frequently waived the requirements for the U.S. Trustee to convene a Creditors' Meeting.  *See, e.g.*, *In re Sheridan Holding Company II, LLC*, No. 19-35198 (MI) (Bankr. S.D. Tex. Sept. 16, 2019) (waiving section 341 meeting if plan confirmed within 60 days of the petition date); *In re Jones Energy, Inc.*, No. 19-32112 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2019) (waiving section 341 meeting if plan confirmed within 36 days of the petition date); *In re Gastar Exploration, Inc.*, No. 18-36057 (MI) (Bankr. S.D. Tex. Nov. 13, 2018) (waiving section 341 meeting if plan confirmed within 75 days of the petition date); *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 14, 2017) (same); *In re Forbes Energy Servs. Ltd.*, No. 17-20023 (DRJ) (Bankr. S.D. Tex. Jan. 25, 2017) (same).  For the reasons discussed above, similar relief is appropriate in these chapter 11 cases as well.

57.     Accordingly, the Debtors respectfully request that the Order provide that if the Plan is confirmed on or before 75 days after the Petition Date, the Creditors' Meeting will be waived without further order of the Court.

58.     The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extension or modification of the requirements for the U.S. Trustee to convene a Creditors' Meeting.  The Debtors also request that the Court authorize the Debtors to

further extend the deadline to convene a Creditors' Meeting without filing a supplemental motion, and without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

**VI. Cause Exists to Waive the Requirement that the Debtors File Schedules and SOFAs.**

59. The Debtors request that the time for filing their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "SOFAs") be extended until the day that is 75 days after the Petition Date and be waived in the event the Plan is confirmed on or prior to that date.

60. The Court has authority to grant an extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Bankruptcy Local Rule 1007-l(b). Here, cause exists to extend the deadline because requiring the Debtors to file Schedules and SOFAs would distract the Debtors' management and advisors from the work of ensuring a smooth transition into these chapter 11 cases and an expedited confirmation of the Plan, which is necessary in light of the RSA Milestones. Given the prepackaged nature of these chapter 11 cases, the Schedules and SOFAs would also be of limited utility to most parties in interest—the Debtors have already commenced solicitation and obtained acceptances necessary to confirm the Plan. The minimal benefit of requiring the Debtors to prepare the Schedules and SOFAs will be significantly outweighed by the substantial expenditure of time and resources the Debtors will be required to devote to the preparation and filing of the documents. Furthermore, the Debtors have already provided substantial diligence to their lenders' advisors during the Plan negotiation process and stand ready to respond to additional diligence requests, thereby making the requirement to file Schedules and SOFAs duplicative. For these reasons, the Court should only require on a contingent basis that the Debtors to file SOFAs and Schedules if the Plan is not confirmed on or before 75 days following the Petition Date.

61.     Courts in this district have frequently waived the requirements for a debtor to file Schedules and SOFAs in other prepackaged chapter 11 cases.  *See, e.g.*, *In re Sheridan Holding Company II, LLC*, No. 19-35198 (MI) (Bankr. S.D. Tex. Sept. 16, 2019) (waiving the requirement for the debtors to file Schedules and SOFAs if the plan confirmed within 75 days of the petition date); *In re Jones Energy, Inc.*, No. 19-32112 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2019) (waiving the requirement for the debtors to file Schedules and SOFAs if the plan confirmed within 23 days of the petition date); *In re Gastar Exploration, Inc.*, No. 18-36057 (MI) (Bankr. S.D. Tex. Nov. 13, 2018) (waiving the requirement for the debtors to file Schedules and SOFAs if the plan confirmed within 57 days of the petition date); *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 14, 2017) (same); *In re Forbes Energy Servs. Ltd.*, No. 17-20023 (DRJ) (Bankr. S.D. Tex. Jan. 25, 2017) (same).  For the reasons discussed above, similar relief is appropriate in these chapter 11 cases as well.

62.     Accordingly, the Debtors respectfully request that the Order provide that if the Plan is confirmed on or before 75 days following the Petition Date, the Creditors' Meeting will be waived and the Debtors will be excused from filing the SOFAs and Schedules, in each case without further order of the Court.

63.     The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extension or modification of the requirements for the U.S. Trustee to convene a Creditors' Meeting and for the Debtors to file Schedules and SOFAs.  The Debtors also request that the Court authorize the Debtors to further extend the deadline to convene a Creditors' Meeting and file Schedules and SOFAs without filing a supplemental motion, and without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

**VII. The Form and Manner of the Sale Notice Should Be Approved.**

64. Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide their creditors with 21-days' notice of a hearing where the Debtors will seek to use, lease, or sell property of the estate outside the ordinary course of business. Bankruptcy Rule 2002(c) requires any such notice to include the time and place of the auction and the hearing and the deadline for filing any objections to the relief requested therein. The proposed Sale Dates and Deadlines comply with all of the required time periods under the Bankruptcy Rules the proposed Sale Dates and Deadlines in this Motion does not change any parties' rights under the Bankruptcy Code. As required under Bankruptcy Rule 2002(b), the Debtors seek approval of the Sale Notice as proper notice of the Auction.

65. The Debtors submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Notice, as provided for herein, constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. Accordingly, the Debtors request that this Court approve the form and manner of the Sale Notice, and the Sale Dates and Deadlines.

**Emergency Consideration**

66. Pursuant to Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first

21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

67. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Notice**

68. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties in interest, including: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) entities listed as holding the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) Credit Agricole Corporate and Investment Bank, 1301 Avenue of the Americas, New York, New York 10019, Attn: Ronald E. Spitzer, Kathleen Sweeney and Yuri Tsyganov, as proposed DIP LC Agent and as proposed DIP Collateral Agent (each as defined in the DIP Credit Agreement) under the DIP Credit Agreement, as Revolving Administrative Agent and as Collateral Agent (the "Revolving Administrative Agent") under that certain Superpriority Senior Secured Credit Agreement, dated as of October 21, 2019, and as Revolving and LC Administrative Agent and as Collateral Agent (the "Revolving and LC Administrative Agent") under that certain Credit

Agreement, dated as of May 10, 2018; (d) Linklaters LLP, 1345 Avenue of the Americas, New York, New York 10105, Attn: Margot Schonholtz, Esq. and Penelope Jensen, Esq., counsel to the proposed DIP LC Agent, the proposed DIP Collateral Agent, the Revolving Administrative Agent and the Revolving and LC Administrative Agent; (e) Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002, Attn: William A. (Trey) Wood III, Esq., co-counsel to the proposed DIP LC Agent, the proposed DIP Collateral Agent, the Revolving Administrative Agent and the Revolving and LC Administrative Agent; (f) the indenture trustee for each of the Debtors' unsecured notes, and counsel thereto; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Ave, New York, NY 10019, Attn: Andrew N. Rosenberg and Alice Belisle Eaton, and Brown Rudnick LLP, 7 Times Square, New York, NY 10036, Attn: Robert J. Stark and Bennett S. Silverberg, co-counsel to the Ad Hoc Group of Senior Noteholders; (h) Davis, Polk & Wardell LLP 450 Lexington Ave, New York, NY 10017, Attn: Damian Schaible and Natasha Tsiouris, counsel to the Ad Hoc Group of Term Lenders; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
January 22, 2020

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
jwertz@jw.com
kpeguero@jw.com
vpolnick@jw.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christopher T. Greco, P.C. (*pro hac vice* pending)
Anthony R. Grossi (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com
christopher.greco@kirkland.com
anthony.grossi@kirkland.com

-and-

James H.M. Sprayregen, P.C.
John R. Luze (*pro hac* vice pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on January 22, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh