# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | ) Case No. 20-30336 (DRJ) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |
|  | ) **Re: Docket No. __** |

**ORDER (I) SCHEDULING A COMBINED DISCLOSURE
STATEMENT APPROVAL AND PLAN CONFIRMATION
HEARING, (II) ESTABLISHING PLAN AND DISCLOSURE
STATEMENT OBJECTION AND REPLY DEADLINES AND RELATED
PROCEDURES, (III) APPROVING THE FORM AND MANNER OF NOTICE
OF COMMENCEMENT, (IV) APPROVING THE RIGHTS OFFERING PROCEDURES
AND RELATED MATERIALS, (V) WAIVING THE REQUIREMENT THAT THE
U.S. TRUSTEE CONVENE A MEETING OF CREDITORS, (VI) WAIVING THE
REQUIREMENT THAT THE DEBTORS FILE SCHEDULES AND STATEMENTS,
(IX) APPROVING THE FORM AND MANNER OF NOTICE OF BID DEADLINES
AND AN AUCTION, AND (VII) GRANTING RELATED RELIEF**

Upon the emergency motion (the "Motion")[2] of the above-captioned debtors and debtors

in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (a) approving the

Confirmation Schedule; (b) approving the form and manner of notice of commencement of these

chapter 11 cases and the Combined Hearing (the "Combined Notice"); (c) directing that the U.S.

Trustee not convene a Creditors' Meeting under section 341(e) of the Bankruptcy Code, all as

more fully set forth in the Motion; (d) waiving the requirement that the Debtors file statements of

financial affairs and schedules of assets and liabilities, provided that the Plan is confirmed within

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
     proposed claims and noticing agent at https://cases.primeclerk.com/McDermott.  The location of Debtor
     McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11
     cases is 757 North Eldridge Parkway, Houston, Texas 77079.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

75 days of the Petition Date; (e) approving form of notice of the Sale Dates and Deadlines; and (f) approving the Rights Offering Procedures; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Combined Hearing, at which time this Court will consider, among other things, the adequacy of the Disclosure Statement, confirmation of the Plan, and approval of the Sale, shall be held on **Friday, March 13, 2020, at [____] a./p.m., prevailing Central Time**.

2.      Any objections to adequacy of the Disclosure Statement and confirmation of the Plan shall be filed on or before **Sunday, March 1, 2020, at 4:00 p.m., prevailing Central Time**.

3.      Any brief in support of confirmation of the Plan and reply to any objections shall be filed on or before **Monday, March 9, 2020, at 4:00 p.m., prevailing Central Time**.

4.      Any objections to the Disclosure Statement or confirmation of the Plan must:

a.      be in writing;

b.      comply with the Bankruptcy Rules and the Local Rules;

c.      state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity;

d.      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

e.      be filed with this Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

5.      Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled.

6.      The form of the Combined Notice, substantially in the form attached hereto as **Exhibit 1** and the Publication Notice, substantially in the form attached hereto as **Exhibit 2**, and service thereof, comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules and are approved.

7.      The Debtors are authorized to enter into transactions to cause the Publication Notice to be published in the *New York Times* and the *Houston Chronicle* within seven business days following entry of this Order, or as soon as reasonably practicable thereafter, and to make reasonable payments required for such publication.  The Publication Notice, together with the Combined Notice provided for in the Motion, is deemed to be sufficient and appropriate under the circumstances.

8.      The U.S. Trustee need not and shall not convene a meeting of creditors or equity Holders pursuant to section 341(e) of the Bankruptcy Code unless the Plan is not confirmed on or before 75 days following the Petition Date, without prejudice to the Debtors' right to request further extension thereof.

9.      Cause exists to extend the time by which the Debtors must file the Schedules and SOFAs until 75 days following the Petition Date without prejudice to the Debtors' rights to request further extensions thereof.

10.      The Rights Offering Procedures attached hereto as **Exhibit 3** are approved.

11.      The form of the Subscription Agreement attached hereto as **Exhibit 4A** is approved.

12.      The form of the Subscription Form attached hereto as **Exhibit 4B** is approved.

13.      The Debtors may modify the Rights Offering Procedures or adopt any additional detailed procedures, consistent with the provisions of the Rights Offering Procedures, to effectuate the Rights Offering and to issue the Rights Offering Shares.

14.      The following dates and deadlines regarding the Rights Offering are hereby established, subject to the right of the Debtors to modify the following dates:

     i.      Rights Offering Record Date:  **Friday, January 17, 2020**, as the record date for determining holders entitled to participate in the Rights Offering (the "Rights Offering Record Date");

     ii.      Subscription Commencement Date:  **Friday, January 24, 2020**, as the start of the subscription period; and

     iii.      Subscription Expiration Deadline:  **Wednesday, February 19, 2020, at 4:00 p.m. Central Time**, as the Subscription Expiration Deadline.

15.      The Auction Notice, substantially in the form attached hereto as **Exhibit 5**, is hereby approved.  As soon as practicable after entry of this Order, the Debtors shall serve the Auction Notice upon the Notice Parties.  In addition, as soon as practicable after entry of this Order, the Debtors will publish the Auction Notice, with any modifications necessary for ease of publication, in *The New York Times (National Edition)* to provide notice to any other potential interested parties.

16.      Notwithstanding the relief granted in this Order, nothing in this Order, or any action taken in accordance herewith, shall be deemed: (a) an admission as to the validity of any

prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

17.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

19.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

20.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated: _____, 2020

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT 1</u>**

**Combined Notice**



Dated as of January [●], 2020

<u>Subject</u>:  **Announcement of Restructuring Support Agreement, Summary of Plan of Reorganization, Information Regarding Key Dates and Certain Other Matters.**

To Whom It May Concern:

On Tuesday, January 21, 2020, after engaging in extensive, arm's-length, good-faith negotiations, McDermott International, Inc. and certain of its affiliates and subsidiaries (collectively, "<u>McDermott</u>" or the "<u>Company</u>")[1] and more than 86% of the Debtors' prepetition letter of credit institutions, 85% of the Debtors' prepetition revolving lenders, 74% of the Debtors' prepetition term lenders, and  67% of the Debtors' prepetition senior note holders (collectively, the "<u>Consenting Stakeholders</u>") entered into a restructuring support agreement (the "<u>Restructuring Support Agreement</u>") that contemplates a comprehensive balance sheet restructuring to be implemented through a prepackaged chapter 11 plan (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "<u>Plan</u>").[2]   The parties to the Restructuring Support Agreement include, among others: (i) McDermott, represented by Kirkland & Ellis LLP and Jackson Walker L.L.P., (ii) an ad hoc group of holders of Term Lenders and Superpriority Term Lenders, represented by Davis Polk & Wardwell LLP (the "<u>Term Lender Ad Hoc Group</u>"), (iii) an ad hoc group of 2021 LC Lenders, represented by Latham & Watkins LLP (the "<u>2021 LC Lenders</u>"), (iv) an ad hoc group of 2023 LC Lenders, Revolving Lenders, Cash Secured LC Issuers, and Superpriority LC Lenders, represented by Linklaters LLP, and (v) two ad hoc group of holders of Senior Notes, represented by Brown Rudnick LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP, respectively.

The transactions described in and contemplated by the RSA, Plan, and Disclosure Statement, and provide for, among other things:  (a) an aggregate $2.81 billion debtor in possession financing package provided by the Debtors' senior secured lenders, which includes $1.2 billion in new secured term loans, $543 million in incremental letter of credit capacity, and the "roll up" of the $800 million in superpriority term loans and $200 million in superpriority letters of credit; (b) an agreement by the Debtors' senior secured term lenders to substantially equitize more than $3 billion in funded debt in exchange for 94% of the equity in the Reorganized Debtors and $500 million in take back senior secured term loans; (c) commitments from the Debtors' letter of credit issuing banks to (i) allow for the renewal of existing letters of credit (on existing terms) during these chapter 11 cases, (ii) provide the incremental letter of credit capacity under the DIP Facility, and (iii) provide for an aggregate of up to $2.44 billion in letter of credit capacity to support the Debtors' go-forward business on emergence from chapter 11 under three senior secured exit letter of credit facilities; (d) the sale of the Lummus Technology Business for at least $2.725

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at <u>https://cases.primeclerk.com/McDermott</u>.  The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. The Plan is attached as <u>Exhibit A</u> to, and described in greater detail in, the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of McDermott International, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time including all exhibits or supplements thereto, the "<u>Disclosure Statement</u>").

billion, as set forth in the stalking horse purchase agreement entered into by the Debtors and The Chatterjee Group and Rhone Capital as stalking horse purchaser prior to the Petition Date, the proceeds of which will be used to (a) fund a minimum $820 million cash balance to support the Debtors' go-forward business and (b) repay the funded obligations under the DIP Facility; (e) recovery for unsecured bondholders in form of 6% of the equity in the Reorganized Debtors and certain warrants (convertible into up to 20% of the equity in the Reorganized Debtors on a fully diluted basis); (f) repayment in full or reinstatement of all unsecured trade claims; (g) assumption of all project-related executory contracts (in some instances, as amended pursuant to agreement between the Debtors and the applicable customers); (h) reinstatement and assumption of unsecured bi-lateral facility letter of credit obligations and surety obligations; (i) payment in full in cash of all administrative and priority claims; and (j) cancellation of all existing preferred and common equity interests. **Importantly, the Plan provides for the satisfaction of all trade, customer, employee, and other non-funded debt claims in full, in the ordinary course of business**. McDermott will continue to operate in the normal course and its business operations will not be disrupted by the restructuring process. McDermott continues to have adequate liquidity to meet its financial obligations to vendors, suppliers, and employees, and expects to continue making payments to these parties without interruption.

This notice sets forth information regarding the Plan and the treatment of Claims and Interests thereunder, key dates and deadlines regarding the Plan and the Disclosure Statement, and certain other relevant information. Any information set forth herein is qualified in its entirety by the terms of the Plan. In the event of any inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

## Key Terms of the Plan[3]

The Plan, provides, among other things, that upon emergence:

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest | Projected Amount of Claims (in millions) | Projected Recovery Under the Plan[4] |
| 1 | Other Secured Claims | On the Plan Effective Date, each holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor: (a) payment in full in Cash of its Allowed Other Secured Claim; (b) the collateral securing its Allowed Other Secured Claim; (c) Reinstatement of its Allowed Other Secured Claim; or (d) such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. | TBD | 100% |
| 2 | Other Priority Claims | On the Plan Effective Date, each holder of an Allowed Other Priority Claim shall receive payment in full in Cash. | TBD | 100% |
| 3 | Other Prepetition | On the Plan Effective Date, each Allowed Other | $105 | 100% |

---

[3]   This summary is qualified in its entirety by the terms of the Plan. In the event of any inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

[4]   Projected recoveries under the Plan assume that no distributable proceeds will result from the Rights Offering (as defined herein) and that no Technology Business Sale Proceeds will be available for distributions to holders of Prepetition Funded Secured Claims.

| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest | Projected Amount of Claims (in millions) | Projected Recovery Under the Plan[4] |
|---|---|---|---|---|
| | | SUMMARY OF EXPECTED RECOVERIES | | |
| | Financing Claims | Prepetition Financing Claim shall be Reinstated. | | |
| 4 | Bilateral Facility Claims | On the Plan Effective Date, each Allowed Bilateral Facility Claim shall be Reinstated. | $1,154 | 100% |
| 5 | 2021 Letter of Credit Claims | On the Plan Effective Date, each holder of an Allowed 2021 Letter of Credit Claim shall receive:  (a) with respect to any 2021 Letter of Credit Claims on account of unfunded 2021 Letters of Credit, participation in the Roll-Off LC Exit Facility in an amount equal to each such holder's Allowed 2021 Letter of Credit Claim, (b) with respect to any 2021 Letter of Credit Claims on account of funded 2021 Letters of Credit, its Secured Creditor Pro Rata Share of the Secured Creditor Funded Debt Distribution, and (c) payment in full in Cash of any amounts accrued and unpaid, as of the Petition Date, due to such holder of an Allowed 2021 Letter of Credit Claim pursuant to Section 2.15 of the 2021 LC Agreement. | $229 | 100% |
| 6A | 2023 Letter of Credit Claims | On the Plan Effective Date, each holder of an Allowed 2023 Letter of Credit Claim shall receive:  (a) with respect to any 2023 Letter of Credit Claims on account of unfunded 2023 Letters of Credit, participation in the Roll-Off LC Exit Facility in an amount equal to each such holder's Allowed 2023 Letter of Credit Claim, (b) with respect to any 2023 Letter of Credit Claims on account of funded 2023 Letters of Credit, its Secured Creditor Pro Rata Share of the Secured Creditor Funded Debt Distribution, and (c) payment in full in Cash of any amounts accrued and unpaid, as of the Petition Date, due to such holder of an Allowed 2023 Letter of Credit Claim pursuant to Section 2.15 of the Credit Agreement. | $1,259 | 100% |
| 6B | Revolving Credit Claims | On the Plan Effective Date, each holder of an Allowed Revolving LC Claim shall receive:  (a) with respect to any Revolving Credit Claims on account of unfunded Revolving LCs, participation in the Roll-Off LC Exit Facility in an amount equal to each such holder's Allowed Revolving Credit Claim, and (b) with respect to any Revolving Credit Claims on account of (i) Revolving Loans or (ii) funded Revolving LCs, its Secured Creditor Pro Rata Share of the Secured Creditor Funded Debt Distribution, and (c) payment in full in Cash of any amounts accrued and unpaid, as of the Petition Date, due to such holder of an Allowed Revolving Credit Claim pursuant to Section 2.15 of the Credit Agreement. | $998 | 84%[5] |

---

[5]   The projected recovery under the Plan for Class 6B Revolving Credit Claims only accounts for funded Revolving Credit Claims.

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| **Class** | **Claim/Equity Interest** | **Treatment of Claim/Equity Interest** | **Projected Amount of Claims (in millions)** | **Projected Recovery Under the Plan[4]** |
| 6C | Term Loan Claims | On the Plan Effective Date, each holder of an Allowed Term Loan Claim shall receive its Secured Creditor Pro Rata Share of the Secured Creditor Funded Debt Distribution. | $2,229 | 84% |
| 6D | Credit Agreement Hedging Claims | On the Plan Effective Date, each holder of an Allowed Credit Agreement Hedging Claim that remains unpaid as of the Effective Date shall receive for any Allowed Credit Agreement Hedging Claims such holder's Secured Creditor Pro Rata Share of the Secured Creditor Funded Debt Distribution. | $50 | 84% |
| 7 | Cash Secured Letter of Credit Claims | On the Plan Effective Date, each holder of an Allowed Cash Secured Letter of Credit Claim outstanding as of such date shall:  (a) be deemed to reissue its Cash Secured Letters of Credit under the Cash Secured LC Exit Facility which shall be secured by the same cash collateral which secured the Cash Secured Letters of Credit prior to the Petition Date, and (b) payment in full in Cash of any amounts accrued and unpaid, as of the Petition Date, due to such holder of an Allowed Cash Secured Letter of Credit Claim pursuant to Section 2.15 of the Credit Agreement. | $305 | 100% |
| 8 | Lloyds Letter of Credit Claims | On the Plan Effective Date, each holder of an Allowed Lloyds Letter of Credit Claim shall receive:  (a) with respect to any Lloyds Letter of Credit Claims on account of unfunded Lloyds Letters of Credit, participation in the Roll-Off LC Exit Facility in amount equal to such Allowed Lloyds Letter of Credit Claim, (b) with respect to any Lloyds Letter of Credit Claims on account of funded Lloyds Letters of Credit, its Secured Creditor Pro Rata Share of the Secured Creditor Funded Debt Distribution, and (c) payment in full in Cash of any amounts accrued and unpaid, as of the Petition Date, due to such holder of an Allowed Lloyds Letter of Credit Claim pursuant to Section 2(b) of the Lloyds Letter of Credit Agreement. | $102 | 100% |
| 9 | Senior Notes Claims | On the Plan Effective Date, each holder of an Allowed Senior Notes Claim shall receive its pro rata share of: (a) 6% of the New Common Stock, plus additional shares of New Common Stock as a result of the Prepetition Funded Secured Claims Excess Cash Adjustment, subject to dilution on account of the New Warrants and the Management Incentive Plan; and (b) the New Warrants. | $1,402 | 19% |
| 10 | General Unsecured Claims | On the Plan Effective Date, each holder of an Allowed General Unsecured Claim shall receive, at the option of the applicable Debtor, payment in full in Cash or Reinstatement. | TBD | 100% |

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| **Class** | **Claim/Equity Interest** | **Treatment of Claim/Equity Interest** | **Projected Amount of Claims (in millions)** | **Projected Recovery Under the Plan[4]** |
| 11 | Intercompany Claims | On the Plan Effective Date, each Allowed Intercompany Claim shall be, at the option of the applicable Debtor, (with the consent of the Required Consenting Lenders) either: (a) Reinstated, (b) canceled, released, and extinguished, and will be of no further force or effect, or (c) otherwise addressed at the option of each applicable Debtor such that holders of Intercompany Claims will not receive any distribution on account of such Intercompany Claims. | N/A | 0–100% |
| 12 | Existing Equity Interests Other Than in McDermott | On the Plan Effective Date, each Existing Equity Interests Other Than in McDermott shall be, at the option of the applicable Debtor, either: (a) Reinstated, (b) canceled, released, and extinguished, and will be of no further force or effect, or (c) otherwise addressed at the option of each applicable Debtor such that holders of Existing Equity Interests Other Than in McDermott will not receive any distribution on account of such Existing Equity Interests Other Than in McDermott. | N/A | 0–100% |
| 13 | Existing Preferred Equity Interests in McDermott | On the Plan Effective Date, holders of Existing Preferred Equity Interests will not receive any distribution on account of such Interests, which will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect. | N/A | 0% |
| 14 | Existing Common Equity Interests in McDermott | On the Plan Effective Date, holders of Existing Common Equity Interests will not receive any distribution on account of such Interests, which will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect. | N/A | 0% |

The following chart summarizes the classification of Claims and Interests set forth in the Plan and indicates whether each such class is entitled to vote on the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Other Prepetition Financing Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 4 | Bilateral Facility Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 5 | 2021 Letter of Credit Claims | Impaired | Entitled to Vote |
| Class 6A | 2023 Letter of Credit Claims | Impaired | Entitled to Vote |
| Class 6B | Revolving Credit Claims | Impaired | Entitled to Vote |

| Class 6C | Term Loan Claims | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 6D | Credit Agreement Hedging Claims | Impaired | Entitled to Vote |
| Class 7 | Cash Secured Letter of Credit Claims | Impaired | Entitled to Vote |
| Class 8 | Lloyds Letter of Credit Claims | Impaired | Entitled to Vote |
| Class 9 | Senior Notes Claims | Impaired | Entitled to Vote |
| Class 10 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 11 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 12 | Existing Equity Interests Other Than in McDermott | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 13 | Existing Preferred Equity Interests in McDermott | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 14 | Existing Common Equity Interests in McDermott | Impaired | Not Entitled to Vote (Deemed to Reject) |

The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned ballot; (d) any ballot that does not contain an original signature; (e) any ballot that partially rejects and partially accepts the Plan; (f) any ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; (g) any simultaneously cast, inconsistent duplicate ballots, with respect to the same Claim; and (g) any ballot superseded by a later, timely submitted valid ballot.  To the extent that any discrepancy exists between the aggregate Claims amount as indicated on a Ballot by a Holder of Claims in one or more Voting Classes and the aggregate Claims amount as listed on the applicable lender registry for each Voting Class in which a Holder votes Claims, the aggregate Claims amount as listed on the applicable lender registry shall govern for tabulation purposes.

## Key Dates and Information Regarding Confirmation of the Plan

To implement the financial restructuring contemplated by the Restructuring Support Agreement, the Company filed voluntary petitions for reorganization pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court") on Tuesday, January 21, 2020 (the date of commencement, the "Petition Date").

Prior to filing, on Tuesday January 21, 2020, McDermott commenced a solicitation of acceptances of the Plan from holders of claims that are eligible to vote, Class 5 (2021 Letter of Credit Claims), Class 6A (2023 Letter of Credit Claims), Class 6B (Revolving Credit Claims), Class 6C (Term Loan Claims), Class 6D (Credit Agreement Hedging Claims), Class 7 (Cash Secured Letter of Credit Claims), Class 8 (Lloyds Letter of Credit Claims), and Class 9 (Senior Notes Claims) (each, a "Voting Class"), with respect to the Plan in accordance with section 1125 of the Bankruptcy Code and within the meaning of section 1126 of the Bankruptcy Code.  Holders of more than two-thirds of the claims in each of Class 5, Class 6A, Class 6B, Class 6C, Class 6D, Class 7, and Class 9 have committed to voting in favor of the Plan by signing the

6

Restructuring Support Agreement.  McDermott expects to meet the requirements for confirmation of the Plan and to emerge from bankruptcy shortly after filing.

The Debtors will request that the Bankruptcy Court convene a hearing to **approve the adequacy of the Disclosure Statement and confirm the Plan** (the "Combined Hearing") on **Friday, March 13, 2020, subject to the availability of the Bankruptcy Court.**  The Combined Hearing may be continued from time to time by announcing such continuance in open court and the Plan may be further modified, if necessary, subject to section 1127 of the Bankruptcy Code, prior to, during, or as a result of the Combined Hearing, without further notice to parties in interest.

Any **objections** to the adequacy of the Disclosure Statement or confirmation of the Plan must:

(i)     be in writing;

(ii)    comply with the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of Texas, and other case management rules and orders of the Bankruptcy Court;

(iii)   set forth the name of the objector, and the nature and amount of any claim or interest asserted by the objector against the estate or property of McDermott;

(iv)    state with particularity the legal and factual basis for such objection; and

be served by personal service or by overnight delivery, so as to be **ACTUALLY RECEIVED no later than 4:00 p.m. (prevailing Central time) on [●],** by: (a) McDermott International, Inc., 757 North Eldridge Parkway, Houston, Texas 77079, Attn:  John Freeman; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Christopher T. Greco, P.C., and Anthony R. Grossi, and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn:  John R. Luze; (c) proposed co-counsel to the Debtors, Jackson Walker L.L.P., 1401 McKinney Street, Houston, Texas 77010, Attn: Matthew D. Cavenaugh; (d) the Office of The United States Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 7702; (e)  counsel to the Consenting Term and Superpriority Term Lenders, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn:  Damian S. Schaible, Natasha Tsiouris; (f) counsel to the Consenting 2021 LC Lenders, Latham & Watkins LLP, 855 Third Avenue, New York, New York 10022-4834, Attn:  Melissa Alwang; and (g) counsel to the Consenting 2023 LC Lenders, Consenting Revolving Lenders, Consenting Superpriority LC Lenders, and Consenting Cash Secured LC Issuers, Linklaters LLP, 1345 Avenue of the Americas, New York, New York 10105, Attn:  Margot Schonholtz, Penelope Jensen.

### Where May Interested Parties Obtain Copies of the Plan and Disclosure Statement?

Copies of the Plan, Disclosure Statement, Restructuring Support Agreement, and related documents may be obtained free of charge:  (1) by contacting Prime Clerk LLC (the "Solicitation Agent") by phone at +1 (877) 426-7705 (toll free) or +1 (917) 994-8380 (international); (2) by email at McDermottBallots@primeclerk.com, including "McDermott" in the subject line of any such email; or (3) through McDermott's solicitation website at https://cases.primeclerk.com/McDermott.

Following the commencement of McDermott's chapter 11 cases, all pleadings filed in the cases (i) may be inspected at the office of the Clerk of the Bankruptcy Court for the Southern District of Texas, P.O. Box 61010, Houston, Texas 77208 (the "Clerk's Office") and (ii) will be available through the Court's

electronic case filing system at https://www.txs.uscourts.gov/page/bankruptcy-court using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov), or on the website maintained by the Solicitation Agent at https://cases.primeclerk.com/McDermott.

Furthermore a case information line has been established at +1 (877) 426-7705 (toll free) or +1 (917) 994-8380 (international). **PLEASE NOTE that the staff of the Clerk's Office, the United States Trustee, McDermott's proposed restructuring counsel, and the Solicitation Agent cannot give legal advice. Consult a lawyer to determine your rights.**

### Meeting of Creditors Pursuant to Section 341

As part of the relief requested by McDermott in connection with the filing of its chapter 11 cases, McDermott will request that the U.S. Trustee **NOT** be required to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code.

### Releases, Injunction, and Exculpation Provisions

Article VIII of the Plan contains the following release, injunction, and exculpation provisions. **YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

**Holders of Claims and Interests may opt out of the third-party release set forth below by checking the appropriate box on their ballot or notice of non-voting status, as applicable.**

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, their Estates, and any person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates, including any successors to the Debtors or any Estates representative appointed or selected pursuant to section 1123(b) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:**

1.  **the Debtors (including the capital structure, management, ownership, or operation thereof), the business or contractual arrangement between the Debtors and any Released Party, any Securities issued by the Debtors and the ownership thereof, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring**

**efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Superpriority Credit Agreement, the Credit Agreement, the 2021 LC Agreement, the Lloyds Letter of Credit Agreement, the Senior Notes Indenture, the Senior Notes, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Credit Agreement, the Exit Facility Documents, or the Plan (including, for the avoidance of doubt, the Plan Supplement);**

2. **any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Rights Offering, the Disclosure Statement, the DIP Credit Agreement, the New Warrants Agreements, the Exit Facility Documents, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases;**

3. **the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, the Rights Offering, or the distribution of property under the Plan or any other related agreement; or**

4. **any related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, the New Warrants Agreements, or any Claim or obligation arising under the Plan, or (ii) the rights of any holder of Allowed Claims to receive distributions under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing Debtor release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the foregoing Debtor release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the foregoing Debtor release; (c) in the best interests of the Debtors and their Estates and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the foregoing Debtor release.**

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

**Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:**

1. **the Debtors (including the capital structure, management, ownership, or operation thereof), the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Superpriority Credit Agreement, the Credit Agreement, the 2021 LC Agreement, the Lloyds Letter of Credit Agreement, Senior Notes Indenture, the Senior Notes, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Credit Agreement, the Exit Facility Documents, or the Plan (including, for the avoidance of doubt, the Plan Supplement);**

2. **any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Rights Offering, the Disclosure Statement, the DIP Credit Agreement, the New Warrants Agreements, the Exit Facility Documents, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases,**

3. **the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, the Rights Offering, or the distribution of property under the Plan or any other related agreement; or**

4. **any related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Documents, or any other financing document under and as defined therein), (ii) any**

**post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, any Definitive Document, or any agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, the New Warrants Agreements, or any Claim or obligation arising under the Plan, or (iii) the rights of holders of Allowed Claims to receive distributions under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing third-party release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the foregoing third-party release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for a substantial contribution and for the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (d) a good faith settlement and compromise of the Claims released by the foregoing third-party release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the foregoing third-party release.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER AND EACH DIP LETTER OF CREDIT ISSUER; (E) EACH AGENT; (F) THE SENIOR NOTES TRUSTEE; (G) EACH CONSENTING STAKEHOLDER; (H) EACH HEDGE BANK; (I) EACH CASH MANAGEMENT BANK; (J) EACH LENDER UNDER THE SUPERPRIORITY CREDIT AGREEMENT, CREDIT AGREEMENT, THE 2021 LC AGREEMENT, AND THE LLOYDS LETTER OF CREDIT AGREEMENT; (K) EACH HOLDER OF AN OBLIGATION (AS DEFINED IN THE SUPERPRIORITY CREDIT AGREEMENT) UNDER THE SUPERPRIORITY CREDIT AGREEMENT; (L) EACH HOLDER OF AN OBLIGATION (AS DEFINED IN THE CREDIT AGREEMENT) UNDER THE CREDIT AGREEMENT; (M) EACH ISSUER (AS DEFINED IN THE SUPERPRIORITY CREDIT AGREEMENT) UNDER THE SUPERPRIORITY CREDIT AGREEMENT; (N) EACH ISSUER (AS DEFINED IN THE CREDIT AGREEMENT) UNDER THE CREDIT AGREEMENT; (O) THE TERM LOAN AD HOC GROUP, THE LIQUIDITY LENDER STEERING COMMITTEE, AND THE SENIOR NOTES AD HOC GROUP; (P) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (O); AND (Q) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT OPTS OUT OF THE RELEASES SHALL NOT BE A "RELEASED PARTY."

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER AND EACH DIP LETTER OF CREDIT ISSUER; (E) EACH AGENT; (F) THE SENIOR NOTES TRUSTEE; (G) EACH CONSENTING STAKEHOLDER; (H) EACH HEDGE BANK; (I) EACH CASH MANAGEMENT BANK; (J) EACH LENDER UNDER THE SUPERPRIORITY CREDIT AGREEMENT, CREDIT AGREEMENT, THE 2021 LC AGREEMENT, AND THE LLOYDS LETTER OF CREDIT AGREEMENT; (K) EACH HOLDER OF AN OBLIGATION (AS DEFINED IN THE SUPERPRIORITY CREDIT AGREEMENT) UNDER THE SUPERPRIORITY CREDIT AGREEMENT; (L) EACH HOLDER OF AN OBLIGATION (AS DEFINED IN THE CREDIT AGREEMENT) UNDER THE CREDIT AGREEMENT; (M) EACH ISSUER (AS DEFINED IN THE SUPERPRIORITY CREDIT AGREEMENT) UNDER THE SUPERPRIORITY CREDIT AGREEMENT; (N) EACH ISSUER (AS DEFINED IN THE CREDIT AGREEMENT) UNDER

THE CREDIT AGREEMENT; (O) THE TERM LOAN AD HOC GROUP, THE LIQUIDITY LENDER STEERING COMMITTEE, AND THE SENIOR NOTES AD HOC GROUP; (P) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT OR ARE DEEMED TO ACCEPT THE PLAN; (Q) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (R) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (S) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (R); AND (T) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (R).

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any Claims and Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions (including the Superpriority Credit Agreement, the Credit Agreement, the Senior Notes Indenture or Senior Notes, the 2021 LC Agreement, and the Lloyds Letter of Credit Agreement), the Disclosure Statement, the Plan, the DIP Credit Facility, the Exit Facility Documents, the New Warrants Agreements, the Plan Supplement, the Rights Offering, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), including any Definitive Document, created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Definition related to the Exculpation:

UNDER THE PLAN, "***EXCULPATED PARTIES***" MEANS COLLECTIVELY, AND IN EACH

CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) ANY OFFICIAL COMMITTEES APPOINTED IN THE CHAPTER 11 CASES AND EACH OF THEIR RESPECTIVE MEMBERS; (C) THE CONSENTING STAKEHOLDERS AND ANY AFFILIATED HEDGE BANKS; (D) EACH AGENT AND THE SENIOR NOTES TRUSTEE, AND (E) WITH RESPECT TO EACH OF THE FOREGOING, SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITY'S AND ITS CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER EQUITY HOLDERS, SUBSIDIARIES, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS.

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold the Released Claims are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Released Claims; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any Released Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any Released Claims unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims released or settled pursuant to the Plan.**

**Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F hereof.**

\*     \*     \*     \*     \*

13

# **EXHIBIT 2**

**Publication Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | ) | Case No. 20-30336 (DRJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF COMMENCEMENT OF PREPACKAGED CHAPTER 11**
**BANKRUPTCY CASES AND HEARING ON THE DISCLOSURE STATEMENT**
**AND CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN**

<u>TO:</u>   **ALL HOLDERS OF CLAIMS, HOLDERS OF INTERESTS, AND PARTIES IN**
**INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

**PLEASE TAKE NOTICE THAT** on Tuesday, January 21, 2020 (the "<u>Petition Date</u>"), the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed with the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") the Debtors' *Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5] (as amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>") and proposed disclosure statement [Docket No. 4] (as amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>").  Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time.  The Plan and the Disclosure Statement also are available for inspection on the Court's website at www.txs.uscourts.gov or free of charge on the Debtors' restructuring website at https://cases.primeclerk.com/McDermott.[2]

        **PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "<u>Combined Hearing</u>") will be held before the Honorable David R. Jones, United States Bankruptcy Judge, in Room 400 of

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/McDermott.  The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

[2]    Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable.  The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein.  To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on **[●] prevailing Central Time**, to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Court.  Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** objections (each, an "Objection"), if any, to the Plan or the Disclosure Statement <u>must</u>: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the of the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity or individual; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court (contemporaneously with a proof of service) and served so as to be **actually received** no later than **[●] prevailing Central Time**, by those parties who have a filed a notice of appearance in the Debtors' chapter 11 cases as well as each of the following parties:

| Counsel to the Debtors | Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn.: Joshua A. Sussberg, P.C.<br>(joshua.sussberg@kirkland.com), Christopher T. Greco, P.C. (christopher.greco@kirkland.com), Anthony R. Grossi (anthony.grossi@kirkland.com), and John R. Luze (john.luze@kirkland.com) | Jackson Walker L.L.P.<br>1401 McKinney Street<br>Houston, Texas 77010<br>Attn:  Matthew D. Cavenaugh<br>(mcavenaugh@jw.com) |
| **The United States Trustee** | **Counsel to Consenting Term and Superpriority Term Lenders** |
| Office of the United States Trustee<br>for the Southern District of Texas<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Attn.: Hector Duran (hector.duran.jr@usdoj.gov) | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn:  Damian S. Schaible<br>(damian.schaible@davispolk.com) and Natasha Tsiouris (Natasha.tsiouris@davispolk.com) |
| **Counsel to Consenting 2021 LC Lenders** | **Counsel to the Proposed DIP LC Agent, the Proposed DIP Collateral Agent, the Revolving Administrative Agent and the Revolving and LC Administrative Agent** |
| Latham & Watkins LLP<br>855 Third Avenue<br>New York, New York 10022-4834<br>Attn:  Melissa Alwang (melissa.alwang@lw.com) | Linklaters LLP<br>1345 Avenue of the Americas<br>New York, New York 10105<br>Attn:  Margot Schonholtz<br>(margot.schonholtz@linklaters.com) and Penelope Jensen (Penelope.jensen@linklaters.com) |

| Co-Counsel to the Ad Hoc Group of Senior Noteholders | Co-Counsel to the Ad Hoc Group of Senior Noteholders |
|---|---|
| Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 6th Ave, New York, NY 10019<br>Attn: Andrew N. Rosenberg<br>(arosenberg@paulweiss.com) and Alice Belisle Eaton<br>(aeaton@paulweiss.com) | Brown Rudnick LLP<br>7 Times Square, New York, NY 10036<br>Attn: Robert J. Stark (rstark@brownrudnick.com) and<br>Bennett S. Silverberg<br>(bsilverberg@brownrudnick.com) |

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE COURT.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**<u>ARTICLE VIII</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND <u>ARTICLE VIII.D</u> CONTAINS A <u>THIRD-PARTY RELEASE</u>. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**<u>ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.</u>**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN ARTICLE IX OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## **EXHIBIT 3**

**Rights Offering Procedures**

# MCDERMOTT INTERNATIONAL, INC.

## RIGHTS OFFERING PROCEDURES

**The New McDermott Common Stock (collectively, the "Rights Offering Securities") are distributed and issued (the "Rights Offering") without registration under the Securities Act of 1933, as amended (the "Securities Act"), in reliance upon the exemption from registration provided by Section 1145 of the Bankruptcy Code.**

**Neither the offering of Subscription Rights (defined below) or the issuance of Rights Offering Securities issuable upon exercise of such rights distributed pursuant to these procedures (the "Rights Offering Procedures") have been or, at the time of original issuance, will be registered under the Securities Act, or the securities laws of any state requiring registration for offer and sale of a security.**

**The Subscription Rights will not be detachable from the underlying Applicable Claims (as defined below) and no Subscription Rights may be sold, transferred, assigned, pledged, hypothecated, participated, donated or otherwise encumbered or disposed of, directly or indirectly (including through derivatives, options, swaps, forward sales or other transactions in which any person receives the right to own or acquire any current or future interest in the Subscription Rights, the Rights Offering Securities, the Applicable Claims (defined below) and any related claims) (each of the above, a "Transfer");** *provided* **that holding securities attesting ownership of Subscription Rights in an account with a broker dealer where the broker dealer holds a security interest or other encumbrance over property in the account generally, which security interest or other encumbrance is released upon transfer of such securities, shall not constitute a "Transfer" for purposes hereof. The Subscription Rights, together with the underlying Applicable Claims of the Eligible Holders (as defined below) with respect to which such Subscription Rights were issued, will be evidenced by the corresponding Applicable Claims until the Subscription Expiration Deadline and will Transfer together as a unit, subject to such limitations, if any, that would be applicable to the transferability of the underlying Applicable Claims.**

**Participation in the Rights Offering is limited to Eligible Holders.  The Rights Offering Securities are available only to Eligible Holders, and any invitation, offer or agreement to purchase will be entered into only with Eligible Holders.  No offer or invitation to subscribe is being made to any person who is not an Eligible Holder and no such person should act or rely on any offer or invitation to subscribe or purchase Rights Offering Securities contained in this document.**

**To exercise the Subscription Rights, an Eligible Holder must complete and return to the Subscription Agent (as defined below) a Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and a Subscription Agreement (each as defined below), and pay the applicable Purchase Payment Amount (as defined below), prior to the Subscription Expiration Deadline (as defined below).  Eligible**

i

Holders must deliver their Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and their Subscription Agreement (each as defined below) to their Nominees (as defined below) in sufficient time to allow such Nominee to deliver the Subscription Form and Subscription Agreement to the Subscription Agent, and they must electronically deliver the respective notes underlying claims by Eligible Holders of Senior Notes (the "Senior Notes Claims") to the Subscription Agent through the Automated Tender Offer Program ("ATOP") in accordance with the procedures of The Depositary Trust Company ("DTC") prior to the Subscription Expiration Deadline.

Any Eligible Holder that subscribes for Rights Offering Securities and is an "underwriter" under Section 1145(b) of the Bankruptcy Code will be subject to restrictions under the Securities Act on its ability to resell those securities and will receive "restricted securities" (as defined defined under Rule 144 promulgated under the Securities Act). Resale restrictions are discussed in more detail in Article XII of the Disclosure Statement, entitled "Certain Securities Law Matters."

Exercise of the Subscription Rights once made cannot be revoked unless the Rights Offering is terminated. Senior Notes that have been tendered cannot be withdrawn, and therefore cannot be transferred, unless exercise of the Subscription Rights is permitted to be revoked because the Rights Offering has been terminated. Similarly, no transfer of any other Applicable Claims corresponding to Subscription Rights that have been exercised will be recognized, unless the Rights Offering is terminated.

The distribution or communication of these Rights Offering Procedures and the issue of the Rights Offering Securities in certain jurisdictions may be restricted by law. No action has been taken or will be taken to permit the distribution or communication of these Rights Offering Procedures in any jurisdiction where any action for that purpose may be required. Accordingly, these Rights Offering Procedures may not be distributed or communicated, and the Rights Offering Securities may not be subscribed, purchased or issued, in any jurisdiction, except in circumstances where such distribution, communication, subscription, purchase or issuance would comply with all applicable laws and regulations without the need for the issuer to take any action or obtain any consent, approval or authorization therefor, except for any notice filings required under U.S. federal and applicable state securities laws.

Each Rights Offering Security issued upon exercise of a Subscription Right to an Eligible Holder located outside the United States, and each certificate issued in exchange for or upon the transfer, sale, or assignment of any such Rights Offering Securities, shall be stamped or otherwise imprinted with a legend in substantially the following form:

"THE SECURITIES REPRESENTED BY THIS CERTIFICATE WERE ORIGINALLY ISSUED ON [●], HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR ANY OTHER APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION

**STATEMENT UNDER THE ACT OR AN AVAILABLE EXEMPTION FROM REGISTRATION THEREUNDER.”**

**In any member state of the European Economic Area (the “<u>EEA</u>”) that has implemented the EU Prospectus Directive (each, a “<u>Relevant Member State</u>”), these Rights Offering Procedures (and any offer of Rights Offering Securities) are only addressed to and only directed at qualified investors in that Relevant Member State within the meaning of the EU Prospectus Directive.  These Rights Offering Procedures have been prepared on the basis that all offers of Rights Offering Securities within the EEA will be made pursuant to an exemption under the EU Prospectus Directive from the requirement to publish a prospectus for offer of securities.  Accordingly, any person making or intending to make any subscription of Rights Offering Securities within any EEA member state should only do so in circumstances in which no obligation arises to publish a prospectus or a supplement to a prospectus under the EU Prospectus Directive for such offer.  Neither McDermott International, Inc. or any of its affiliates, nor any person acting on their behalf, has authorized, nor do they authorize, the making of any offer of Rights Offering Securities through any financial intermediary, other than as may be contemplated herein.  The expression “EU Prospectus Directive” means Directive 2003/71/EC (and amendments thereto, including the 2010 PD Amending Directive, to the extent implemented in the Relevant Member State), and includes any relevant implementing measure in each Relevant Member State, and the expression “2010 PD Amending Directive” means Directive 2010/73/EU.**

**In relation to each Relevant Member State, no offer of the Rights Offering Securities or the Subscription Rights may be made to the public at any time other than pursuant to an exemption under the EU Prospectus Directive.**

**In the United Kingdom, any offer or invitation contained in these Rights Offering Procedures is directed only at persons who are investment professionals within the meaning of Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005 (the “<u>FPO</u>”) or high net worth companies, unincorporated associations or other bodies within the categories described in Article 49(2)(a) to (d) of the FPO (together, “<u>relevant persons</u>”).**

**The Rights Offering is being conducted in good faith and in compliance with the Bankruptcy Code.  In accordance with Section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale, or purchase of securities.**

Eligible Holders should note the following times relating to the Rights Offering:

| Date | Calendar Date | Event |
|---|---|---|
| Subscription Commencement Date......................................... | Friday, January 24, 2020[1] | Commencement of the Rights Offering. |
| Subscription Expiration Deadline................................ | 4:00 p.m. prevailing Central Time time on Wednesday, February 19, 2020[2] | The deadline for Eligible Holders of Applicable Claims to subscribe for Rights Offering Securities. |
| | | *Eligible Holders.* |
| | | Eligible Holders' Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and Subscription Agreement must be received by the Subscription Agent by the Subscription Expiration Deadline. |
| | | Eligible Holders of Applicable Claims that are Senior Notes Claims must deliver their Subscription Forms and Subscription Agreements to their Nominees in sufficient time to allow such Nominee to deliver the Subscription Form and Subscription Agreement to the Subscription Agent, and to deliver the relevant Senior Notes through ATOP by the Subscription Expiration Deadline. Eligible Holders who hold Senior Notes through a Nominee are urged to consult with their Nominees to determine the necessary deadline to return their Subscription Forms and Subscription Agreements to their Nominee. |
| | | Eligible Holders of Applicable Claims must deliver the applicable Purchase Payment Amount by the Subscription Expiration Deadline. |

**Terms used and not defined herein shall have the meaning assigned to them in the Plan (as defined below) as applicable.**

---

[1]    The Subscription Commencement Date will be 2 day after the Petition Date (as defined below).

[2]    The Subscription Expiration Deadline will be approximately 26 days after the Subscription Commencement Date.

_____, 2020

To Holders of Applicable Claims:

On January 21, 2020, (the Petition Date") McDermott International, Inc. and certain of its affiliates (the "Debtors") filed their *Joint Prepackaged Chapter 11 Plan of Reorganization of McDermott International, Inc. and its Debtor Affiliates* (as may be amended or modified from time to time in accordance with its terms, the "Plan") with the United States Bankruptcy Court for the Southern District of Texas, and the related *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of McDermott International, Inc. and its Debtor Affiliates* (as may be amended or modified from time to time in accordance with its terms, the "Disclosure Statement"). Pursuant to the Plan, Eligible Holders (as defined below) holding specified Allowed Claims (provided that such Claims must be Allowed prior to the Subscription Expiration Deadline) (the "Applicable Claims") will have the opportunity to participate in the Rights Offering on the terms set forth in these Rights Offering Procedures.

An "Eligible Holder" means a Holder of an Applicable Claim that is:

(1)     in the United States and a "U.S. Person" (as defined by Rule 902 of Regulation S promulgated under the Securities Act); or

(2)     outside the United States and is both a "Qualified Investor" and a "relevant person" (each, as defined below) and that is not a "U.S. Person" (as defined by Rule 902 of Regulation S promulgated under the Securities Act).

The term "Qualified Investor" means:

(1)     a non-U.S. Person in a member state of the EEA, that is a "qualified investor" in that Relevant Member State within the meaning of the EU Prospectus Directive; or

(2)     a non-U.S. Person not in a member state of the EEA, that is lawfully entitled to subscribe to the Rights Offering and purchase the Rights Offering Securities under all applicable securities laws and regulations (whether pursuant to an applicable exemption or otherwise), without the need for any registration, the filing or publication of any prospectus, or other action by the issuer.

The term "relevant person" means:

(1)     persons outside the United Kingdom; or

(2)     persons who are investment professionals within the meaning of Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005 (the "FPO"); or

(3)     high net worth companies, unincorporated associations or other bodies within the categories described in Article 49(2)(a) to (d) of the FPO.

Only Eligible Holders of an Applicable Claim that complete the Eligibility Questionnaire

(as defined in the Subscription Form) included as part of the Subscription Form may participate in the Rights Offering. **Holders of Applicable Claims that do not complete and return the applicable Eligibility Questionnaire will be deemed to relinquish and waive any right to participate in the Rights Offering**.

Pursuant to the Plan (and in accordance with and subject to the terms and conditions of these Rights Offering Procedures, the Subscription Form, and the Subscription Agreement), each Eligible Holder of an Applicable Claim will receive non-certicated subscription rights to subscribe for its pro rata share of Rights Offering Securities (the "Subscription Rights"), *provided* that to participate in the Rights Offering, an Eligible Holder must timely and properly execute and deliver its applicable Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and Subscription Agreement to the Subscription Agent and pay the Purchase Payment Amount prior to the Subscription Expiration Deadline.

No Eligible Holder shall be entitled to participate in the Rights Offering unless the aggregate Purchase Price of the Rights Offering Securities for which such Eligible Holder subscribes (the "Purchase Payment Amount") is received by the Subscription Agent by the Subscription Expiration Deadline. No interest is payable on any advance funding of the Purchase Payment Amount. If the Rights Offering is terminated for any reason, such Purchase Payment Amount will be returned to the applicable Eligible Holder promptly. No interest will be paid on any returned Purchase Payment Amount.

**In order to participate in the Rights Offering, you must complete all the steps outlined below by the Subscription Expiration Deadline. If you fail to do so, you shall be deemed to have forever and irrevocably relinquished and waived your right to participate in the Rights Offering.**

### 1. Rights Offering

Each Eligible Holder of an Applicable Claim will have the right, but not the obligation, to participate in the Rights Offering. Only Eligible Holders of an Applicable Claim that validly and timely completed and returned the Eligibility Questionnaire included as part of the Subscription Form may participate in the Rights Offering.

Subject to the terms and conditions set forth in the Plan, these Rights Offering Procedures, the Subscription Form, and the Subscription Agreement, each Eligible Holder of an Applicable Claim is entitled to subscribe for [●] shares of Common Stock per $[●] amount of Applicable Claim at a purchase price of $[●] per share (the "Purchase Price").

**SUBJECT TO THE TERMS AND CONDITIONS OF THE SUBSCRIPTION AGREEMENT, ALL SUBSCRIPTIONS SET FORTH IN THE SUBSCRIPTION AGREEMENT ARE IRREVOCABLE.**

### 2. Subscription Period

The Subscription Rights will be issued as of the Subscription Commencement Date.

The Rights Offering will commence on the Subscription Commencement Date and will expire at the Subscription Expiration Deadline. Each Eligible Holder intending to purchase Rights Offering Securities in the Rights Offering must affirmatively elect to exercise its Subscription Rights in the manner set forth in the Subscription Form and Subscription Agreement by the Subscription Expiration Deadline.

Eligible Holders that fail to do so shall be deemed to have fully and irrevocably relinquished and waived their Subscription Rights. Any exercise of Subscription Rights after the Subscription Expiration Deadline will not be allowed, and any purported exercise received by the Subscription Agent after the Subscription Expiration Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

The Debtors may extend the Subscription Expiration Deadline in their sole discretion, or as required by law.

3.      **Delivery of Documentation**

Subject to the terms and conditions of the Subscription Agreement, each Eligible Holder may exercise all or any portion of such Eligible Holder's Subscription Rights. In order to facilitate the exercise of the Subscription Rights, the Subscription Agent will send, to each Holder of an Applicable Claim as of the Subscription Commencement Date, these Rights Offering Procedures, a form to be used for exercising the Equity Subscription Rights (the "Subscription Form") and an agreement setting forth the terms and conditions of subscription (the "Subscription Agreement"), together with appropriate instructions for the proper completion, due execution and timely delivery of the executed Subscription Form and Subscription Agreement, and the payment of the applicable Purchase Payment Amount for the Rights Offering Securities.

Copies of the Subscription Form, Subscription Agreement and these Rights Offering Procedures may also be obtained by contacting the Debtor's restructuring hotline at the numbers listed below.

4.      **Exercise of Subscription Rights**

*Before exercising any Subscription Rights, Eligible Holders should read the Disclosure Statement and the Plan for information relating to the Debtors and the risk factors to be considered.*

In order to validly exercise its Subscription Rights, each Eligible Holder must:

i.      return a duly executed Subscription Form (including the Eligibility Questionnaire, and with an accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and Subscription Agreement to the Subscription Agent, so that such documents are actually received by the Subscription Agent by the Subscription Expiration Deadline;

ii.     with respect to Applicable Claims that are Senior Notes Claims, instruct its Nominee (as defined below) to electronically deliver to the Subscription Agent the debt securities underlying such Applicable Claim via DTC's ATOP system at the same time its

4

Nominee returns its Subscription Form and Subscription Agreement to the Subscription Agent, but in no event later than the Subscription Expiration Deadline; and

iii.     at the same time its Nominee returns its Subscription Agreement and Subscription Form to the Subscription Agent but in no event later than the Subscription Expiration Deadline, pay the applicable Purchase Payment Amount to the Subscription Agent by wire transfer **ONLY** of immediately available funds in accordance with the instructions included in the Subscription Form.

In the event that the funds received by the Subscription Agent from any Eligible Holder do not correspond to the Purchase Payment Amount payable for the Rights Offering Securities elected to be purchased by such Eligible Holder, the number of the Rights Offering Securities deemed to be purchased by such Eligible Holder will be the lesser of (i) the amount of the Rights Offering Securities elected to be purchased by such Eligible Holder and (ii) an amount of the Rights Offering Securities determined by dividing the amount of the funds received by the Purchase Payment Amount.

The cash paid to the Subscription Agent in accordance with these Rights Offering Procedures will be deposited and held by the Subscription Agent in a segregated escrow account designed with escrow agreements mutually satisfactory to the Debtors, until administered in connection with the settlement of the Rights Offering on the Effective Date.  The Subscription Agent may not use such cash for any other purpose prior to the Effective Date and may not encumber or permit such cash to be encumbered with any lien or similar encumbrance.  The cash held by the Subscription Agent hereunder shall not be deemed part of the Debtors' bankruptcy estates.

**Unexercised Subscription Rights (including Subscription Rights that are not validly exercised for any reason) will be deemed to be fully and irrevocably relinquished and waived immediately following the Subscription Expiration Deadline.**

5.     **Transfer Restrictions**

The Subscription Rights issued to holders of Applicable Claims may not be detached or Transferred separately from the corresponding Applicable Claim.  Any attempted detachment of such Subscription Rights from the corresponding Applicable Claim by an Eligible Holder will be null and void, will have no effect, and will not be recognized for any purpose. Rather, the Subscription Rights will trade together with, and be evidenced by, the corresponding Applicable Claims, until the Subscription Expiration Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Senior Notes.

Any Transfer of a Senior Notes Claim may be effectuated only by a Transfer of the underlying debt security in accordance with procedures of DTC or other securities depository and their respective participants, as applicable, and shall in all cases be deemed to be Transferred with the corresponding Subscription Rights.

Eligible Holders of Senior Notes Claims wishing to subscribe in the Rights Offerings should return their Subscription Forms and Subscription Agreements only to their broker, bank,

commercial bank, transfer agent, trust company, dealer, or other securities agent or nominee (as applicable, the "Nominee") for processing.

**6.     Revocation**

Once an Eligible Holder has properly exercised its Subscription Rights, subject to the terms and conditions of the Subscription Agreement, such exercise will be irrevocable.  Moreover, Senior Notes that have been tendered in respect of Senior Notes Claims cannot be withdrawn, and therefore cannot be transferred, unless the Rights Offering has been terminated.  Similarly, no transfer of other Applicable Claims corresponding to Subscription Rights that have been exercised will be recognized, unless the Rights Offering is terminated.

**7.     Return of Payment and Underlying Debt Securities; Termination of Transfer Restrictions**

If the Rights Offering is terminated or otherwise not consummated on or before [●], any (i) cash paid to the Subscription Agent will be returned, without interest, to the applicable Eligible Holder, (ii) any debt securities underlying Senior Notes Claim that were delivered to the Subscription Agent through DTC, in connection with the exercise of the corresponding Subscription Rights, will be returned to the account Nominee that submitted them through ATOP as soon as reasonably practicable, but in any event within five business days, after such date and (iii) the restriction on Transfer of Applicable Claims with respect to which Subscription Rights have been exercised will be terminated.

**8.     Settlement of the Rights Offering and Distribution of the Rights Offering Securities**

The Debtors intend that the Rights Offering Securities will be issued to the Eligible Holders, and/or, subject to compliance with applicable securities laws (including providing evidence of such compliance reasonably satisfactory to the Debtor, which may include an opinion of counsel), to any Affiliates (as defined in the Subscription Agreement) that the Eligible Holders so designate in the Subscription Form, in book-entry form, and that DTC, or its nominee, will be the holder of record of such Rights Offering Securities; *provided* that, to the extent practicable, an Eligible Holder who is identified as an "underwriter" under Section 1145(b) of the Bankruptcy Code or affiliates of the issuer will receive Rights Offering Securities registered directly in their name.  To the extent DTC is unwilling or unable to make the Rights Offering Securities eligible on the DTC system, the Rights Offering Securities will be issued directly to the Eligible Holder or its designee and such Eligible Holder or its designee will be the holder of record.

**9.     DTC**

The Senior Notes underlying any Senior Notes Claims are held in book-entry form in accordance with the practices and procedures of the DTC.  The Debtors intend to comply with the practices and procedures of DTC for the purpose of conducting the Rights Offering with respect to the Senior Notes, and, subject to compliance with the requirements for modifications set forth in Section 12 hereof, these Rights Offering Procedures will be deemed appropriately modified to achieve such compliance.

With respect to Rights Offering Securities issued to Eligible Holders of Senior Notes Claims, without limiting the foregoing, the Company intends that, to the extent practicable, such Rights Offering Securities will be issued in book entry form, and that DTC, or its nominee, will be the holder of record of such Rights Offering Securities. The ownership interest of each holder of such Rights Offering Securities, and transfers of ownership interests therein, is expected to be recorded on the records of the direct and indirect participants in DTC. It is expected that all Rights Offering Securities exercised through DTC will be allocated to exercising holders through DTC on or as soon as practicable after the Effective Date.

### 10.     No Fractional Shares

All allocations (including each Eligible Holder's Rights Offering Securities) will be calculated and rounded down to the nearest whole share.

### 11.     Validity of Exercise of Subscription Rights

All questions concerning the timeliness, viability, form, and eligibility of any exercise of Subscription Rights will be determined in good faith by the Debtors and, if necessary, subject to a final and binding determination by the Bankruptcy Court. The Debtors may waive any defect or irregularity in, or permit or reject such defect or irregularity to be corrected within such time as they may determine in good faith, the purported exercise of any Subscription Rights. Subscription Agreements will be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in good faith.

### 12.     Modification of Procedures

The Debtors reserve the right to modify or adopt additional procedures consistent with these Rights Offering Procedures to effectuate the Rights Offering and to issue the Rights Offering Securities. The Debtors shall provide prompt notice, by means reasonably calculated to inform holders of Applicable Claims, of any modification to these Rights Offering Procedures made after the Subscription Commencement Date that has a material adverse effect on the holders of Applicable Claims. The Debtors may execute and enter into agreements and take further action that the Debtors determine in good faith are necessary and appropriate to effectuate and implement the Rights Offering and the issuance of the Rights Offering Securities. Nothing in this paragraph shall be construed so as to permit the Debtors to modify the terms of any executed and delivered Subscription Agreement without the consent of the Eligible Holder party thereto.

The Debtors reserve the right to require such additional certifications or other diligence measures as the Debtors deem reasonably necessary to confirm the certifications of an Eligible Holder.

### 13.     Inquiries and Transmittal of Documents; Subscription Agent

The Rights Offering Instructions for Eligible Holders of Applicable Claims attached hereto should be carefully read and strictly followed by the Eligible Holders of Applicable Claims wishing to participate in the Rights Offering.

Questions relating to the Rights Offering should be directed to the Debtors' restructuring hotline at the following phone numbers:

Prime Clerk, LLC
McDermottBallots@primeclerk.com
(please reference "McDermott Rights Offering" in the subject line)
or at the following telephone numbers:
(877) 426-7705 (Toll Free) or (917) 994-8380 (International)

**The risk of non-delivery of all documents and payments to the Subscription Agent is on the Eligible Holder electing to exercise its Subscription Rights and not the Debtors, or the Subscription Agent.**

# MCDERMOTT INTERNATIONAL, INC.

## RIGHTS OFFERING INSTRUCTIONS FOR ELIGIBLE HOLDERS

**Terms used and not defined herein or in the Rights Offering Procedures shall have the meaning assigned to them in the Plan.**

**To elect to participate in the Rights Offering, you must follow the instructions set out below:**

1. **<u>Insert</u>** the amount of the Applicable Claims that you hold in Item 1 of your Subscription Form (if you do not know such amount, please contact the Subscription Agent). You may only submit a Subscription Form and participate in the Rights Offering with respect to a Claim following the Subscription Commencement Date up until the Subscription Expiration Deadline. If you hold Applicable Claims that are Senior Notes Claims and Applicable Claims other than Senior Notes Claims, you may separately submit one Subscription Form for the Applicable Claims that are Senior Notes Claims and another Subscription Form for the Applicable Claims other than Senior Notes Claims.

2. **<u>Complete</u>** the calculation in Item 2(a) of your Subscription Form, which calculates the maximum amount of Rights Offering Securities available for you to purchase. Such amount must be rounded down to the nearest whole share.

3. **<u>Complete</u>** the calculation in Item 2(b) of your Subscription Form to indicate the amount of Rights Offering Securities that you elect to purchase and calculate the Purchase Payment Amount for the Rights Offering Securities that you elect to purchase.

4. **<u>Read and complete</u>** the certification in Item 2(c) of your Subscription Form certifying that you are an Eligible Holder.

5. **<u>Read, complete, and sign</u>** the certification in Item 4 of your Subscription Form.

6. **<u>Read and countersign</u>** the Subscription Agreement with respect to Applicable Claims. Such execution shall indicate your acceptance and approval of the terms and conditions set forth therein.

7. **<u>Read, complete, and sign</u>** an IRS Form W-9 if you are a U.S. person. If you are a non-U.S. person, read, complete, and sign an appropriate IRS Form W-8. These forms may be obtained from the IRS at its website: www.irs.gov.

8. **<u>Return</u>** your signed Subscription Form(s) (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and Subscription Agreement to the Subscription Agent prior to the Subscription Expiration Deadline.

9. **<u>Arrange for full payment</u>** of the aggregate Purchase Price by wire transfer of immediately available funds, calculated in accordance with Item 2(b) of your Subscription Form. For Eligible Holders that hold Applicable Claims via a securities nominee, please instruct your securities nominee to coordinate payment of the Purchase Payment Amount, and transmit,

and deliver, such payment to the Subscription Agent by the Subscription Expiration Deadline.

10. **Instruct your securities nominee to electronically deliver** to the Subscription Agent,

11. If you are a holder of Senior Notes, the underlying debt securities at the same time you return your Subscription Agreement and Subscription Form to the Subscription Agent, but in no event later than the Subscription Expiration Deadline, via DTC's ATOP system.

---

**The Subscription Expiration Deadline is 4:00 p.m. prevailing Central Time on Wednesday, February 19, 2020.**

**Please note that the Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and the Subscription Agreement must be received by the Subscription Agent, and the underlying debt securities of Eligible Holders of Senior Notes Claims must be delivered to the Subscription Agent in accordance with the procedures of DTC on or prior to the Subscription Deadline, or the subscription represented by your Subscription Form will not be counted, and you will be deemed forever to have relinquished and waived your right to participate in the Rights Offering.**

---

**EXHIBIT 4A**

**Subscription Agreement**

**MCDERMOTT INTERNATIONAL, INC.**

_____

**RIGHTS OFFERING
SUBSCRIPTION AGREEMENT
WITH RESPECT TO CLASS 9 SENIOR NOTES CLAIMS**

_____

<u>NOTICES</u>

THIS SUBSCRIPTION AGREEMENT WITH RESPECT TO ALLOWED CLASS 9 SENIOR NOTES CLAIMS (THE "<u>AGREEMENT</u>") HAS BEEN PREPARED ON A CONFIDENTIAL BASIS SOLELY FOR THE BENEFIT OF HOLDERS OF CLASS 9 ALLOWED SENIOR NOTES CLAIMS IN CONNECTION WITH THE RIGHTS OFFERING BY MCDERMOTT INTERNATIONAL, INC. (TOGETHER WITH ANY SUCCESSOR, THE "<u>COMPANY</u>") PURSUANT TO THE *JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF MCDERMOTT INTERNATIONAL, INC. AND ITS DEBTOR AFFILIATES* FILED WITH THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION ON JANUARY 22, 2020 (AS SUCH PLAN MAY BE ALTERED, AMENDED, MODIFIED OR SUPPLEMENTED FROM TIME TO TIME IN ACCORDANCE WITH THE TERMS THEREOF, INCLUDING THE PLAN SUPPLEMENT AND ALL EXHIBITS, SUPPLEMENTS, APPENDICES AND SCHEDULES THE "<u>PLAN</u>"). ANY REPRODUCTION OR DISTRIBUTION OF THIS AGREEMENT, OR RETRANSMITTAL OF ITS CONTENTS, IN WHOLE OR IN PART, WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMPANY IS PROHIBITED.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE COMPANY AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN RECOMMENDED, APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "<u>SEC</u>"), ANY STATE SECURITIES COMMISSION OR ANY OTHER REGULATORY AUTHORITY. NONE OF THE FOREGOING AUTHORITIES HAVE PASSED UPON, OR ENDORSED THE MERITS OF, THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THE DISCLOSURE STATEMENT WITH RESPECT TO THE PLAN THAT IS PREPARED AND DISTRIBUTED IN ACCORDANCE WITH THE BANKRUPTCY CODE, THE BANKRUPTCY RULES, AND ANY OTHER APPLICABLE LAW. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE SECURITIES REFERRED TO HEREIN HAVE NOT BEEN REGISTERED WITH THE SEC UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "<u>SECURITIES ACT</u>") 15 U.S.C. §§ 77A-77AA, OR ANY SIMILAR FEDERAL, STATE OR LOCAL LAW. THE SECURITIES WILL BE OFFERED AND SOLD PURSUANT TO THE EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT PROVIDED BY SECTION 1145 OF THE BANKRUPTCY CODE. THIS AGREEMENT IS NOT AN OFFER TO SELL TO OR A SOLICITATION OF AN OFFER TO BUY FROM, NOR WILL ANY SECURITIES BE OFFERED OR SOLD TO, ANY PERSON IN ANY JURISDICTION IN WHICH SUCH OFFER, SOLICITATION, PURCHASE OR SALE WOULD BE UNLAWFUL UNDER THE SECURITIES LAWS OF SUCH JURISDICTION.

THE COMPANY MAKES NO REPRESENTATION TO ANY OFFEREE OR PURCHASER OF THE SECURITIES REGARDING THE LEGALITY OF AN INVESTMENT THEREIN BY SUCH OFFEREE OR PURCHASER UNDER APPLICABLE LEGAL INVESTMENT OR SIMILAR LAWS.

PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS AGREEMENT, THE DISCLOSURE STATEMENT OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY OR ANY OF THEIR AGENTS, OFFICERS OR REPRESENTATIVES, AS LEGAL OR TAX ADVICE. EACH OFFEREE SHOULD CONSULT ITS OWN ADVISORS AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING AN INVESTMENT IN THE COMPANY.

THIS INVESTMENT INVOLVES A HIGH DEGREE OF RISK, INCLUDING BUT NOT LIMITED TO, SUCH RISKS LISTED UNDER THE HEADING "RISK FACTORS" IN THE DISCLOSURE STATEMENT. IT IS SPECULATIVE AND SUITABLE ONLY FOR PERSONS WHO HAVE SUBSTANTIAL FINANCIAL RESOURCES AND HAVE NO NEED FOR LIQUIDITY IN THIS INVESTMENT. FURTHER, THIS INVESTMENT SHOULD ONLY BE MADE BY THOSE WHO UNDERSTAND OR HAVE BEEN ADVISED WITH RESPECT TO THE TAX CONSEQUENCES OF AND RISK FACTORS ASSOCIATED WITH THE INVESTMENT AND WHO ARE ABLE TO BEAR THE SUBSTANTIAL ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME. THEREFORE, INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO RETAIN OWNERSHIP OF THE SECURITIES AND TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## SUBSCRIPTION AGREEMENT

This Subscription Agreement (this "Agreement"), by and among the McDermott International, Inc. and certain of its debtor and non-debtor affiliates (collectively, the "Company") (including any successor as contemplated by the *Joint Prepackaged Chapter 11 Plan of Reorganization of McDermott International, Inc. and its Debtor Affiliates* (as such plan may be altered, amended, modified, or supplemented from time to time in accordance with the terms thereof, including the Plan Supplement as defined below and all exhibits, supplements, appendices, and schedules the "Plan"), and the undersigned (the "Subscriber"), shall be deemed executed as of the date the Company executes a counterpart to this Agreement previously executed by the Subscriber.

WHEREAS, on January 21, 2020, McDermott International, Inc. and certain of its affiliates (the "Debtors") commenced cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, supplemented, or otherwise modified from time to time, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas Houston Division (the "Bankruptcy Court");

WHEREAS, the Debtors submitted a Plan with the Bankruptcy Court, and the related *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of McDermott International, Inc. and its Debtor Affiliates* (as may be amended or modified from time to time in accordance with its terms, the "Disclosure Statement"), to certain holders of claims against the Debtors in connection with the solicitation of acceptances of the Plan;

WHEREAS, pursuant to the Plan, each Eligible Holder of Claims in Class 9, as applicable, constituting the Senior Notes Claims (the "Applicable Claims") will receive Subscription Rights to subscribe for such Eligible Holders' pro rata share of Rights Offering Securities (the "Rights Offering");

WHEREAS, the Subscriber has certified that it is an Eligible Holder of Claims in Class 9 under the Plan and that it held on the Record Date the Claims in Class 9 set forth in Item 1 of such Subscriber's Subscription Form; and

WHEREAS, the Subscriber wishes to subscribe to purchase Rights Offering Securities as set forth herein on the terms and subject to the conditions of, and in accordance with, the Plan, Rights Offering Procedures, and this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual agreements and covenants herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Subscriber and the Company hereby represent and agree as follows:

1. <u>SUBSCRIPTION</u>.

(a) The Subscriber hereby subscribes for the number of shares of New Common Stock (as defined in the Plan) set forth in Item 2b of such Subscriber's Subscription Form (the "<u>Subscribed Amount</u>") and, subject to the terms and conditions set forth in the Plan, these Rights Offering Procedures, the Subscription Form and this Agreement, agrees to pay $[●] per share subscribed for (the "<u>Purchase Price</u>").

(b) The Subscriber will (i) return this Agreement and the Subscription Form no later than the Subscription Expiration Deadline and (ii) pay the aggregate Purchase Price (the "<u>Purchase Payment Amount</u>") for such Subscribed Amount set forth in Item 2b of such Subscriber's Subscription Form, at the time and the manner set forth in and in accordance with the instructions included on Item 3 of such Subscriber's Subscription Form. No interest shall be payable on any advanced funding of the Purchase Payment Amount. Eligible Holders of Senior Notes Claims wishing to subscribe in the Rights Offerings should return their Subscription Forms and Subscription Agreements only to their broker, bank, commercial bank, transfer agent, trust company, dealer, or other securities agent or nominee (as applicable, the "<u>Nominee</u>") for processing.

(c) Eligible Holders of Applicable Claims that are Senior Notes Claims must also instruct their Nominees to electronically deliver the respective notes underlying the Senior Notes Claims to the Subscription Agent via DTC's ATOP system in accordance with the procedures of DTC by the Subscription Expiration Deadline.

(d) If all or any portion of a Senior Notes Claim included in Item 1 of such Subscriber's Subscription Form is determined not to be an Allowed Senior Notes Claim, the Subscriber Agrees that its Maximum Participation Amount calculated in Item 2a of such Subscriber's Subscription Form will be reduced such that the Maximum Participation Amount is calculated based only on such Subscriber's Allowed  Senior Notes Claim (such Reduced Maximum Participation Amount, the "<u>Reduced Maximum Participation Amount</u>").  If such reduction is made and the Subscriber's Subscribed Amount exceeds the Subscriber's Reduced Maximum Participation Amount, the Subscriber's Subscribed Amount will be reduced to equal the Reduced Maximum Participation Amount.

(e) In the event that the funds received by the Subscription Agent from the Subscriber does not correspond to the applicable Purchase Payment Amount payable for the Subscribed Amount, the amount of the Rights Offering Securities deemed to be purchased by such Eligible Holder will be the lesser of (i) the Subscribed Amount elected to be purchased by such Eligible Holder and (ii) an amount of the Rights Offering Securities determined by dividing the amount of the funds received by the Purchase Payment Amount.

(f) If the amount the Subscriber may purchase is reduced pursuant to Section 1(c) and 1(d) hereof, the Subscription Agent will return any funds received by the Subscription Agent in excess of the reduced purchase price upon settlement of the Rights Offering.

(g) Subject to the conditions specified in Section 6, the closing of the issuance of Rights Offering Securities contemplated by this Agreement (the "<u>Closing</u>") will take place on

the Effective Date pursuant to the Plan.  The date on which the Closing occurs is (the "Closing Date.")

(h)     In the event the Rights Offering is terminated or otherwise not consummated on or before [●], 2020, any Rights Offering funds shall be returned, without interest, to the Subscriber in accordance with the instructions provided in the Subscription Form as soon as reasonably practicable, but in any event within five Business Days after the date on which the Rights Offering is terminated.

2.     REPRESENTATIONS AND WARRANTIES OF THE COMPANY.

The Company represents and warrants to the Subscriber as of the date hereof as follows:

(a)     Subject to the entry of the Bankruptcy Court's confirmation order relating to the Plan and occurrence of the Closing, (i) the Company will have the requisite corporate or other applicable power and authority to execute and deliver this Agreement, (ii) this Agreement and the consummation by the Company of the transactions contemplated hereby will have been duly authorized by all requisite corporate action and (iii) this Agreement will have been duly and validly executed and delivered by the Company will constitute the valid and binding obligation of the Company, enforceable against the Company in accordance with its terms.

(b)     The New Common Stock, when issued in accordance with the provisions hereof and the Confirmation Order, will be validly issued by the Company, and will represent fully paid and non-assessable shares of the Company.

(c)     Except for the representations and warranties contained in this Section 2 and the Plan, neither the Company nor any other Person makes any express or implied representation or warranty with respect to the Company or any other information provided to the Subscriber.  Neither the Company nor any other Person will have or be subject to any liability or indemnification obligation to the Subscriber or any other Person resulting from the distribution to the Subscriber, or use by the Subscriber of, any such information, documents, projections, forecasts or other material made available to the Subscriber, unless and only to the extent that any such information is included in a representation or warranty contained in this Section 2, the Plan or the Disclosure Statement.

3.     REPRESENTATIONS AND WARRANTIES OF THE SUBSCRIBER.

The Subscriber represents and warrants to the Company as of the date hereof as follows:

(a)     The Subscriber is an Eligible Holder and held on the Record Date the aggregate Senior Notes Claims in Class 9 set forth on Item 1 of such Subscriber's Subscription Form.

(b)     The Subscriber has the requisite corporate or other applicable power and authority to execute and deliver this Agreement and the Subscription Form and to perform its

obligations hereunder and thereunder. This Agreement and the consummation by the Subscriber of the transactions contemplated hereby have been duly authorized by all requisite action. This Agreement has been duly and validly executed and delivered by the Subscriber and constitutes the valid and binding obligation of the Subscriber, enforceable against the Subscriber in accordance with its terms.  Except to the extent the Subscriber is an individual, the Subscriber is a duly organized entity validly existing under the laws of the jurisdiction of its incorporation or formation.

(c)     Subject to the conditions contained in Section 6, this subscription is and shall be irrevocable, except that the Subscriber shall have no obligation hereunder if this Agreement is for any reason rejected or the Rights Offering are for any reason terminated.

(d)     The Subscriber has read and understands this Agreement, the Plan, the Disclosure Statement, the Rights Offering Procedures and the Subscription Form and understands the terms and conditions herein and therein and the risks associated with the Company and its business as described in the Disclosure Statement.  The Subscriber has, to the extent deemed necessary by the Subscriber, discussed with legal counsel the representations, warranties and agreements that the Subscriber is making herein.

(e)     No third-party consents or approvals (including governmental consents or approvals) are required to be obtained, made or given in order to permit the Subscriber to execute and deliver this Agreement and to perform its obligations hereunder.

(f)     Neither the execution and delivery of this Agreement by the Subscriber nor the consummation of any of the transactions contemplated hereby will violate or conflict with, or result in a breach of, or constitute a default under (whether upon notice or the passage of time or both) any (i) contract to which the Subscriber is a party or (ii) applicable laws, regulations, orders, judgments and decrees to which the Subscriber is subject.

(g)     The Subscriber is not relying upon any information, representation or warranty by the Company other than as set forth in this Agreement, the Plan, or the Disclosure Statement. The Subscriber has consulted, to the extent deemed appropriate by the Subscriber, with the Subscriber's own advisors as to the financial, tax, legal and related matters concerning an investment in the Rights Offering Securities and on that basis believes that an investment in the Rights Offering Securities is suitable and appropriate for the Subscriber.

(h)     The foregoing representations and warranties will be true on the date hereof and as of the Closing Date and will survive delivery of this Agreement.  If any of such representations and warranties is not true prior to acceptance of this Agreement by the Company or prior to the Closing Date, the Subscriber will give written notice of such fact to the Company, specifying which representations and warranties are not true and the reasons therefor.

(i)     The Subscriber is an Eligible Holder and the Eligible Holder Certification (item 2c of the Subscription Form) completed by the Subscriber sets forth a true, correct and complete statement of the Subscriber's Eligible Holder status.

(j)     The Subscriber is acquiring the Rights Offering Securities solely for its own account or for the account of an Affiliate of the Subscriber for investment and neither with a view

toward, nor any present intention of, Transferring the Rights Offering Securities. No other Person has any right with respect to or interest in the Rights Offering Securities to be purchased by the Subscriber, nor has the Subscriber agreed to give any Person any such interest or right in the future.

(k)     The Subscriber is not a party to any contract with any Person that would give rise to a valid Claim against the Debtors for a brokerage commission, finder's fee or like payment in connection with the Subscriber's investment in the Company (other than the Restructuring Support Agreement and all other agreements to which it will be a party as contemplated by the Restructuring Support Agreement and the Plan and any contract giving rise to the expense reimbursement thereunder).

4.     SUBSCRIBER ACKNOWLEDGMENTS.

The Subscriber further acknowledges the following as of the date hereof and as of the Closing Date:

(a)     The Rights Offering Securities purchased pursuant hereto will be initially issued in the name of the Subscriber as indicated on such Subscriber's Subscription Form.

(b)     This Agreement contains the Subscriber's irrevocable firm commitment, subject only to the terms and conditions of this Agreement and the Rights Offering Procedures, to purchase the Rights Offering Securities.

(c)     Except to the extent provided in this Agreement or the Plan the Company makes no representation or warranty in connection with the purchase of the Rights Offering Securities.

(d)     No federal or state agency has made or will make any finding or determination as to the adequacy or accuracy of any information provided to the Subscriber in connection with its consideration of its investment in the Rights Offering Securities or as to the fairness of the Rights Offering for investment, nor any recommendation or endorsement of the Rights Offering Securities.

(e)     The Company will be relying on representations, warranties and agreements made by the Subscriber to the Company, and the covenants agreed to by the Subscriber, herein. The Subscriber agrees to provide, if requested, any additional information that may reasonably be required to determine its eligibility to purchase the Rights Offering Securities. If there is any change in any of the information provided by the Subscriber relating to such Subscriber's eligibility to purchase the Rights Offering Securities, or if any of the Subscriber's representations and warranties becomes inaccurate in any respect, the Subscriber will furnish such revised or corrected information to the Company as soon as reasonably practicable, but in any event within five Business Days prior to the Subscription Expiration Deadline.

(f)     The Subscriber understands and acknowledges that all calculations, including, to the extent applicable, the calculation of (i) the value of the Subscriber's or any other Eligible Holder's Class 9, Allowed Senior Notes Claims or (ii) the Subscriber's or any other

Eligible Holder's Rights Offering Securities, shall be made in good faith by the Company and in accordance with the Plan, and any disputes regarding such calculations shall be subject to a final and binding determination by the Bankruptcy Court.

(g)     The Disclosure Statement contains financial projections. The financial projections set forth in the Disclosure Statement represent the Debtors' management team's best estimate of the Debtors' future financial performance, which is necessarily based on certain assumptions regarding the anticipated future performance of the Reorganized Debtors' operations, as well as the United States and world economics in general, and the industry segments in the which the Debtors operate in particular. While the Debtors believe that the financial projections contained the Disclosure Statement are reasonable, there can be assurance that they will be realized. In addition, the projections do not and cannot take into account such factors as the Debtors' ability to confirm and consummate the Plan; the potential that the Plan may be converted to a process to sell substantially all of the Debtor's assets under Section 363 of the Bankruptcy Code; the Debtors' ability to reduce their overall financial leverage; the potential adverse impact of the Chapter 11 Cases on the Debtors' operations, management and employees, and the risks associated with operating the Debtors' business during the Chapter 11 Cases; customer responses to the Chapter 11 cases; the Debtors' inability to discharge or settle claims during the Chapter 11 cases; general economic, business and market conditions; currency fluctuations; interest rate fluctuations; price increases; exposure to litigation; a decline in the Debtors' market share due to competition or price pressure by customers; the Debtors' ability to implement cost reduction initiatives in a timely manner; the Debtors' ability to divest existing businesses; financial conditions of the Debtors' customers; adverse tax changes; limited access to capital resources; changes in domestic and foreign laws and regulations; trade balance; natural disasters; geopolitical instability; and the effects of governmental regulations on the Debtors' businesses. The Subscriber acknowledges that it is prepared for the substantial economic risks involved in the purchase of the Rights Offering Securities, including the total loss of its investment. The Debtors will not be under any duty to update the projections or the risk factors included in the Disclosure Statement prior to or after the Closing Date.

(h)     The Subscriber understands that the Rights Offering Securities have not been registered under the Securities Act nor qualified under any state securities laws and that the Rights Offering Securities are being offered and sold pursuant to an exemption from such registration and qualification requirements based in part upon the Subscriber's representations contained herein.

5.     [RESERVED]

6.     <u>CONDITIONS TO CLOSING</u>.

(a)     <u>Conditions to Each Party's Obligations</u>.  The respective obligations of the Subscriber and the Company to consummate the transactions contemplated by this Agreement are subject to the simultaneous occurrence of the Effective Date.

(b)     <u>Conditions to Obligations of the Company</u>. The obligations of the Company to consummate the transactions contemplated by this Agreement with the Subscriber are subject

to the satisfaction or waiver, at or prior to the Closing, of the following conditions:

(i)      All representations and warranties of the Subscriber in <u>Section 3</u> of this Agreement must be true, correct and complete in all respects on the Closing Date;

(ii)     All acknowledgments of the Subscriber in <u>Section 4</u> of this Agreement must be true, correct and complete in all respects on the Closing Date;

(iii)    The Plan shall have been confirmed by the Bankruptcy Court; and

(iv)     Compliance by the Subscriber with the Rights Offering Procedures governing the Rights Offering, including payment by the Subscriber of the Purchase Payment Amount.

(c)      <u>Conditions to Obligations of the Subscriber</u>. The obligations of the Subscriber to consummate the transactions contemplated by this Agreement are subject to the satisfaction or waiver, at or prior to the Closing, of the following conditions:

(i)      All representations and warranties of the Company in <u>Section 2</u> of this Agreement must be true and correct in all material respects on the Closing Date; and

(ii)     Compliance by the Company with the Rights Offering Procedures governing the Rights Offering.

7.      <u>TERMINATION</u>.

Unless the Closing has occurred, this Agreement will terminate upon the earlier of (i) termination of the Plan or rejection of the Plan by all classes entitled to vote, (ii) termination of the Restructuring Support in accordance with its terms and (iii) the Outside Date.  In the event this Agreement is terminated, any payments received pursuant to <u>Section 1(a)</u> of this Agreement will be returned, without interest, to the Subscriber as soon as reasonably practicable, but in any event, within five Business Days after the date of termination.

8.      <u>INTERPRETATION OF THIS AGREEMENT</u>.

(a)      <u>Terms Defined</u>.[1]  As used in this Agreement, the following terms have the respective meanings set forth below:

"<u>Eligibility Certification</u>:"  The certification in item 2c of the Subscription Form.

"<u>Affiliate</u>:"  The meaning set forth in section 101(2) of the Bankruptcy Code.

"<u>Allowed Senior Notes Claim</u>:"  Has the meaning ascribed to such term in the Plan.

---

[1]      Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

"<u>Bankruptcy Rules</u>:"  The Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

"<u>Business Day</u>:"  Any day, other than a Saturday, Sunday or legal holiday, as defined in Bankruptcy Rule 9006(a).

"<u>Chapter 11 Cases</u>:"  The procedurally consolidated Chapter 11 Cases [●] pending for the Debtors in the Bankruptcy Court pursuant to the [*Order (i) Directing Joint Administration of Chapter 11 Cases and (ii) Granting Related Relief* (Docket No. [●])].

"<u>Claim</u>:"  The meaning set forth in section 101(5) of the Bankruptcy Code.

"<u>Confirmation Date</u>:"  The date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"<u>Confirmation Order</u>:"  An Order confirming the Plan under section 1129 of the Bankruptcy Code.

"<u>DTC</u>:"  The Depositary Trust Company.

"<u>Effective Date</u>:"  The date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in the Plan have been satisfied or waived in accordance with the Plan.

"<u>Eligible Holder</u>:"  Has the meaning ascribed to it in the Subscription Form.

"<u>Senior Notes Claim</u>:"  Has the meaning ascribed to such term in the Plan.

"<u>Governmental Entity</u>:"  Any U.S. or non-U.S. international, regional, federal, state, municipal or local governmental, judicial, administrative, legislative or regulatory authority, entity, instrumentality, agency, department, commission, court or tribunal of competent jurisdiction (including any branch, department or official thereof).

"<u>Order</u>:"  Any judgment, order, award, injunction, writ, permit, license or decree of any Governmental Entity or arbitrator of applicable jurisdiction.

"<u>Outside Date</u>:"  the date that is [●] days from entry of the Confirmation Order, and in any event [●] days from the Petition Date.

"<u>Person</u>:"  An individual, partnership, limited liability company, joint-stock company, corporation, trust or unincorporated organization, or a government or agency or political subdivision thereof.

"<u>Petition Date</u>:"  The date on which each of the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

"Plan Supplement:"  The compilation of documents and forms of documents, schedules and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules), to be filed by the Debtors in accordance with the Plan.

"Record Date:"  Has the meaning ascribed to it in the Rights Offering Procedures.

"Rights Offering:"  Has the meaning ascribed to it in the Rights Offering Procedures.

"Rights Offering Procedures:"  The document entitled "McDermott International, Inc. Rights Offering Procedures."

"Senior Notes Claims:"  Has the meaning ascribed to it in the Plan.

"Subscribed Amount:"  Has the meaning set forth in Section 1(a) of this Agreement.

"Subscription Agent:"  Prime Clerk, LLC, or any other entity designated as such by the Company, in its capacity as a subscription agent in connection with the Rights Offering.

"Subscription Commencement Date:"  The date on which this Agreement is first sent to Eligible Holders of Senior Notes Claims.

"Subscription Expiration Deadline:"  4:00 p.m. prevailing Central Time on Wednesday, February 19, 2020, the date by which the properly completed Agreement and the Purchase Payment Amount will be required to be delivered to the Subscription Agent as provided in the Subscription Form.

"Subscription Form:"  The subscription form to be completed by holders of Senior Notes Claims.

"Subscription Right:"  Has the meaning ascribed to it in the Rights Offering Procedures.

"Transfer:"  Has the meaning ascribed to it in the Rights Offering Procedures.

(b)      Directly or Indirectly.  Where any provision in this Agreement refers to action to be taken by any Person, or which such Person is prohibited from taking, such provision will be applicable whether such action is taken directly or indirectly by such Person.

(c)      Governing Law; Jurisdiction.  THIS AGREEMENT, AND ALL CLAIMS ARISING OUT OF OR RELATING THERETO, WILL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES. THE SUBSCRIBER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF, AND VENUE IN, THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION, AND WAIVES ANY OBJECTION BASED ON *FORUM NON CONVENIENS*.

(d)     Section Headings.  The headings of the sections and subsections of this Agreement are inserted for convenience only and shall not be deemed to constitute a part thereof.

(e)     Construction.   This Agreement has been freely and fairly negotiated between the parties.  If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.  The words "include", "includes", and "including" will be deemed to be followed by "without limitation." Pronouns in masculine, feminine and neuter genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement", "herein", "hereof", "hereby", "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

9.     MISCELLANEOUS.

(a)     Notices.

(i)     The Subscriber acknowledges that a completed and signed copy of this Agreement, the Subscription Form, as applicable, together with payment of the applicable Purchase Payment Amount, must be received by the Subscription Agent in accordance with the instructions included herewith by the Subscription Expiration Deadline for the subscription contemplated hereby to be valid.

(ii)     Except as otherwise provided in this Agreement, following execution of this Agreement, all demands, notices, requests, consents and other communications under this Agreement must be in writing, sent contemporaneously to all of the notice parties set forth below and deemed given when delivered, if delivered by hand or upon confirmation of transmission, if delivered by facsimile, or if no response to the effect that an email cannot be delivered to the sender is received within two (2) hours, if delivered by email, during standard business hours (from 8:00 A.M. to 6:00 P.M. at the place of receipt) at the addresses, facsimile numbers, and email addresses set forth below:

(A)     if to the Subscriber, at its address or facsimile number shown on the Subscription Form, or at such other address or facsimile number as the Subscriber may have furnished the Company and the Subscription Agent in writing; and

(B)     if to the Company, at (or at such other address or facsimile number as it may have furnished in writing to the Subscriber):

McDermott International, Inc.
Care of
Kirkland & Ellis LLP

Attn:   Anthony Grossi
       John R. Luze
       Luke Smith
601 Lexington Avenue
New York, NY 10022
Tel:    (212) 446-4829
Fax:    (212) 446-4801
Email: anthony.grossi@kirkland.com
       john.luze@kirkland.com
       lucas.smith@kirkland.com

(b)    <u>Expenses and Taxes</u>.  The Company will pay, and hold the Subscriber harmless from any and all liabilities (including interest and penalties) with respect to, or resulting from any delay or failure in paying, stamp and other taxes (other than income taxes), if any, which may be payable or determined to be payable on the execution and delivery of this Agreement or acquisition of the Rights Offering Securities pursuant to this Agreement.

(c)    <u>Reproduction of Documents</u>. This Agreement and all documents relating hereto may not be reproduced or distributed by the Subscriber without the prior written consent of the Company.

(d)    <u>Assignment; Successors</u>.  This Agreement is not assignable by the Subscriber without the prior written consent of the Company. This Agreement and the rights, powers and duties set forth herein will inure to the benefit of and be binding upon the successors and permitted assigns of each of the parties.

(e)    <u>Entire Agreement; Amendment and Waiver</u>. This Agreement constitutes the entire understanding of the parties hereto and supersedes all prior understandings among such parties with respect to the matters covered herein.  This Agreement may be amended, and the observance of any term of this Agreement may be waived, with (and only with) the written consent of the Company and the Subscriber.

(f)    <u>Severability</u>.  If any provision of this Agreement or the application of such provision to any Person or circumstance is held to be invalid by any court of competent jurisdiction, the remainder of this Agreement or the application of such provision to Persons or circumstances other than those to which it is held invalid will not be affected thereby.

(g)    <u>Counterparts; Facsimile and PDF Signatures</u>. This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which together will be considered one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile or portable document format (PDF) transmission shall constitute effective execution and delivery of this Agreement as to the parties hereto and may be used in lieu of the original Agreement for all purposes. Signatures of the parties hereto transmitted by facsimile or PDF shall be deemed to be their original signatures for all purposes.

Please indicate your acceptance and approval of the foregoing in the space provided below.


ACCEPTED AND APPROVED

as of the____day of_____, 2020

SUBSCRIBER:   _____
(Please provide full legal name)

Signature: _____

Name of Signatory: _____

Title: _____


Address: _____

City:_____State: _____

Postal Code: _____

Country: _____

Telephone:_____Facsimile: _____

Email Address: _____

If U.S. person, check here and attach IRS Form W-9: □ U.S. person

If Non-U.S. person, check here and attach appropriate IRS Form W-8: □ Non-U.S. person


[●]

_____
Name:
Title:

## **EXHIBIT 4B**

**Subscription Form**

**MCDERMOTT INTERNATIONAL, INC.**

**RIGHTS OFFERING**
**SUBSCRIPTION FORM**

**FOR USE BY ELIGIBLE HOLDERS**

**IN CONNECTION WITH DEBTORS' DISCLOSURE**
**STATEMENT DATED JANUARY 21, 2020, AS AMENDED**

---

<u>**SUBSCRIPTION EXPIRATION DEADLINE**</u>

**The Subscription Expiration Deadline is 4:00 p.m. prevailing Central Time on Wednesday, February 19, 2020.**

\*\*\*\*\*

**IMPORTANT**

**Please note your Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and Subscription Agreement along with completing wire transfer of the applicable Purchase Payment Amount must be received by the Subscription Agent on or prior to the Subscription Expiration Deadline or the subscription represented by your Subscription Form will not be counted and will be deemed forever relinquished and waived. Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Plan or Rights Offering Procedures, as applicable.**

\*\*\*\*\*

**The Rights Offering Securities are being distributed and issued by the McDermott International, Inc. without registration under the Securities Act, in reliance generally upon the exemption from registration provided by Section 1145 of the Bankruptcy Code.**

**The Subscription Rights will not be detachable from the underlying claims (the "Applicable Claims") and no Subscription Rights may be sold, transferred, assigned, pledged, hypothecated, participated, donated or otherwise encumbered or disposed of, directly or indirectly (including through derivatives, options, swaps, forward sales or other transactions in which any person receives the right to own or acquire any current or future interest in the Subscription Rights, the Rights Offering Securities, the Applicable Claims and any related claims) (each of the above, a "<u>Transfer</u>"); *provided* that holding securities attesting ownership of Subscription Rights in an account with a broker dealer where the broker dealer holds a security interest or other encumbrance over property in the account generally, which security interest or other encumbrance is released upon transfer of such securities, shall not constitute a "Transfer" for purposes hereof. The Subscription Rights, together with the underlying Applicable Claims of the Eligible Holders with respect to which such Subscription Rights were issued, will be evidenced by the corresponding Applicable Claims until the Subscription Expiration Deadline and will Transfer together as a unit, subject to such limitations, if any, that would be applicable to the transferability of the underlying Applicable Claims. Participation in the Rights Offering is limited to Eligible Holders. The Rights Offering Securities are available only to Eligible Holders, and any invitation, offer or agreement to purchase will be entered into only with Eligible Holders. No offer or invitation to subscribe is being made to any person who is not an Eligible Holder and no such person should act or rely on any offer or invitation to subscribe or purchase Rights Offering Securities contained in this document.**

**To exercise the Subscription Rights, an Eligible Holder must complete and return to the Subscription Agent (as defined in the Rights Offering Procedures) a Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and a Subscription Agreement (as defined in the Rights Offering Procedures), and pay the applicable Purchase Payment Amount (as defined in the Rights Offering Procedures), prior to the Subscription Expiration Deadline (as defined in the Rights Offering Procedures). Eligible Holders must deliver their Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and their Subscription Agreement (as defined in the Rights Offering Procedures) to their nominees in sufficient time to allow such Nominee to deliver the Subscription Form and Subscription Agreement to the Subscription Agent, and they must electronically deliver the respective notes underlying claims by Eligible Holders of Senior Notes (the "<u>Senior Notes Claims</u>") to the Subscription Agent through the Automated Tender Offer Program ("<u>ATOP</u>") in accordance with the procedures of The Depositary Trust Company ("<u>DTC</u>") prior to the Subscription Expiration Deadline.**

**Any Eligible Holder that subscribes for Rights Offering Securities and is an "underwriter" under Section 1145(b) of the Bankruptcy Code will be subject to restrictions under the Securities Act on its ability to resell**

those securities and will receive "restricted securities" (as defined under Rule 144 promulgated under the Securities Act). Resale restrictions are discussed in more detail in Article XII of the Disclosure Statement, entitled "Certain Securities Law Matters."

Exercise of the Subscription Rights once made cannot be revoked unless the Rights Offering is terminated. Senior Notes that have been tendered cannot be withdrawn, and therefore cannot be transferred, unless exercise of the Subscription Rights is permitted to be revoked because the Rights Offering has been terminated. Similarly, no transfer of any other Applicable Claims corresponding to Subscription Rights that have been exercised will be recognized, unless the Rights Offering is terminated.

The distribution or communication of the Rights Offering Procedures and the issue of the Rights Offering Securities in certain jurisdictions may be restricted by law. No action has been taken or will be taken to permit the distribution or communication of the Rights Offering Procedures in any jurisdiction where any action for that purpose may be required. Accordingly, these Rights Offering Procedures may not be distributed or communicated, and the Rights Offering Securities may not be subscribed, purchased or issued, in any jurisdiction, except in circumstances where such distribution, communication, subscription, purchase or issuance would comply with all applicable laws and regulations without the need for the issuer to take any action or obtain any consent, approval or authorization therefor, except for any notice filings required under U.S. federal and applicable state securities laws.

Each Rights Offering Security issued upon exercise of a Subscription Right to an Eligible Holder located outside the United States, and each certificate issued in exchange for or upon the transfer, sale, or assignment of any such Rights Offering Securities, shall be stamped or otherwise imprinted with a legend in substantially the following form:

"THE SECURITIES REPRESENTED BY THIS CERTIFICATE WERE ORIGINALLY ISSUED ON [●], HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR ANY OTHER APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN AVAILABLE EXEMPTION FROM REGISTRATION THEREUNDER."

In any member state of the European Economic Area (the "EEA") that has implemented the EU Prospectus Directive (each, a "Relevant Member State"), these Rights Offering Procedures (and any offer of Rights Offering Securities) are only addressed to and only directed at qualified investors in that Relevant Member State within the meaning of the EU Prospectus Directive. These Rights Offering Procedures have been prepared on the basis that all offers of Rights Offering Securities within the EEA will be made pursuant to an exemption under the EU Prospectus Directive from the requirement to publish a prospectus for offer of securities. Accordingly, any person making or intending to make any subscription of Rights Offering Securities within any EEA member state should only do so in circumstances in which no obligation arises to publish a prospectus or a supplement to a prospectus under the EU Prospectus Directive for such offer. Neither McDermott International, Inc. or any of its affiliates, nor any person acting on their behalf, has authorized, nor do they authorize, the making of any offer of Rights Offering Securities through any financial intermediary, other than as may be contemplated herein. The expression "EU Prospectus Directive" means Directive 2003/71/EC (and amendments thereto, including the 2010 PD Amending Directive, to the extent implemented in the Relevant Member State), and includes any relevant implementing measure in each Relevant Member State, and the expression "2010 PD Amending Directive" means Directive 2010/73/EU.

In relation to each Relevant Member State, no offer of the Rights Offering Securities or the Subscription Rights may be made to the public at any time other than pursuant to an exemption under the EU Prospectus Directive.

In the United Kingdom, any offer or invitation contained in these Rights Offering Procedures is directed only at persons who are investment professionals within the meaning of Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005 (the "FPO") or high net worth companies, unincorporated associations or other bodies within the categories described in Article 49(2)9a) to (d) of the FPO (together, "Relevant Persons").

The Rights Offering is being conducted in good faith and in compliance with the Bankruptcy Code. In accordance with Section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale, or

**purchase of securities.**

**The record date for the Rights Offering is January 17, 2020 (the "<u>Rights Offering Record Date</u>").**

**Please consult the Plan, the Disclosure Statement, the Subscription Agreement, the and the Rights Offering Procedures for additional information with respect to this Subscription Form.  Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or Rights Offering Procedures, as applicable.**

**Questions may also be directed to the Subscription Agent via email to: McDermottBallots@primeclerk.com (please reference "McDermott Rights Offering" in the subject line) or at the following telephone numbers: (877) 426-7705 (Toll Free) or (917) 994-8380 (International).**

**Item 1.  Amount of Claims.**

I certify that I am a holder of Allowed Senior Notes Claims (as defined in the Plan) in Class 9 under the Plan in the following amount(s) as of the Record Date (insert amount(s) on the lines below) or that I am the authorized signatory of that holder.

*Insert amount of Class 9 Allowed Senior Notes Claims held at the Record Date*

1 _____

| *If you own:* | *The amount of your Class 9 Allowed Senior Notes Claim is:* |
|---|---|
| Class 9 | $[●] per $1,000 aggregate principal amount |

*Questions may also be directed to the Subscription Agent via email to:* McDermottBallots@*primeclerk.com (please reference "McDermott Rights Offering" in the subject line).*

**Item 2.  Rights.**

**2a. Calculation of Maximum Number of Rights Offering Securities**. The maximum number of shares of New Common Stock for which you may subscribe is calculated as follows:



Each Eligible Holder is entitled to subscribe for [●] shares of New Common Stock per $[●] amount of Class 9 Allowed Senior Notes Claims (the "Maximum Participation Amount"), subject to the individual limits included in the calculations in Item 2.

To subscribe, fill out Items 1, 2a, 2b and 2c, read Item 3, and read and complete Item 4 below.

**2b. Purchase Payment Amount**. By filling in the following blanks, you are indicating that the undersigned Eligible Holder is interested in purchasing the number of shares of New Common Stock specified below (specify number of shares of New Common Stock, which is not greater than the Maximum Participation Amount calculated in Item 2a above), on the terms and subject to the conditions set forth in the Subscription Agreement and the Rights Offering Procedures.

| | | | | |
|---|---|---|---|---|
| _____<br>(Indicate number of shares of New Common Stock you elect to purchase) (minimum denomination of $1,000 and integral multiples of $1,000 in excess thereof) | X | [●]¹ | = | $_____<br>Purchase Payment Amount |

       If all or any portion of your Senior Notes Claim is determined not to be an Allowed Senior Notes Claim, your Maximum Participation Amount will reduced, in accordance with the terms of the Plan, the Rights Offering Procedures and the Subscription Agreement, and to the extent the amount of Rights Offering Securities which you subscribed and paid for exceeds your reduced Maximum Participation Amount, the amount of Rights Offering Securities which you subscribed and paid for will be reduced to the reduced Maximum Participation Amount.

---

¹ Amount equals the "Purchase Price" per share.

-2-

**2c. Eligible Holder Certification.**  The undersigned certifies that:

IN ORDER TO PARTICIPATE IN THE RIGHTS OFFERINGS, YOU MUST COMPLETE THIS QUESTIONNAIRE.   ANY PERSON THAT IS NOT AN ELIGIBLE HOLDER IS NOT ELIGIBLE TO PARTICIPATE IN THE RIGHTS OFFERINGS.

(1)   The Person submitting this Subscription Form is in the United States and is a "U.S. Person" (as defined on **Exhibit A**).

_____YES   _____NO

(2)   The person submitting this Subscription Form outside the United States and (a) is both (i) a "Qualified Investor" (as defined on **Exhibit A**) and (ii) a "Relevant Person" (as defined on **Exhibit A**) that is (b) not a "U.S. Person" (defined on **Exhibit A**).

_____YES   _____NO

**Item 3.  Payment and Delivery Instructions**

Payment of the Purchase Payment Amount calculated pursuant to Item 2b above shall be made by wire transfer ONLY in accordance with the following instructions:

| Account Name : | [●] |
|---|---|
| Bank Account No.: | [●] |
| ABA/Routing No.: | [●] |
| Bank Name: | [●] |
| Bank Address: | [●] |
| Reference: | [Insert claimant name in memo field] |

Please deliver your completed Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and your properly executed Subscription Agreement with respect to Senior Notes Claims and to the Subscription Agent so that it is received by the Subscription Expiration Deadline at:

McDermott Rights Offering Processing
c/o Prime Clerk, LLC
830 Third Avenue, 3rd Floor
New York, NY  10022
Email:  McDermottBallots@primeclerk.com

**PLEASE NOTE: NO SUBSCRIPTION WILL BE VALID UNLESS THIS SUBSCRIPTION FORM AND THE SIGNED SUBSCRIPTION AGREEMENT ALONG WITH THE**

APPROPRIATE FUNDS ARE VALIDLY SUBMITTED TO THE SUBSCRIPTION AGENT BY THE SUBSCRIPTION EXPIRATION DEADLINE.

PLEASE NOTE: NO SUBSCRIPTION WILL BE VALID UNLESS THIS SUBSCRIPTION FORM AND THE SIGNED SUBSCRIPTION AGREEMENT IS VALIDLY SUBMITTED TO THE SUBSCRIPTION AGENT BY THE SUBSCRIPTION EXPIRATION DEADLINE.

**Item 4.  Certification.**

I certify that (i) as of the Record Date, the undersigned was the holder of the Allowed Senior Notes Claims set forth in Item 1 above at the Record Date, (ii) I have received a copy of the Plan, the Disclosure Statement, the Subscription Agreement and the Rights Offering Procedures, and (iii) I understand that the exercise of my rights under the Rights Offering is subject to all the terms and conditions set forth in the Plan, the Subscription Agreement, and the Rights Offering Procedures.

**I acknowledge that, by executing the Subscription Agreement and this Subscription Form, the undersigned Eligible Holder has elected to subscribe for the number of Rights Offering Securities designated under Item 2b above and will be bound to pay for the Rights Offering Securities it has subscribed for and that it may be liable to the Debtors to the extent of any nonpayment.**

Date: _____

Name of Eligible Holder: _____

U.S. Federal Tax EIN/SSN (optional): _____

If Non-U.S. person, check here and attach appropriate IRS Form W- 8 ☐
If U.S. person, check here and attach IRS Form W-9 ☐

Signature: _____
Name of Signatory: _____
Title: _____
Address: _____
Telephone Number: _____
Fax: _____
Email: _____

**PLEASE COMPLETE THE <u>THREE SECTIONS BELOW</u> IF RIGHTS OFFERING SECURITIES ARE TO BE ISSUED TO THE ELIGIBLE HOLDER.**

**A. Please indicate on the lines provided below the Registration Name of the Eligible Holder in whose name the Rights Offering Securities should be issued, in the event the Rights Offering Securities are not DTC eligible:**

Registration Line 1:_____

Registration Line 2:_____

(if needed)
Address 1: _____

Address 2: _____

Address 3: _____

Address 4: _____

Telephone:_____

Email: _____

**B. DTC Participant for the deposit of Rights Offering Securities, in the event the Rights Offering Securities are DTC eligible:**

DTC Participant name: _____

DTC Participant number: _____

Information regarding your contact

at the DTC Participant:

Contact Name:_____

Contact Telephone: _____

Contact Email:_____

**C. Wire information in the event a refund is needed:**

Account Name: _____

Bank Account No.: _____

ABA/Routing No.: _____

Bank Name:_____

Bank Address: _____

Reference: _____

---

**PLEASE RETURN THIS SUBSCRIPTION FORM (WITH ACCOMPANYING IRS FORM W-9 OR APPROPRIATE IRS FORM W-8, AS APPLICABLE) AND THE SUBSCRIPTION AGREEMENT WITH RESPECT TO SUCH CLAIMS DIRECTLY TO THE SUBSCRIPTION AGENT.**

**EXHIBIT A**

"**EEA**" means the European Economic Area.

"**Eligible Holder**" means a holder of an Applicable Claim that is:

(1)      in the United States and is a "US" Person (as defined by Rule 902 of Regulation S promulgated under the Securities Act; or

(2)      outside the United States and is both a "Qualified Investor" (defined below) and a "Relevant Person" (each, as defined below) that is not a "U.S. Person" (as defined by Rule 902 of Regulation S promulgated under the Securities Act).

"**EU Prospectus Directive**" means Directive 2003/71/EC (and amendments thereto, including the 2010 PD Amending Directive, to the extent implemented in the Relevant Member State), and includes any relevant implementing measure in each Relevant Member State and the expression "2010 PD Amending Directive" means Directive 2010/73/EU.

"**Qualified Investor**" means:

(1)      a person in a member state of the EEA that is a "Qualified Investor" in that Relevant Member State within the meaning of the EU Prospectus Directive; or

(2)      a person not in a member state of the EEA, that is lawfully entitled to subscribe and purchase the Rights Offering Securities under all applicable securities laws and regulations (whether pursuant to an applicable exemption or otherwise), without the need for any registration, the filing or publication of any prospectus or other action by the issuer.

"**Relevant Member State**" means any member state of the EEA that has implemented the EU Prospectus Directive

"**Relevant person**" means:

(1)      persons outside the United Kingdom; or

(2)      persons who are investment professionals within the meaning of Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005 (the "FPO"); or

(3)      high net worth companies, unincorporated associations or other bodies within the categories described in Article 49(2)(a) to (d) of the FPO.

"**U.S. Person**" means:

(1)      Any natural person resident in the United States;

(2)     Any partnership or corporation organized or incorporated under the laws of the United States;

(3)     Any estate of which any executor or administrator is a U.S. person;

(4)     Any trust of which any trustee is a U.S. person;

(5)     Any agency or branch of a foreign entity located in the United States;

(6)     Any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

(7)     Any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

(8)     Any partnership or corporation if:

    (a)     Organized or incorporated under the laws of any foreign jurisdiction; and

    (b)     Formed by a U.S. person principally for the purpose of investing in securities not registered under the Act, unless it is organized or incorporated, and owned, by accredited investors (as defined above) who are not natural persons, estates or trusts.

**<u>EXHIBIT 5</u>**

**Auction Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | ) Case No. 20-30336 (DRJ) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Re: Docket No. __** |

**NOTICE OF AUCTION FOR THE
SALE OF THE LUMMUS ASSETS AND INTERESTS**

**PLEASE TAKE NOTICE** that certain of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") are soliciting offers for the purchase of the right, title, and interest of the Debtors in and to equity interests (or reorganized equity interests, as applicable) of the Lummus Debtors [2] (as applicable, the "Lummus Assets and Interests") and assumption of certain liabilities of the Debtors consistent with the proposed bidding procedures (the "Bidding Procedures") and proposed order approving the Bidding Procedures (the "Bidding Procedures Order"),[3] both of which were filed by the Debtors with the United States Bankruptcy Court for the Southern District of Texas (the "Court") on Wednesday, January 22, 2020 [Docket Nos. 25, 26]. **All interested bidders should carefully read the proposed Bidding Procedures and proposed Bidding Procedures Order and, once entered, the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek entry of of the proposed

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

[2]    The "Lummus Debtors" are Lummus Technology LLC; McDermott Technology (2), B.V.; McDermott Technology (3), B.V.; OOO Lummus Technology; CB&I Lummus Engineering & Technology China Co. Ltd.; Lummus Technology Heat Transfer B.V. (Netherlands); Lummus Technology Heat Transfer B.V. (India); Lummus Novolen Technology GmbH; Novolen Technology Holdings C.V.; Lummus Technology B.V.; Lummus Gasification Technology Licensing LLC; Lummus Engineered Products, LLC; Lummus Technology International LLC; Lummus Technology Services LLC; Chemical Research and Licensing, LLC; Lummus Technology Ventures LLC; Catalytic Distillation Technologies; Lummus Technology Overseas LLC; Chevron Lummus Global LLC; and CLG Technical Services, LLC.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the proposed Bidding Procedures Order (as defined herein), the proposed Bidding Procedures, or the proposed Sale Order, as applicable.

Bidding Procedures Order and proposed Bidding Procedures at a hearing which is presently scheduled to commence on **[●] (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable David R. Jones in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002 (the "Second Day Hearing").

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the proposed Bidding Procedures or the proposed Bidding Procedures Order **must**:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court, so that it may be **actually received** by the following parties, prior to **[●] (prevailing Central Time)** (the "Bidding Procedures Objection Deadline"), as provided for in the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving the Form and Manner of Notice of Commencement, (IV) Approving the Rights Offering Procedures and Related Materials, (V) Waiving the Requirement that the U.S. trustee Convene a Meeting of Creditors, (VI) Waiving the Requirement that the Debtors File Schedules and Statements, (VII) Approving the Form and Manner of Notice of Bid Deadlines and an Auction, and (VIII) Granting Related Relief*  (the "Scheduling Order"), approved by the Court by entry of an order on [●] [Docket No. [●]].

> **Copies of the Scheduling Order, proposed Bidding Procedures Order, the proposed Bidding Procedures, or other documents related thereto are available upon request to Prime Clerk LLC by calling (877) 426-7705 (Toll Free) or (917) 994-8380 (International), emailing McDermottInfo@primeclerk.com, or visiting the Debtors' restructuring website at (https://cases.primeclerk.com/McDermott).**

      **PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **[●] (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **[●] (prevailing Eastern Time)** at Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors expect to announce the results of the Auction and the selection of the Successful Bidder and seek Court approval to enter into the Definitive Purchase Agreement at the Combined Hearing, which is presently scheduled to commence on **[●] (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable David R. Jones in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002.

PLEASE TAKE FURTHER NOTICE that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to the proposed Cure Amounts or the assumption or assumption and assignment of Lummus Executory Contracts and Expired Leases, objections, if any, to a proposed Sale **must**:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court, so that it may be **actually received** by the following parties, prior to [●] **(prevailing Central Time)** (the "Sale Objection Deadline"); *provided* that if the Auction occurs after [●], the Sale Objection Deadline shall be automatically extended through 4:00 p.m. (prevailing Central Time) on the date that is three (3) days following the Auction.

| Counsel to the Debtors | Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn.:  Joshua A. Sussberg, P.C.<br>(joshua.sussberg@kirkland.com), Christopher T. Greco, P.C. (christopher.greco@kirkland.com), Anthony R. Grossi (anthony.grossi@kirkland.com), and John R. Luze (john.luze@kirkland.com) | Jackson Walker L.L.P.<br>1401 McKinney Street<br>Houston, Texas 77010<br>Attn:  Matthew D. Cavenaugh<br>(mcavenaugh@jw.com) |
| **The United States Trustee** | **Counsel to Consenting Term and Superpriority Term Lenders** |
| Office of the United States Trustee<br>for the Southern District of Texas<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Attn.:  Hector Duran (hector.duran.jr@usdoj.gov) | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn:  Damian S. Schaible<br>(damian.schaible@davispolk.com) and Natasha Tsiouris (Natasha.tsiouris@davispolk.com) |
| **Counsel to Consenting 2021 LC Lenders** | **Counsel to the Proposed DIP LC Agent, the Proposed DIP Collateral Agent, the Revolving Administrative Agent and the Revolving and LC Administrative Agent** |
| Latham & Watkins LLP<br>855 Third Avenue<br>New York, New York 10022-4834<br>Attn:  Melissa Alwang (melissa.alwang@lw.com) | Linklaters LLP<br>1345 Avenue of the Americas<br>New York, New York 10105<br>Attn:  Margot Schonholtz<br>(margot.schonholtz@linklaters.com) and Penelope Jensen (Penelope.jensen@linklaters.com) |
| **Co-Counsel to the Ad Hoc Group of Senior Noteholders** | **Co-Counsel to the Ad Hoc Group of Senior Noteholders** |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 6th Ave, New York, NY 10019<br>Attn: Andrew N. Rosenberg<br>(arosenberg@paulweiss.com) and Alice Belisle Eaton (aeaton@paulweiss.com) | Brown Rudnick LLP<br>7 Times Square, New York, NY 10036<br>Attn: Robert J. Stark (rstark@brownrudnick.com) and Bennett S. Silverberg<br>(bsilverberg@brownrudnick.com) |

## Consequences of Failing to Timely File and Serve an Objection:

Any party or entity who fails to timely file and serve an objection to the proposed Bidding Procedures or proposed Bidding Procedures Order on or before the Bidding Procedures Objection Deadline in accordance with the Scheduling Order shall be forever barred from asserting any objection to the Bidding Procedures or Bidding Procedures Order.

Any party or entity who fails to timely file and serve an objection to the Sale on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the Lummus Assets and Interests free and clear of liens, claims, encumbrances, and other interests effected thereunder.

## No Successor or Transferee Liability

The proposed Sale Order provides that, upon the Closing, no member of the Buyer Group shall, or shall be deemed to, (i) be the successor of or successor employer to any of the Sellers, including without limitation, with respect to any collective bargaining agreement, works council agreement, or other labor Contract, any Benefit Plans, or any Multiemployer Plans, and the Buyer and/or its affiliates (including the Target Entities), as applicable, shall instead be, and be deemed to be, a new employer, including with respect to, among other things, any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws (provided that the Buyer shall pay any employee-related liabilities to the extent included in the Assumed Liabilities); (ii) have any common law successorship liability in relation to any Benefit Plan or Multiemployer Plan, including with respect to withdrawal liability or contribution obligations; (iii) have, *de facto*, or otherwise, merged or consolidated with or into Sellers; (iv) be a mere continuation or substantial continuation of Sellers or the enterprise(s) of Sellers; or (v) be liable for any acts or omissions of Sellers in connection with any collective bargaining agreement, works council agreement, or other labor Contract, the conduct of the Business, or the operation, funding or administration of the Benefit Plans or Multiemployer Plans or arising under or related to the Purchased Assets other than as expressly set forth in the Stalking Horse SAPA and the Transaction Documents.  Without limiting the generality of the foregoing, and except as otherwise provided in the Stalking Horse SAPA, the parties intend and the Court hereby finds that the Buyer Group shall not be liable for any encumbrance or Liability (other than Assumed Liabilities and Permitted Liens) against any Seller, or any of its predecessors or affiliates, and the Buyer Group shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Business, any collective bargaining agreement, works council agreement, or other labor Contract, the operation, funding, or administration of the Benefit Plans or Multiemployer Plans, the Purchased Assets or any Liabilities of any Seller arising or attributable to periods prior to the Closing Date.  The Buyer would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability," *de facto* merger, or theories of similar effect.

4

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the proposed Bidding Procedures, proposed Bidding Procedures Order, and/or to terminate discussions with any Potential Bidders at any time.

**PLEASE TAKE FURTHER NOTICE** that copies of the Scheduling Order, Bidding Procedures Motion, proposed Bidding Procedures, and proposed Bidding Procedures Order, as well as all related exhibits, are available free of charge upon request to Prime Clerk LLC (the notice and claims agent retained in these chapter 11 cases) (a) by calling (877) 426-7705 (Toll Free) or (917) 994-8380 (International); (b) emailing McDermottInfo@primeclerk.com; (c) by visiting the website maintained in these chapter 11 cases at (https://cases.primeclerk.com/McDermott); or (d) for a fee via PACER by visiting (http://www.txs.uscourts.gov).

Houston, Texas
January [●], 2020

/s/
_____

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:      (713) 752-4221
Email:          mcavenaugh@jw.com
                jwertz@jw.com
                kpeguero@jw.com
                vpolnick@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christopher T. Greco, P.C. (*pro hac vice* pending)
Anthony R. Grossi (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                christopher.greco@kirkland.com
                anthony.grossi@kirkland.com

-and-

James H.M. Sprayregen, P.C.
John R. Luze (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*