UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| McDermott International, Inc., et al., | ) ) ) | Case No. 20-30336 (DRJ) (Jointly Administered) |
| Debtors. | ) ) ) | |

**LIMITED OBJECTION OF THE SECURITIES AND EXCHANGE COMMISSION
TO CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN
OF MCDERMOTT INTERNATIONAL, INC. AND ITS DEBTOR AFFILIATES**

The United States Securities and Exchange Commission (the "SEC" or "Commission") submits this limited objection to confirmation of the *Amended Joint Prepackaged Chapter 11 Plan of Reorganization of McDermott International, Inc. and Its Debtor Affiliates* [Dkt. 121] (the "Plan") pursuant to Section 524(e) of the Bankruptcy Code and applicable law. In support of its objection, the Commission respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Commission objects to confirmation of the Plan because it would release the liability of, and permanently enjoin actions against, non-debtor third parties based on actual fraud, willful misconduct, and gross negligence in contravention of Section 524(e) of the Bankruptcy Code, applicable law in the Fifth Circuit, and public policy. The Debtors seek to impose these broad releases on all creditors and interest holders, including public shareholders who are deemed to reject the Plan.

2. Section 524(e) of the Bankruptcy Code provides that only debts of the debtor are affected by the Chapter 11 discharge provisions. Yet the Plan includes third party releases that allow non-debtors to benefit from the Debtors' bankruptcy by effectively obtaining their own

discharges with respect to potential claims arising from past wrongdoing, including violations of the federal securities laws before the Chapter 11 cases. Such provisions are at odds with sound public policy considerations underlying the rights of creditors and investors to pursue legitimate claims against wrongdoers. Moreover, such provisions are particularly concerning here where securities class actions are pending against the Debtors and certain non-debtor parties, and the Debtors have publicly stated that they are the subject of an SEC investigation.

3. The Commission generally takes the position that third party releases are consensual only if the affected parties provide affirmative consent by opting *in* to the release. However, in light of this Court's previous rulings that a failure to "opt out" of a release constitutes consent, the Commission opposes confirmation of the Plan on the limited ground that the releases lack sufficient independent consideration to support the release of claims based on actual fraud, willful misconduct, and gross negligence.[1] Accordingly, the Commission urges the Court to require the Debtors to modify the release provision to carve out claims based on actual fraud, willful misconduct, and gross negligence.

## BACKGROUND

4. On January 21, 2020, McDermott and its 225 affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. As of the petition date, McDermott had approximately 193,081,224 shares of Class A common stock outstanding, which is registered with the Commission pursuant to Section 12(b) of the Securities Exchange Act. The common stock traded on the NYSE until it was delisted on February 6, 2020, and now trades on the OTC Pink

---

[1] The Commission does not believe that, under the facts of this case, the third party releases should be considered consensual, but acknowledges that in prior cases, this Court has found that inclusion of an opt out election on a ballot or non-voting notice is sufficient to render plan releases consensual. *See, e.g.*, *In re Westmoreland Coal Co,*, Case No. 18-35672 (Bankr. S.D. Tex.).

Marketplace under the symbol "MDRIQ." As of the petition date, McDermott also had approximately $9.251 billion in aggregate principal amount of funded and unfunded debt obligations, including senior unsecured notes in the principal amount of $1.3 billion (the "Notes"). *Declaration of John R. Castellano, Chief Transformation Officer, In Support of the Debtors' First Day Motions* [Dkt. 62] at 20.

5.  On January 22, 2020, the Debtors filed the Plan, which incorporates the terms of a restructuring support agreement (the "RSA") entered into prepetition with certain holders of the Debtors' funded debt. Generally, the Plan provides for the following: (i) the Debtors will reorganize as a going concern; (ii) reorganized McDermott will issue new common stock (the "New Equity") and new warrants to purchase up to 20% of New Equity on a fully diluted basis (the "New Warrants"); (iii) secured creditors will receive 94% of the New Equity; (iv) holders of the Notes will receive 4% of the New Equity, the New Warrants, and subscription rights to purchase additional shares of New Equity pursuant to a rights offering; (v) trade creditors will be paid in full; and (vi) holders of existing common stock will receive no distribution, their interests will be canceled, and they are deemed to reject the Plan.

6.  The Plan contains provisions (the "Releases") that would release and discharge the liability of various non-debtor third parties (the "Released Parties") with respect to any claim, whether known or unknown, based on or relating to the Debtors, including "any Securities issued by the Debtors and the ownership thereof…." *Plan* at 51-52. The Releases do not exclude liability for acts or omissions constituting actual fraud, willful misconduct, and gross negligence.

7.  The Plan includes an extensive list of "Released Parties" who will benefit from the Releases, including the Debtors' current and former officers, directors, principals, employees, representatives, professionals, and current and former equity holders. *Plan* at 13. The Released

Parties include unnamed individuals and entities that do not appear to have any direct connection or relationship to the Debtors or the Chapter 11 cases. Additionally, it is not clear what, if any, separate consideration is being provided by *each* Released Party in exchange for the benefits of the Releases. The Disclosure Statement [Dkt. 4] (the "Disclosure Statement") indicates only that the Released Parties "have made substantial and valuable contributions to the Debtors' restructuring efforts through efforts to negotiate and implement the Plan," and that the Releases are mutual releases. *Disclosure Statement* at 16, 34.

8. Creditors who vote to accept, or are deemed to accept, the Plan are deemed to consent to the Releases. Creditors who abstain from voting, vote to reject, or are deemed to reject the Plan are bound by the Releases unless they opt out. Public shareholders have been sent a notice of non-voting status informing them that they are deemed to reject the Plan and will be deemed to consent to the Releases unless they opt out.

## DISCUSSION

**I.     The Releases contravene Section 524(e), Fifth Circuit law, and public policy.**

9. One of the fundamental tenets of bankruptcy law is the granting of a discharge of a corporate debtor's remaining liabilities once creditors are paid in accordance with a Chapter 11 plan. Section 524(e) addresses the scope of a bankruptcy discharge and states, in relevant part, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The purpose of Section 524(e) therefore is to ensure that only a debtor that has submitted to the burdens of the bankruptcy process is entitled to the benefits of a discharge. *See Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) ("the language of [Sections 524(a) and (e)] reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit"); *In re Western Real Estate*

*Fund*, Inc., 922 F.2d 592, 600 (10th Cir. 1980), *modified sub nom.*, *Abel v. West*, 932 F.2d 898 (10th Cir. 1991).

10. The Fifth Circuit has flatly rejected non-debtor releases because they contravene Section 524(e). In numerous cases, the Fifth Circuit has made clear that Section 524(e) discharges only the debtor, not co-liable third parties, and prohibits non-debtor releases. *See, e.g., Feld v. Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995) ("Section 524(e) prohibits the discharge of debts of non-debtors"); *Hall v. Natl. Gypsum Co.*, 105 F.3d 225, 229 (5th Cir. 1997), citing *Matter of Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993) (Section 524(e) "specifies that the debt still exists and can be collected from any other entity that might be liable"); *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1061 (5th Cir. 2012) (the Fifth Circuit has "firmly pronounced its opposition to such releases"). In *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), the Fifth Circuit found that substantial consummation of a confirmed reorganization plan did not equitably moot consideration of non-debtor releases because such releases are "consequential to the integrity and transparency of the Chapter 11 process." *Id.* at 251. The court then proceeded to reaffirm its prior decisions and concluded:

> We see little equitable about protecting the released non-debtors from negligence arising out of the reorganization. In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties. *[citations omitted]*. These cases seem to broadly foreclose non-consensual non-debtor releases and permanent injunctions.

*Id.* at 252.

11. Thus, the Fifth Circuit has rejected the notion that bankruptcy proceedings may discharge the debts or liabilities of parties other than the debtor. On their face, the Releases here are contrary to controlling law and run afoul of Section 524(e).

5

12. Even more troubling, the Releases here grant immunity for scienter-based behavior, including fraud, willful misconduct, and gross negligence. Because public investors often receive little or no distribution in bankruptcy cases, their only source of recovery may be their ability to pursue claims against wrongdoers. And if misconduct by management contributed to the loss of their investments, they may have meritorious scienter-based claims. Moreover, the releasing parties under the Plan include all current and *former* holders of equity interests in McDermott. Former shareholders likely had no notice of the Plan, much less the opportunity to opt out of the Releases. The inclusion of former shareholders, together with the fact that McDermott's common stock traded on the NYSE until February 6, 2020 and continues to trade over the counter, means that holders of interests who received opt out ballots very likely do not represent all of the shareholders who will be bound by the Releases. Under these circumstances, the release of scienter-based claims is particularly egregious.

13. As discussed more fully below, the Releases here should be denied both as a matter of law --- because the parties that will benefit from such extraordinary relief did not provide independent consideration to releasing parties --- and as a matter of public policy --- because they deprive public shareholders of their rights and critical protections under the law.

    **A.**    **The Releases should not be approved because they lack independent consideration.**

14. In an attempt to circumvent the Fifth Circuit's prohibition against non-debtor third party releases, the Plan provides that entry of the confirmation order constitutes the Bankruptcy Court's finding that the Releases represent a good faith settlement and compromise of the claims released by the Releasing Parties pursuant to Bankruptcy Rule 9019. However, the Releases here fail to meet the most basic settlement requirement that *each* Released Party provide separate and meaningful consideration in exchange for the Releases. *See In re Bigler L.P.*, 442 B.R. 537, 549

(Bankr. S.D. Tex. 2010) (finding that a release provision was an acceptable settlement of claims because it released claims only of parties who had consented and to whom consideration had been provided by the released party); *In re Wool Growers Central Storage Co.,* 371 B.R. 768, 776 (Bankr. N.D. Tex. 2007) (finding that releases do not violate Section 524(e) if they are consensual, given for consideration by the released parties, specific in language, and integral to the plan), *citing Republic Supply Co. v. Shoaf*, 815 F. 2d 1046, 1050 (5th Cir. 1987). *See also In re Arrownill*, 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) (finding that a release is a valid settlement or contract where the creditor consents to the release and "presumably receives consideration in exchange for that agreement"). In *Bigler*, the court approved a release of estate claims where the released party was providing all of the funding under the plan, including payments to the unsecured creditors. *See Bigler*, 442 B.R. at 544. The court concluded that the release was part of a settlement of claims "for consideration, pursuant to arms-length negotiations." *Id*.

15. Here, the Releases fail to meet the most basic settlement requirement that separate and meaningful consideration is provided from *each* Released Party. *See id*. at 543-44 (releases "would require, *inter alia*, consent and consideration by *each* participant in the agreement to be valid") (emphasis supplied). The Released Parties include *sixteen* major groups of parties, such as the Debtors and DIP Lenders, and, with respect to each major group, *thirty-two* additional categories of parties, such as current and former officers and directors, agents, and assigns, who are unnamed and numerous. Other than the parties to the RSA providing releases to each other, none of the Released Parties appear to have provided specific consideration to the other Releasing Parties—including the public shareholders who receive nothing under the Plan—in return for their respective Releases.

16. The Debtors assert that the Released Parties made substantial and valuable contributions to the Debtors' restructuring efforts by negotiating and implementing the Plan. However, participation in restructuring efforts certainly does not constitute consideration to public shareholders whose interests are canceled and who receive nothing under the Plan. Further, even assuming that each and every one of the Released Parties was involved in negotiating and implementing the Plan, such participation should not be characterized as specific consideration in exchange for the Releases. To the extent that a Released Party was in fact involved in restructuring efforts, such parties were simply doing the job that they were hired to do and for which they have been compensated. As one court recently noted, "third-party releases are not a merit badge that somebody gets in return for making a positive contribution to a restructuring …. Doing positive things in a restructuring case – even important positive things – is not enough." *In re Aegean Marine Petroleum Network*, 599 B.R. 717, 726-27 (Bankr. S.D.N.Y. 2019)

17. The Commission anticipates that by describing the Releases as mutual releases and including current and former equity holders as both "Releasing Parties" and "Released Parties" under the Plan, the Debtors will contend that shareholders are receiving consideration for the Releases because they too are Released Parties. Under Texas law, however, "consideration is a bargained for exchange of promises, consisting of both benefits and detriments to the contracting parties." *In re Endeavor Highrise L.P.*, 432 B.R. 583, 652-53 (Bankr. S.D. Tex. 2010), *citing Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W. 3d 773, 790 (Tex. 2008). *See also Burges v. Mosley*, 304 S.W. 3d 623, 628 (Tex. App. 2010) ("Consideration is a present exchange bargained for in return for a promise and consists of benefits and detriments to the contracting parties"). Moreover, although "a mutual release of rights may constitute sufficient consideration" where parties agree to rescind a contract, "it does not necessarily follow that all releases are supported by

valid consideration as a matter of law." *Endeavor Highrise,* 432 B.R. at 652 (finding that releases were unenforceable where there was no mutual exchange of benefits and detriments between the parties), *citing Southwest Fire & Cas. Co. v. Adkins*, 346 S.W. 2d 892, 897 (Tex. Civ. App. 1961) ("The law is well settled that a release is not binding unless supported by a consideration").

18. Here, there is little information about what potential claims are being "mutually" released and hence what possible benefit public shareholders are receiving. It is difficult to imagine what meritorious and valuable claims Released Parties such as the Debtors' insiders could potentially assert against retail shareholders. Thus, it is unlikely that such "mutual releases" provide any benefit to shareholders. Public shareholders in this case did not bargain for the purported benefit of the Releases, nor are they being given an opportunity to affirmatively agree to a mutual forbearance. These so-called "mutual releases," whose value to shareholders is likely *de minimis*, certainly do not constitute consideration for releases of claims arising from fraud, willful misconduct, and gross negligence.[2] This is particularly true where, as here, securities class actions are pending against the Debtors and certain non-debtor third parties who are Released Parties under the Plan,[3] and the Debtors have publicly stated that they are the subject of an SEC investigation.[4]

19. Accordingly, the Releases do not represent a valid settlement of claims since the Debtors have failed to show that each Released Party has provided sufficient consideration,

---

[2] The Commission notes that in *In re Westmoreland Coal Co.*, Case No. 18-35672 (Bankr. S.D. Tex.), this Court approved opt out releases where non-voting shareholders were included as released parties. Unlike the Releases here, however, the releases in the *Westmoreland* plan expressly carved out claims based on fraud, willful misconduct, and gross negligence.

[3] *See Edwards v. McDermott Int'l, Inc., David Dickson, and Stuart Spence*, Case No. 4:18-cv-04330 (S.D. Tex.) (consolidated).

[4] *See* McDermott Form 10Q for the period ending September 30, 2019; *Debtors' Application For Entry of An Order Authorizing Retention And Employment of Baker Botts L.L.P. As Special Counsel For the Debtors and Debtors In Possession* [Dkt. 425] at 5.

particularly in light of the breadth of the claims being released. Indeed, the Debtors should not be permitted to circumvent the Fifth Circuit's prohibition against third party releases simply by including shareholders as Released Parties, while providing no information as to the nature or value of the potential claims *against* shareholders.

      **B.**      **The Releases violate public policy by preventing investors from pursuing legitimate claims against wrongdoers.**

20. Releases of non-debtors have special significance for public investors because such provisions may enable non-debtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, including misconduct that led to the bankruptcy. Investors may be precluded from bringing suits against these non-debtors for violations of the federal securities laws and other fraud-based claims despite the fact that investors, like the shareholders here, often receive no consideration from the released parties for such benefits. In fact, granting releases of securities laws violations under a Chapter 11 plan awards released parties who are individuals a benefit that they could not obtain in their own bankruptcy cases because securities fraud claims are excepted from discharge under Section 523(a)(19) of the Bankruptcy Code. *See* 11 U.S.C. 523(a)(19).

21. Permitting parties to be released from liability for potential violations of the federal securities laws frustrates the Congressional intent in promulgating those very laws. Congress intended that the federal securities laws would deter future fraudulent activity. *In re Olympia Brewing Co. Securities Litig.*, 674 F. Supp. 597, 613 (N.D. Ill. 1987). As a result, "[g]enerally, federal courts disallow claims for indemnification because they run counter to the policies underlying the federal securities laws." *Eichenholtz v. Brennan*, 52 F. 3d 478, 483-84 (3d Cir. 1995). *See also Olympia Brewing*, 674 F. Supp. at 613 ("[in the Seventh Circuit] indemnity is not available to federal securities-law violators because allowing indemnity would undermine the

10

deterrent purpose of those laws"); *Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F. 2d 672, 676 (9th Cir. 1980); *Stowell v. Finkel Inv. Servs., Inc.*, 641 F. 2d 323, 325 (5th Cir. 1981) (noting that "indemnification tends to frustrate the policy of securities legislation"). And the Commission frequently takes the position that it is against public policy to permit indemnification for such provisions. Allowing parties to insulate themselves from liability for violating the federal securities laws, whether through the use of non-debtor third party releases or indemnification provisions, undermines the deterrent purposes of those laws. Thus, the Releases here are at odds with sound public policy considerations underlying the rights of investors to pursue legitimate claims against wrongdoers, even more so because they release conduct based on fraud, willful misconduct, and gross negligence. The lack of a carveout for scienter-based conduct is becoming increasingly common in non-debtor third-party release provisions, to the detriment of public investors.

## CONCLUSION

WHEREFORE, for the reasons stated above, the Commission respectfully requests that the Court enter an order requiring the Debtors to modify the Releases by carving out claims based on actual fraud, willful misconduct, and gross negligence.

Dated: February 28, 2020

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

/s/ Sonia Chae
Sonia Chae

Attorney for the
Securities and Exchange Commission
175 West Jackson St., Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390
Email: chaes@sec.gov

## CERTIFICATE OF SERVICE

I, Sonia Chae, do hereby certify that a copy of the foregoing OBJECTION OF THE SECURITIES AND EXCHANGE COMMISSION TO CONFIRMATION OF THE AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN OF MCDERMOTT INTERNATIONAL, INC. AND ITS DEBTOR AFFILIATES has been served by the Electronic Case Filing System for the Southern District of Texas on this 28th day of February, 2020.

/s/ Sonia Chae
Sonia Chae
for the Securities and
Exchange Commission