# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR 18 2020

David J. Bradley, Clerk of Court

|  |  |
|---|---|
| In re:<br><br>MCDERMOTT INTERNATIONAL, INC, *et al*<br><br>Debtor(s). | Case No. 20-30336<br><br>Chapter 11 |

**PARTY IN INTEREST MICHAEL VAN DEELEN'S RESPONSE TO EMERGENCY MOTION FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL; PROPOSED ORDER**

COMES NOW, Michael D. Van Deelen, a Party In Interest in the instant action and for his Response to Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited from Further Contact With the Debtors, Their Officers, or Their Counsel states as follows:

1.  Van Deelen did not call the Court a 'son of a bitch' as the movants claim in paragraph 7 of their emergency motion and in paragraph 5 of Exhibit A (Sussberg Affidavit). Van Deelen respectfully asks this Court to listen to that section of the audio in which movants claim Van Deelen calls the Court a 'son of a bitch' (3:19:29 - 3:21:20). Van Deelen was sitting just a few feet from the Court during the hearing.  If Van Deelen would have called the Court a 'son of a bitch', the Court would certainly have heard him do so.

## The Law

2.  Except for the falsely alleged profanity mentioned above, the other alleged improprieties claimed of by the movants are alleged to have taken place when Court was not in session, outside the courtroom and in violation of no Court order.  The Court had no jurisdiction over Van Deelen under such circumstances.

3.  The Court does not have jurisdiction of Van Deelen's private actions unrelated to the judicial proceedings under 11 U.S.C. 105(a).  Section 105(a) authorizes the bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Code:

"The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code." *Gouveia v. Tazbir*, 37 F.3d 295, 301 (7th Cir. 1994) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)). Thus, courts may not use § 105 to create substantive rights unavailable under the Code. *See Taylor v. United States (In re Taylor)*, 263 B.R. 139 (N.D. Ala. 2001) (note: on appeal to 11th Cir.); *MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communications, Inc.)*, 262 B.R. 893, 899 (D. Del. 2001); *Waugh v. Eldridge (In re Waugh)*, 165 B.R. 450, 451 (Bankr. E.D. Ark. 1994); *see also In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 702 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d Cir. 1994) (§ 105 should be used sparingly and then only to supplement, not supplant, the Code).

4.  The Court may not issue a contempt of court order for behavior which does not directly defy the Court or **which does not violate a previous court order**.  (Note that Appendix A to the Local Rules of the Southern District of Texas deals with Courtroom Etiquette, not with behavior outside of the courtroom.)

5.  The movants cite *Chambers v. NASCO*, 501 U.S. 32 (1991), in their argument that the Court can sanction Van Deelen, but do not inform this Court that *Chambers* has been superceded.  There currently are no statutes, rules or procedures, either federal or local, which gives the Court the ability to sanction a party's behavior that does not

directly defy the sanctioning court or is beyond the confines of a court order.  In *F.D.I.C. v. Maxxam, Inc.*, the district court in Texas sanctioned an attorney for misconduct that occurred in an administrative proceeding in Washington, D.C., a proceeding that was not overseen by the district court. 532 F.3d 566, 591 (5th Cir. 2008). Upon review, the Fifth Circuit held that the court's inherent power to sanction did not extend to the administrative hearing but rather only extended to situations in which "a party engages in bad-faith conduct [that directly defies] the sanctioning court." *Id.* at 591 (internal quotation marks omitted). Later, in *Positive Software Solutions, Inc. v. New Century Mortgage Corporation*, the Fifth Circuit, relying on its *Maxxam* decision, held that misconduct during arbitration was beyond the reach of the district court's inherent power, stating that the misconduct "was neither before the district court nor in direct defiance of its order." 619 F.3d 458, 461 (5th Cir. 2010).

6.   The movants also cite *In re Cochener*, 360 B.R. 542, 569 (Bankr., S.D. Tex. 2007) (quoting *Chambers v. NASCO*, 501 U.S. 32 (1991)), *Placid Ref. Co. v. Terrebonne Fuel & Lube*, 108 F.3d 609 (5th Cir. 21997 (sic)) and *Mooney v. Green Tree Serv. Inc.* 340 B.R. 351 (Bankr. E.D. Tex. 2006) to support their claim that this Court can sanction Van Deelen.  However, each of these cases involved actions inside the confines of the bankruptcy code or the violation of orders or procedures that the court had jurisdiction over and therefore do not apply to the instant case as seen above.

## The Allegations

**Mrs. Spence**

7. Van Deelen subpoenaed Mr. Stuart Spence to testify during the 3/12/20 Plan Confirmation Hearing. Van Deelen hired Ms. Lisa Moberg, a process server, to serve Mr. Spence. Mr. Spence accepted service on 2/19/20. Exhibit 1.

8. In reviewing the Proof of Service, Van Deelen noticed that the description of Mr. Spence given by Ms. Moberg stated that he was 65 years old with white hair. Van Deelen called Ms. Moberg who confirmed the description of Mr. Spence.

9. Van Deelen believed that Mr. Spence was in his early 50's and bald. Accordingly, Van Deelen thought that maybe the wrong person had been served, especially since the address of service was not the address given in public records as Mr. Spence's recent address. Van Deelen and Ms. Moberg tried several times to call Mr. Spence to ask if he was the right person be served. Mr. Spence did not answer his phone or return the calls.

10. To avoid having possibly served the wrong person, Van Deelen went to the Proof of Service address and rang the bell. A middle-aged lady answered the bell. Van Deelen politely asked if Mr. Stuart Spence was home. The lady said 'no'. Van Deelen then **apologetically and very politely** told the lady that he had had a summons issued to Mr. Spence at that address and that Van Deelen was afraid the wrong person may have been served. Van Deelen then politely asked the lady if Mr. Stuart Spence lived there. She said 'yes'. Van Deelen then politely asked the lady if Mr. Spence had worked at McDermott. She replied 'yes'. At that point, Van Deelen apologized for having bothered the lady and left.

11. At no time during the encounter with the lady was Van Deelen disrespectful. Van Deelen never raised his voice. The lady never refused to answer Van Deelen's questions. If the lady would have asked Van Deelen to leave, he would have immediately done so. Mrs. Spence has not presented an affidavit on behalf of the movants' claims that alleges any wrongdoing by Van Deelen.

12. It was within Van Deelen's civil rights to speak to Mrs. Spence. The Court had not previously directed Van Deelen to stay away from Mr. or Mrs. Spence. In fact, the Court declined to hear Van Deelen's explanation of what had occurred with Mrs. Spence when Van Deelen proffered testimony concerning their interaction during the 3/12/20 Plan Confirmation Hearing.

13. If Mr. Spence would have answered his phone or returned Ms. Moberg's or Van Deelen's calls, Van Deelen would not have had to go to his residence to see if he was the right person to have been served.

**Mr. Sussberg**

14. During the 3/12/20 hearing, a person now known as Mr. Sussberg sat directly across the isle between the two conference tables from Van Deelen.

15. Through Van Deelen's objection, the Debtor witnesses were made to testify in person instead of having their written statements adopted into the record. This was time consuming. As the witnesses testified and time proceeded, Van Deelen noticed Mr. Sussberg becoming more and more agitated. Finally, Mr. Sussberg, without any cue from Van Deelen, said to Van Deelen and all who could hear: "You are disgusting!" and other insults. Van Deelen looked at him and told him to be quiet. The Court heard this

exchange because the record will show that the Court told Mr. Sussberg and Mr. Van Deelen to 'hold it down' or words to that effect.

16.  After the hearing, Van Deelen did not follow Mr. Sussberg anywhere, including the restroom.  Like many at the end of the long hearing, Van Deelen needed to use the restroom.  As Van Deelen was entering the restroom, Mr. Sussberg was leaving the restroom.  Due to the unprofessional behavior exhibited by Mr. Sussberg towards Van Deelen during the hearing as detailed above, Van Deelen wanted to determine Mr. Sussberg's name so he could make a formal complaint against him.  Mr. Van Deelen said to Mr. Sussberg: 'May I have your name, sir?"  Mr. Sussberg angrily refused to give Van Deelen his name.  Instead, Mr. Sussberg again told Van Deelen: "You are disgusting!"  He also told Van Deelen other things including: "You are a fool!"  Mr. Sussberg is a young, stocky, man.  Van Deelen is a 70 year-old senior citizen.  Mr. Sussberg's words, tenor and posture caused Van Deelen to be afraid for his safety.  Van Deelen began to have heart palpitations and he remained near the restroom while Sussberg left and went down the hallway towards the elevators.  All of a sudden, Sussberg came rushing back down the hallway and towards the restroom area where Van Deelen was and angrily charged Van Deelen.  Mr. Sussberg then began calling Van Deelen names again.  Mr. Sussberg stood only inches away from Van Deelen, shouting at Van Deelen.  Van Deelen was terrified by Mr. Sussberg's actions.   Mr. Sussberg eventually left and again went down the hallway towards the elevators.

17.  Van Deelen, terribly frightened, remained in the restroom area for a period of time until he hoped Mr. Sussberg had left.  Eventually Van Deelen looked down the hall toward the elevators and saw that Mr. Sussberg had in fact left.  Van Deelen was

extremely frightened and upset. So upset, in fact, that he could not locate his vehicle in the parking garage near the courthouse that he had used many times before. Van Deelen had to ask a garage employee for assistance in finding his car.

18.  At no time did Van Deelen call Mr. Sussberg a 'pasty white fuck' or say 'I will have my way with your wife'. That Van Deelen would say those things is incredibly insulting and beyond belief.

19.  Mr. Sussberg's comments to Van Deelen, of which he fails to inform the Court, violate Rule 14 of the Court's Rules of Etiquette:

*Avoid disparaging remarks and acrimony towards anyone, especially adverse parties and counsel, and discourage ill-will between the litigants. Counsel must abstain from unnecessary references to opposing counsel, especially peculiarities.*

20.  The Court will note that, even though there were many persons who had attended the hearing within earshot from Sussberg and Van Deelen, Sussberg does not mention their names or produce affidavits from them substantiating his (false) account of his interaction with Van Deelen.

21.  Still trying to determine Mr. Sussberg's identity, Van Deelen found Mr. Sussberg's photo on the Kirkland and Ellis website. Van Deelen then sent Mr. Sussberg an email stating that Van Deelen had identified him from the Kirkland and Ellis website. In an abundance of caution, even though Van Deelen recognized him from his photo, Van Deelen wanted to give Mr. Sussberg the opportunity to deny that he was the one sitting across from Van Deelen during the 3/12/20 hearing. (It was the Kirkland and Ellis employee sitting across from Van Deelen who told Van Deelen and others: "You [Van Deelen] are disgusting!") The email is respectful and contains no threatening language.

22.  If Mr. Sussberg would have given Van Deelen his name when Van Deelen politely asked for it after the hearing, Van Deelen would not have had to email Mr. Sussberg.

23.  Please see Exhibit 2, Van Deelen Affidavit.

**Other**

24.  Paragraph 10 of the movants' Emergency Motion states that Van Deelen was sanctioned by the District Court in *Michael Van Deelen v. City of Kansas City, Missouri*, 2006 WL 2077640 (W.D. Mo. 2006).  This was a non-bankruptcy case.  What the movants fail to tell this Court is that a significant amount of the sanctions were overturned on appeal.  Van Deelen has never fabricated evidence and  he never will.  On the other hand, the movants have fabricated evidence to support their Emergency Motion, including when they claim that Van Deelen called the Court a 'son of a bitch' during the Plan Confirmation Hearing.  Exhibit 2, Van Deelen Affidavit.

25.  Paragraph 18 of the movants' Emergency Motion claims that "Mr. Van Deelen has threatened physical violence against family members of counsel in these cases."  This statement is unsupported by any facts other than the false allegation that Van Deelen allegedly said that he was going to 'have his way' with Mr. Sussberg's wife.  The paragraph 18 statement states 'violence against family *members* (plural) *of counsel* (plural) *in these cases'* (plural).  What family members?  What counsel?  What cases?  The egregious manufacturing of false evidence by the movants in their Emergency Motion is beyond the pale.  Van Deelen has never threatened violence against family members of counsel or other persons in any case he has been involved with.  Exhibit 2, Van Deelen Affidavit.

26.  What is going on here?  It is no secret that Van Deelen plans to file suit against McDermott employees in Texas state court for their malfeasance relating to McDermott's bankruptcy and the events leading up thereto.  Other shareholders have indicated they may also file suit.  Van Deelen believes that the movants' Emergency Motion is an attempt to prevent Van Deelen from filing suit by having this Court enjoin him from doing so.

## **Summary**

27.  The movants apparently seek sanctions against Van Deelen for the following reasons:

A.  Van Deelen allegedly called the Court a 'son of a bitch' during the Plan Confirmation hearing held on 3/12/20.  This false allegation can be easily refuted by listening to the 3/12/20 audio clip from the Plan Confirmation hearing (time stamp 3:19:29 - 3:21:20).

B.  Van Deelen filed numerous documents in the instant action, which was his Constitutional right.

C.  Van Deelen was sanctioned by a Missouri District Court in 2006.  Not only was a significant portion of the sanction overturned on appeal, but a single resolved non-bankruptcy case from 14 years ago has no bearing on the instant action,

D.  After being unable to contact Mr. Spence by phone, Van Deelen went to Mr. Spence's believed residence, was told by his wife that Mr. Spence was not home, and then respectfully spoke to Mr. Spence's wife for the purpose of dismissing Mr. Spence from the subpoena he had been served if he was not the correct person to have been served.

E.  After Mr. Sussberg refused to give Van Deelen his name when Van Deelen asked him for it during the 3/12/20 Plan Confirmation Hearing, Van Deelen sent Mr. Sussberg a respectful, non-threatening, email seeking to confirm if Mr. Sussberg was the person seated across from him during the 3/12/20 Plan Confirmation Hearing.

F.  The movants allege, without any facts or proof, that "Mr. Van Deelen has threatened physical violence against family members (plural) of counsel (plural) in these cases (plural)."

G.  Mr. Sussberg has falsely alleged that Van Deelen called him a 'pasty white fuck' and said 'I will have my way with your wife' after the 3/12/20 Plan Confirmation Hearing had been adjourned.  Even though many people were milling around after the hearing, Mr. Sussberg does not produce one affidavit from a single witness (other than himself) discussing Van Deelen's alleged bad behavior.  Not only are his allegations patently false, but also Mr. Sussberg conveniently failed to tell the Court that he had violated the Court's rules of etiquette when told Van Deelen "You are disgusting!" during the 3/12/20 Plan Confirmation Hearing and after it had been adjourned; that he had told Van Deelen "You are a fool!" after the 3/12/20 Plan Confirmation Hearing had been adjourned; that he had angrily and physically charged Mr. Van Deelen, stopping just inches from Van Deelen's person after the 3/12/20 Plan Confirmation Hearing had been adjourned; and that he had refused to give Van Deelen his name when Van Deelen politely asked for it after the 3/12/20 Plan Confirmation Hearing had been adjourned.

28.  Van Deelen has attempted to contact the movants to resolve their Emergency Motion without the need for a hearing.  The movants have not returned the message left with the movants' assistant.  Exhibit 2, Van Deelen Affidavit.

10

WHEREFORE, for the reasons discussed herein, Van Deelen respectfully requests that this Court deny in its entirety the movants' Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited from Further Contact With the Debtors, Their Officers, or Their Counsel.

Houston, Texas

March 18, 2020

Respectfully submitted,

Michael Van Deelen
Party In Interest
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## CERTIFICATE OF SERVICE

I, Michael Van Deelen, do hereby certify that I caused a copy of the foregoing document, including Proposed Order, to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on this 18th day of March, 2020.

Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

# EXHIBIT 1

## SPENCE PROOF OF SERVICE

appear and testify at a hearing or trial in a Bankruptcy Case or Adversary Proceeding) (Page 2)

# PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*:   __STUART SPENCE__
on *(date)* __Feb. 18, 2020__ .

■ I served the subpoena by delivering a copy to the named person as follows:   __STUART SPENCE__

_____ on *(date)* __Wed., Feb. 19, 2020__ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ __71.00__ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __95.00__ .

I declare under penalty of perjury that this information is true and correct.

Date: __February 19, 2020__

_____
*Server's signature*

LISA G. MOBERG, PSC#12076
*Printed name and title*

4806 W. Walnut St.
Pearland, Texas 77581
*Server's address*

Additional information concerning attempted service, etc.:

**1) Successful Attempt:** Feb 19, 2020 @ 8:23 p.m. CST at HOME: ███████████; ██████████████
received by STUART SPENCE, Age: 65; Ethnicity: Caucasian; Gender: Male; Weight: 220; Height: 6'1"; Hair: White
I personally and successfully served STUART SPENCE, who willingly accepted service without incident at the listed
address.

13

Subpoena to Appear and Testify at a Hearing or Trial in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

| Southern | District of | Texas, Houston Division |
|---|---|---|

In re   McDermott International, Inc., et al.
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. _____20-30336_____

Chapter _____11_____

_____
Plaintiff

v.

_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   Stuart Spence
_____

*(Name of person to whom the subpoena is directed)*

☑ **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the time, date, and place set forth below to testify at a hearing or trial in this bankruptcy case (or adversary proceeding). When you arrive, you must remain at the court until the judge or a court official allows you to leave.

| PLACE | COURTROOM | 400 |
|---|---|---|
| U.S. Bankruptcy Court 515 Rusk St., Houston, TX | DATE AND TIME 03/12/20 | 9:00 A.M. |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:




The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   02/18/20

CLERK OF COURT

_____          OR          _____
Signature of Clerk or Deputy Clerk                              Attorney's signature

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Michael Van Deelen (party)_____ , who issues or requests this subpoena, are:

6014 Capella Park Drive, Spring, TX; michaelvandeelen@gmail.com; 832-562-0723

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

14

EXHIBIT 2

VAN DEELEN AFFIDAVIT

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 20-30336 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Chapter 11 |
| Debtor(s). | ) | |
| | ) | |
| | ) | |

## AFFIDAVIT OF MICHAEL VAN DEELEN IN SUPPORT OF HIS RESPONSE TO EMERGENCY MOTION FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL

| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, personally appeared Michael Van Deelen, who, being by me duly sworn and deposed, stated the following:

"My name is Michael Van Deelen, I am over 21 years of age, of sound mind, capable of making this Affidavit, and have personal knowledge of the facts stated herein.  In the following, I refer to myself as 'Van Deelen':

1. Van Deelen did not call the Court a 'son of a bitch' during the 3/12/20 Plan Confirmation Hearing in the instant action or at any other time.  Van Deelen was sitting just a

few feet from the Court during the hearing.  If Van Deelen would have called the Court a 'son of a bitch', he believes the Court would certainly have heard him do so.

2.  Van Deelen subpoenaed Mr. Stuart Spence to testify during the 3/12/20 Plan Confirmation Hearing in the instant action.  Van Deelen hired Ms. Lisa Moberg, a process server, to serve Mr. Spence.  Mr. Spence accepted service on 2/19/20.

3.  In reviewing the Proof of Service, Van Deelen noticed that the description of Mr. Spence given by Ms. Moberg stated that he was 65 years old with white hair.  Van Deelen called Ms. Moberg who confirmed the description of Mr. Spence.

4.  Van Deelen believed that Mr. Spence was in his early 50's and bald.  Accordingly, Van Deelen thought that maybe the wrong person had been served, especially since the address of service was not the address given in public records as Mr. Spence's recent address.  Van Deelen and Ms. Moberg tried several times to call Mr. Spence to ask if he was the right person to be served.  Mr. Spence did not answer his phone or return the calls.

5.  To rectify having possibly served the wrong person, Van Deelen went to the Proof of Service address and rang the bell.  A middle-aged lady answered the bell.  Van Deelen politely asked if Mr. Stuart Spence was home.  The lady said 'no'.  Van Deelen then **apologetically and very politely** told the lady that he had had a summons issued to Mr. Spence at that address and that Van Deelen was afraid the wrong person may have been served.  Van Deelen then politely asked the lady if Mr. Stuart Spence lived there.  She said 'yes'.  Van Deelen then politely asked the lady if Mr. Spence had worked at McDermott.  She replied 'yes'.  At that point, Van Deelen apologized for having bothered the lady and left.

6. At no time during the encounter with the lady was Van Deelen disrespectful. Van Deelen never raised his voice. The lady never refused to answer Van Deelen's questions. If the lady would have asked Van Deelen to leave, he would have immediately done so.

7. The Court in the instant action had not previously directed Van Deelen to stay away from Mr. or Mrs. Spence. In fact, the Court declined to hear Van Deelen's explanation of what had occurred with Mrs. Spence when Van Deelen proffered testimony concerning their interaction during the 3/12/20 Plan Confirmation Hearing.

8. If Mr. Spence would have answered his phone or returned Ms. Moberg's or Van Deelen's calls, Van Deelen would not have had to go to his residence to see if he was the right person to have been served.

9. During the 3/12/20 hearing, a person now known as Mr. Sussberg sat directly across the isle between the two conference tables from Van Deelen.

10. At the 3/12/20 hearing, through Van Deelen's objection, the Debtor witnesses were made to testify in person instead of having their written statements adopted into the record. This was time consuming. As the witnesses testified and time proceeded, Van Deelen noticed Mr. Sussberg becoming more and more agitated. Finally, Mr. Sussberg, without any cue from Van Deelen, said to Van Deelen and all who could hear: "You are disgusting!" and other insults. Van Deelen looked at him and told him to be quiet. The Court heard this exchange because the record will show that the Court told Mr. Sussberg and Van Deelen to 'hold it down' or words to that effect.

11. After the hearing, Van Deelen did not follow Mr. Sussberg anywhere, including the restroom. Like many at the end of the long hearing, Van Deelen needed to use the restroom. As Van Deelen was entering the restroom, Mr. Sussberg was leaving the restroom. Due to the

*18*

unprofessional behavior exhibited by Mr. Sussberg towards Van Deelen during the hearing as detailed above, Van Deelen wanted to determine Mr. Sussberg's name so he could make a formal complaint against him.  Van Deelen said to Mr. Sussberg: 'May I have your name, sir?"  Mr. Sussberg angrily refused to give Van Deelen his name.  Instead, Mr. Sussberg again told Van Deelen: "You are disgusting!"  He also told Van Deelen other things including: "You are a fool!"  Mr. Sussberg is a young, stocky, man.  Van Deelen is a 70 year-old senior citizen.  Mr. Sussberg's words, tenor and posture caused Van Deelen to be afraid for his safety.  Van Deelen began to have heart palpitations and he remained near the restroom while Sussberg left and went down the hallway towards the elevators.  All of a sudden, Sussberg came rushing back down the hallway and towards the restroom area where Van Deelen was and angrily charged Van Deelen.  Mr. Sussberg then began calling Van Deelen names again.  Mr. Sussberg stood only inches away from Van Deelen, shouting at Van Deelen. Van Deelen was terrified by Mr. Sussberg's actions.  Mr. Sussberg eventually left and again went down the hallway towards the elevators.

12.  Van Deelen, terribly frightened, remained in the restroom area for a period of time until he hoped Mr. Sussberg had left.  Eventually Van Deelen looked down the hall toward the elevators and saw that Mr. Sussberg had in fact left.  Van Deelen was extremely frightened and upset.  So upset, in fact, that he could not locate his vehicle in the parking garage near the courthouse that he had used many times before.  Van Deelen had to ask a garage employee for assistance in finding his car.

13.  At no time did Van Deelen call Mr. Sussberg a 'pasty white fuck'  or say 'I will have my way with your wife'.  That Van Deelen would say those things is incredibly insulting and beyond belief.

4

14. Still trying to determine Mr. Sussberg's identity, Van Deelen found Mr. Sussberg's photo on the Kirkland and Ellis website. Van Deelen then sent Mr. Sussberg an email stating that Van Deelen had identified him from the Kirkland and Ellis website. In an abundance of caution, even though Van Deelen recognized him from his photo, Van Deelen wanted to give Mr. Sussberg the opportunity to deny that he was the one sitting across from Van Deelen during the 3/12/20 hearing. (It was the Kirkland and Ellis employee sitting across from Van Deelen who told Van Deelen and others: "You [Van Deelen] are disgusting!") The email is respectful and contains no threatening language.

15. If Mr. Sussberg would have given Van Deelen his name when Van Deelen politely asked for it after the hearing, Van Deelen would not have had to email Mr. Sussberg.

16. Van Deelen was sanctioned by the District Court in *Michael Van Deelen v. City of Kansas City, Missouri*, 2006 WL 2077640 (W.D. Mo. 2006). This was a non-bankruptcy case. The sanctions were reduced significantly on appeal. Van Deelen has never fabricated evidence and he never will.

17. Van Deelen has never threatened violence against family members of counsel or other persons in any case he has been involved with.

18. Van Deelen has attempted to contact the movants to resolve their Emergency Motion (Document 694) without the need for a hearing. The movants have not returned the message left with the movants' assistant.

20

Further Affiant sayeth not."

_Michael Van Deelen_
Michael Van Deelen
Affiant


SUBSCRIBED AND SWORN TO BEFORE ME ON THE 18th day of March, 2020.


_____
Notary Public, State of Texas

_William Phongdara_
(Print or Type Name)


My Commission Expires: _04/24/2022_

WILLIAM PHONGDARA
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 04/24/22
NOTARY ID 13154754-8

6

21