USDC SDTX RCVD
JUN 3 2020 AM11:06

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
F I L E D

**JUN 03 2020**

David J. Bradley, Clerk of Court

In re:

MCDERMOTT INTERNATIONAL, INC, *et al*

Debtor(s).

)
)
)
)
)
)
)
)
)

Case No. 20-30336

Chapter 11

**NOTICE OF FILING**

Please take notice that Party In Interest Michael Van Deelen has filed in the Fifth

Circuit Court of Appeals the attached document which is related to the above-captioned

action.

Houston, Texas

June 3, 2020

Respectfully submitted,

Michael Van Deelen
Party In Interest
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## CERTIFICATE OF SERVICE

I, Michael Van Deelen, do hereby certify that I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on this 3rd day of June, 2020.

Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

No. 20-20286

# IN THE FIFTH CIRCUIT COURT OF APPEALS
## NEW ORLEANS, LOUISIANNA

---

## IN RE
## MICHAEL VAN DEELEN

---

Original Proceeding to Case No. 20-30336 (DRJ)
Pending In The United States Bankruptcy Court
For The Southern District Of Texas
Houston Division
Honorable David Jones, Presiding

---

## PETITION FOR WRIT OF MANDAMUS
### AGAINST THE HONORABLE DAVID R. JONES,
### JUDGE OF THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

Michael Van Deelen
Petitioner Pro Se
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned Petitioner certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Court of Appeals Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Michael D. Van Deelen
Petitioner
16215 Friar Circle
Spring, TX 77379


The Honorable David R. Jones
Respondent
Bob Casey United States Courthouse
515 Rusk Avenue
Houston, TX 77002


Dated : June 3, 2020                    /s/ Michael Van Deelen
                                        Petitioner



## STATEMENT REGARDING ORAL ARGUMENT

Petitioner does not believe oral argument is necessary.



# TABLE OF CONTENTS

Certificate of Interested Persons                                          2

Statement Regarding Oral Argument                                     3

Table of Contents                                                              4

Table of Authorities                                                          5

Jurisdictional Statement                                                    6

Summary                                                                          7

Statement of Facts                                                            9

     1. The Trial Court's Unlawful, Unconstitutional Permanent     10
     Injunction Issued Against Petitioner

     2. Other Discriminatory Acts of the Trial Court Against          15
     Petitioner

Issues Presented                                                              22

Relief Sought                                                                  24

Reasons Why the Writ Should Issue                                     25

Certificate of Service                                                        28

Certificate of Compliance                                                  29

## TABLE OF AUTHORITIES

**Constitutional Amendments**

1st Amendment                                    8, 22

5th Amendment                                    8, 22

14th Amendment                                   8, 22

**Statutes**

28 U.S.C. Section 1651(a)                         6

Fed. R. Civ. Proc. Rule 65                        22

18 U.S.C. Section 158(d)                          10, 15, 16

18 U.S.C. Section 3057                            10, 15, 16

18 U.S.C. Section 152                             15

18 U.S.C. Section 154                             15

18 U.S.C. Section 157                             16

11 U.S.C. Section 1129(3)                         16

11 U.S.C. Section 1129 (b)(1)                     16

8 U.S.C. Section 1292(b)                          26

42 U.S.C. Section 1983                            26

**Cases**

*Bivens v. Six Unknown Named Agents of Federal Bureau of*     26
*Narcotics*, 403 U.S. 388 (1971).

## JURISDICTIONAL STATEMENT

This Court has original jurisdiction to issue the requested writ of mandamus,

28 U.S.C. Section 1651(a).

COMES NOW Petitioner Michael Van Deelen and petitions the Fifth

Circuit Court of Appeals for a writ of mandamus to the Honorable David R.

Jones of the United States Bankruptcy Court for the Southern District of

Texas, Houston Division, and shows the following in support of his

petition.

### SUMMARY

Petitioner is representing himself as a Party In Interest during

McDermott International's Chapter 11 bankruptcy proceeding in the U.S.

District Court for the Southern District of Texas (case number 20-30336).

On March 23, 2020, the trial court (the Honorable David R. Jones), without

first affording Petitioner notice and a trial, issued a permanent injunction

against Petitioner which prohibited Petitioner from contacting the trial court

and its staff, prohibited Petitioner from contacting Joshua Sussberg, an

attorney for the debtors in the above-captioned case, or any member of his

family in any manner and prohibited Petitioner from entering the federal

courthouse in Houston without being escorted by a court security officer.

(Appendix 3).

The trial court's March 23, 2020, Order (Appendix 3) stated that

Petitioner could request a hearing on the trial court's Order, which Petitioner

did the following day, March 24, 2020.  (Appendix 4).  On April 20, 2020,

7

the trial court denied Petitioner's request for a hearing stating, "The pleading (Petitioner's request for a hearing) does nothing more than seek to disrupt further the legitimate ends of bankruptcy process and has no legitimate purpose." (Appendix 5).

Prior to the trial court's March 23, 2020, Order permanently enjoining Petitioner, there had been no preliminary hearings of any kind (e.g. - temporary restraining order, preliminary injunction) noticed or held on the matters included in the March 23, 2020, permanent injunction.

The trial court's denial of Petitioner's right to notice and a trial before its implementation of a permanent injunction was contrary to law and a violation of Petitioner's rights of equal access to the courts (First Amendment), due process (Fifth Amendment) and equal protection of the laws (Fourteenth Amendment).

Petitioner seeks a writ of mandamus from this Court quashing the trial court's illegal, unconstitutional, March 23, 2020, Order (permanent injunction). In the alternative, Petitioner seeks a writ of mandamus from this Court ordering the trial court to grant Petitioner a trial on the actions prohibited by the trial court's March 23, 2020, Order. Furthermore, should this Court order a trial on the actions prohibited by the trial Court's March 23, 2020, Order, Petitioner seeks a writ of mandamus disqualifying the

current trial court judge (the Honorable David R. Jones) from presiding over said trial. As will be seen herein, the trial court's animosity toward Petitioner is so great that Petitioner is concerned that the trial court will simply continue to make unlawful, unconstitutional rulings during a trial on the actions prohibited by its March 23, 2020, Order.

## STATEMENT OF FACTS

As noted above, Petitioner is representing himself as a Party In Interest during McDermott International's Chapter 11 bankruptcy proceeding in the U.S. District Court for the Southern District of Texas (case number 20-30336). Petitioner is essentially the only person advocating for the rights of shareholders during the proceedings. (There has also been one, and only one, lawyer representing a small group of shareholders whose representation of said shareholders has been minimal.) The McDermott bankruptcy was a prepackaged bankruptcy where the details of the bankruptcy had been worked out between McDermott and its creditors prior to the Chapter 11 filing. Opposing Petitioner in the bankruptcy action was a literal army of lawyers representing McDermott and its creditors.

**The Trial Court's Unlawful, Unconstitutional Permananent Injunction**
**Issued Against Petitioner**

Kirkland & Ellis is one of the firms representing and advising

McDermott International in its bankruptcy case.  Kirkland became upset

with Petitioner because on February 27, 2020, Petitioner filed a pleading

asking the trial court to order a criminal inquiry pursuant to 18 U.S.C.

Section 158(d) and 18 U.S.C. Section 3057 into improper, criminal,

activities pursued by McDermott and its advisors before and during the

pendency of the bankruptcy proceedings.

During the Plan Confirmation Hearing held on March 12, 2020,

Petitioner further angered Kirkland when he objected to the reading of

Kirkland's expert witness reports favoring bankruptcy directly into the

record.  Instead, Petitioner made the experts testify during the hearing so that

he could ask them questions.  This took a lot of time.  One of the Kirkland

attorneys, Joshua Sussberg, was sitting next to Petitioner in the courtroom.

The longer the testimony took, the angrier Mr. Sussberg appeared.

Eventually, Mr. Sussberg began to glare at Petitioner and subsequently told

Petitioner 'You are disgusting!" and made other insults to Petitioner.  At the

time, Petitioner did not know Mr. Sussberg's name.  (Appendix 2, Appendix

2: Michael Van Deelen affidavit).

After the hearing was over, Petitioner went to the restroom.  As Petitioner was entering the restroom, Mr. Sussberg was coming out. Petitioner politely asked him for his name.  Mr. Sussberg would not give Petitioner his name.  He became very angry and once again told Petitioner 'You are disgusting!' and also told Petitioner 'You are a fool!'  Mr. Sussberg then went around a corner towards the elevators.  For some reason, Mr. Sussberg turned around and came storming back to the restroom area.  He aggressively charged Petitioner and stopped just a couple of inches from Petitioner and once again began to berate Petitioner.  Petitioner was very frightened.  Petitioner is a 70 year-old senior citizen and Mr. Sussberg is a muscular person who appears to be in his late 30's or early 40's.  (Appendix 2, Appendix 2: Michael Van Deelen affidavit).

Petitioner was determined to find the name of this person so Petitioner could complain about his terrible behavior, including his assault of Petitioner.  Petitioner got on the Kirkland website and found Sussberg's picture which identified him as Joshua Sussberg.  Petitioner then sent Mr. Sussberg a courtesy email asking him if he was the one who had sat across from Petitioner at the March 12, 2020, Plan Confirmation Hearing. Petitioner gave Mr. Sussberg until Wednesday, March 18, 2020, to reply. (Appendix 2, Appendix 2: Michael Van Deelen affidavit).

On March 17, 2020, attorneys for the debtor McDermott International, including Mr. Sussberg of Kirkland & Ellis, LLP, filed their 'Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt Of Court and **Prohibited From Further Contact With the Debtors, Their Officers, or Their Counsel** (emphasis added)' on behalf of debtor McDermott International. (Appendix 1). In their motion, which falsely accused the Petitioner of a host of improprieties, the defendants asked the trial court to "prohibit Mr. Van Deelen from contacting the Debtors, their current officers, directors, or employees, their counsel or other professionals, or any of their families in person or via telephone or electronic forms of communication...." (Appendix 1, para. 17). The motion also asked the trial court to order Petitioner (Van Deelen) **to appear** (emphasis added) and show cause why he should not be held in contempt of court and prohibited from further contact with the debtors, their current or former officers, directors, and employees, their counsel or other professionals and their families." (Appendix 1, para. 16). The motion had not been preceded by a request for a temporary restraining order or a preliminary injunction. In the motion, McDermott asked for a hearing on the motion on a date 'TBD'. (Appendix 1).

Petitioner believes Kirkland's motion was an attempt to intimidate Petitioner, color Petitioner in a false light in the eyes of the trial court and retaliate against Petitioner and frustrate Petitioner in his desire to complain about (or possibly even sue) Mr. Sussberg for his bad acts against Petitioner as described herein.

After being served the Kirkland motion, Petitioner filed and served his 'Party In Interest Michael Van Deelen's Response to Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited From Further Contact With the Debtors, Their Officers, or Their Counsel', on May 18, 2020.  Said response denied the allegations of improper behavior raised in the Kirkland motion. (Appendix 2, Appendix 2 - Michael Van Deelen Affidavit).

On March 23, 2020, the trial court, without holding the requested hearing, signed and issued its Order (Appendix 3), which was **effective immediately** (emphasis added), denying McDermott's contempt request and its request to permanently enjoin Petitioner from contacting the Debtors, their current officers, directors, or employees, their counsel or other professionals, or any of their families in person or via telephone or electronic forms of communication, with the exception of Mr. Sussberg and his family. (Note: the Kirkland motion did not use the word 'permanent injunction', but

a plain reading of the motion makes it clear that a permanent injunction was what was being requested.)

However, without notice or trial, the trial court's March 23, 2020, Order permanently enjoined Petitioner 1) from contacting or associating with attorney Sussberg or members of his family in any manner; 2) from contacting the court and its staff 'by any means' and 3) from visiting the Houston federal courthouse without being escorted by courthouse security. The Order stated that Petitioner would be subject to arrest if he attempted to contact Mr. Sussberg or his family. (Appendix 3).

The trial court's March 23, 2020, Order (Appendix 3) informed Petitioner that if Petitioner sought relief from the Order or if Petitioner wanted a hearing on the Order, Petitioner could request a hearing within the next 14 days. On March 24, 2020, the day after the permanent injunction was issued by the trial court, Petitioner filed his 'Party In Interest Michael Van Deelen's Request for Hearing' seeking clarification of the March 23, 2020, Order and requesting a hearing. (Appendix 4).

On April 20, 2020, in violation of its own March 23, 2020, Order, the trial court issued an Order which denied Petitioner's request for a hearing. (Appendix 5). The April 20, 2020, Order denying Petitioner's request for a hearing stated, "The pleading (Appendix 5 - Petitioner's request for hearing)

14

does nothing more than seek to disrupt further the legitimate ends of the bankruptcy process and has no legitimate purpose." The trial court's animosity towards Petitioner could not have been made more clear.

## Other Discriminatory Acts of the Trial Court Against Petitioner

The trial court has consistently treated Petitioner as a second class citizen and persona non grata during the course of the proceedings to date, violated the law and Petitioner's constitutional rights of equal access to the courts, due process and equal protection of the laws and retaliated against Petitioner for Petitioner's attempted exercising of his right of equal access to the courts as follows:

A.  On February 27, 2020, Petitioner filed a motion which moved the bankruptcy court to order an investigation of McDermott and its advisors (which include Mr. Sussberg and his firm, Kirkland and Ellis) by the U.S. Attorney pursuant to 18 U.S.C. Section 158(d) and 18 U.S.C. Section 3057. The motion concluded:

"Based on the above, Van Deelen alleges that McDermott, certain members of its management and its advisors, violated 18 U.S.C. Section 152 when they made various false oaths and accounts to the bankruptcy court, including when they claimed that McDermott had to re-equitize the company as part of its bankruptcy plan and that certain documents filed with the court were accurate; violated 18 U.S.C. Section 154 when they failed to provide the U.S. Trustee documents which showed that they had previously concluded that the company did not have to file for Chapter 11 bankruptcy

and documents which showed that, once Chapter 11 bankruptcy was filed, the company did not have to re-equitize; and violated 18 U.S.C. Section157 when they filed documents with the bankruptcy court purporting to show that McDermott had to re-equitize the company in order to satisfactorily exit bankruptcy when they knew that the reason they claimed the need to re-equitize was so that they could be granted 7.5% of the company's new shares upon emergence from bankruptcy.

Van Deelen alleges that McDermott's bankruptcy plan has not been proposed in good faith and has been proposed by a means forbidden by law in violation of 11 U.S.C. Section 1129(3) because the plan calls for the cancellation of existing shares, the elimination of virtually all of the company's outstanding debt and the re-equitization of the company for the sole purpose of enriching McDermott's management and Board and not because said cancellation of shares, elimination of all debt and re-equitization of the company is necessary for the satisfactory emergence of the company from bankruptcy.

Van Deelen alleges that McDermott's bankruptcy plan discriminates unfairly and is not fair and equitable with respect to current shareholders in violation of 11 U.S.C. Section 1129 (b)(1) because it is not necessary to cancel the shares of the existing shareholders, to eliminate virtually all of the company's outstanding debt and to re-equitize the company in order for the plan to be viable.  The plan calls for the cancellation of existing shares, the elimination of virtually all of the company's outstanding debt and the re-equitization of the company for the sole purpose of enriching McDermott's management and Board and not because said cancellation of shares, elimination of all debt and re-equitization of the company is necessary for the satisfactory emergence of the company from bankruptcy.

Van Deelen, pursuant to 18 U.S.C. 158(d) and 18 U.S.C. Section 3057, moves the court to refer for investigation the claims of McDermott, certain members of its management and its advisors (including Joshua Sussberg) that McDermott has to re-equitize the company in order to satisfactorily exit bankruptcy."

In violation of Petitioner's constitutional rights of equal access to the courts, due process and equal protection of the laws and in retaliation against Petitioner for Petitioner's attempted exercising of his right of equal access to the courts and in violation of local rule and custom and the Fed. R. Civ.

Proc., the trial court refused to calendar or hear Petitioner's motion even though Petitioner had requested the same pursuant to local rule and custom and the Fed. R. Civ. Proc.

B.  The McDermott Plan Confirmation hearing was held at 9:00 a.m., C.S.T., on March 12, 2020.  At approximately 5:00 p.m., C.S.T., on March 11, 2020, McDermott's attorneys, including Mr. Sussberg, filed and served the company's Modified Plan, which was several hundred pages long.  There was simply no way Petitioner and other parties to the bankruptcy proceedings could be prepared to study the Modified Plan in time for the Plan Confirmation hearing which was a mere 16 hours away.

At the very beginning of the Plan Confirmation hearing, Petitioner moved the trial court for a continuance so that Petitioner and the other parties would have time to study the Modified Plan before the trial court ruled on it.  In violation of Petitioner's constitutional rights of equal access to the courts, due process and equal protection of the laws and in retaliation against Petitioner for Petitioner's attempted exercising of his right of equal access to the courts and in violation of local rule and custom and the Fed. R. Civ. Proc., the trial court denied Petitioner's motion and proceeded with the Plan Confirmation Hearing.  In response to Petitioner's motion, the trial

court said something to the effect of, "You've already lost everything [as a McDermott shareholder]! How could the new plan be any worse?"

C. During the Plan Confirmation hearing, the trial court frequently yelled and screamed at the Petitioner and berated the Petitioner for Petitioner's respectfully asking to be heard during the proceedings. The trial court, in an attempt to falsify the reporter's record, frequently loudly accused Petitioner of "talking over" (interrupting) him and threatened Petitioner with 'consequences', even though Petitioner had not interrupted him. Evidence of this improper behavior by the trial court is available on the audio recording of the March 12, 2020, Plan Confirmation Hearing. The trial court's actions were in violation of Petitioner's constitutional rights of equal access to the courts, due process and equal protection of the laws and in retaliation against Petitioner for Petitioner's attempted exercising of his right of equal access to the courts and in violation of local rule and custom and the Fed. R. Civ. Proc. and made in the attempt to chill further protected speech by the Petitioner.

D. During the March 12, 2020, Plan Confirmation hearing, the trial court violated all appearance of impartiality when he told the audience of approximately 70 persons that the McDermott bankruptcy advisors, including Mr. Sussberg, were "the smartest people in the country" or words

to that effect.  On the other hand, the trial court has publicly told Petitioner "You know nothing!" when discussing Petitioner's qualifications and knowledge of the case in open court.

E.  In its March 23, 2020, Order, the trial court, aware that Petitioner is a Phi Beta Kappa graduate of Stanford, has a Master's from M.I.T. and is a member of Mensa (because Petitioner had told him so during a hearing in which the trial court asked Petitioner about his qualifications) challenged the Petitioner's "mental stability" by falsely stating that Petitioner referenced "shooting" during the March 12, 2020, Plan Confirmation hearing.  The record of the Plan Confirmation hearing will not show that Petitioner ever threatened or mentioned that he had ever or was going to shoot someone. The trial court's comment was false, vindictive and outrageous.  The trial court's actions were in violation of Petitioner's constitutional rights of equal access to the courts, due process and equal protection of the laws and in retaliation against Petitioner for Petitioner's attempted exercising of his right of equal access to the courts and in violation of local rule and custom and the Fed. R. Civ. Proc. and made in the attempt to chill further protected speech by the Petitioner.

F.  During the course of the proceedings, Petitioner asked the U.S. Attorney to institute a criminal investigation of McDermott and its advisors

(which include Mr. Sussberg and his firm, Kirkland & Ellis) for possible criminal wrongdoing prior to and during the course of the bankruptcy proceedings in line with paragraph 'A' above. In an apparent retaliatory tit for tat move, in violation of Petitioner's constitutional rights of equal access to the courts, due process and equal protection of the laws and in retaliation against Petitioner for Petitioner's attempted exercising of his right of equal access to the courts and in violation of local rule and custom and the Fed. R. Civ. Proc. and in the attempt to chill further protected speech by the Petitioner, the trial court's March 23, 2020, Order asked the U.S. Attorney to investigate Petitioner for his "conduct in this case", without naming any specific alleged conduct the U.S. Attorney should investigate.

G.  After Mr. Sussberg assaulted Petitioner on March 12, 2020, Petitioner approached a security guard in the courthouse, told him about the assault and who assaulted him and asked him to investigate if there could be a video record of the assault. The trial court's March 23, 2020, Order acknowledges that Petitioner spoke to the officer. In an apparent retaliatory tit for tat move, in violation of Petitioner's constitutional rights of equal access to the courts, due process and equal protection of the laws and in retaliation against Petitioner for Petitioner's attempted exercising of his right of equal access to the courts and in violation of local rule and custom and the

Fed. R. Civ. Proc. and in the attempt to chill further protected speech by the Petitioner, the trial court's March 23, 2020, Order asked the United States Marshal to investigate Petitioner's conduct without naming any specific alleged conduct to be investigated.

H. The trial court's March 23, 2020, order accused Petitioner of calling the trial court a 'son of a bitch' during the March 12, 2020, Plan Confirmation Hearing. This accusation was false, fraudulent, vindictive and made in violation of Petitioner's constitutional rights of equal access to the courts, due process and equal protection of the laws and in retaliation against Petitioner for Petitioner's attempted exercising of his right of equal access to the courts and in violation of local rule and custom and the Fed. R. Civ. Proc. and in the attempt to chill further protected speech by the Petitioner.

There was an audio recording made of the March 12, 2020, Plan Confirmation Hearing. Nowhere on said audio can Petitioner be heard calling the trial court a 'son of a bitch'. Petitioner's 'Party In Interest Michael Van Deelen's Request for Hearing' filed and served March 24, 2020, asked the trial court to identify where on the audio tape of the March 12, 2020, Plan Confirmation Hearing Petitioner can be heard calling the trial court a 'son of a bitch'. (Appendix 4). Instead of providing this information to

Petitioner, the trial court denied Petitioner's request for a hearing in its April 20, 2020, Order, as we have seen.

## ISSUES PRESENTED

The trial court's March 23, 2020, Order (Appendix 3) permanently enjoining Petitioner from contacting the trial court and its staff by any means, from contacting Joshua Sussberg, an attorney for the debtors in the above-captioned case, or any member of his family in any manner and from entering the federal courthouse in Houston without being escorted by a court security officer was an abuse of discretion, contrary to law (Fed. R. Civ. Proc. Rule 65 and subsections) and violated several of Petitioner's Constitutional rights, including, but not limited to, Petitioner's First Amendment right of equal access to the courts, Petitioner's Fifth Amendment right of due process, Petitioner's Fourteenth right of equal protection of the laws and Petitioner's First Amendment right to be free from retaliation for his attempted exercising of his right of equal access to the courts.

The trial court did not hold a hearing on McDermott's Emergency Motion for Michael Van Deelen to Appear and Show cause Why He Should Not Be Held In Contempt of Court and Prohibited From Further Contact

With the Debtors, Their Officers, or Their Counsel even though one was requested. (Appendix 1). Instead, the trial court, without notice to Petitioner and without a hearing or trial, unlawfully issued what amounted to a permanent injunction against the Petitioner in its March 23, 2020, Order. (Appendix 3). The trial court's March 23, 2020, Order, which was effective immediately, gave Petitioner 14 days from the date of the Order to seek relief from the Order or to request a hearing. Petitioner filed a motion seeking relief and requesting a hearing on the very next day, March 24, 2020. (Appendix 4). But any chances for Petitioner to argue his case were dashed when the trial court's April 20, 2020, Order denied Petitioner's request for a hearing stating, 'The pleading (Petitioner's motion) does nothing more than seek to disrupt further the legitimate ends of the bankruptcy process and has no legitimate purpose.' (Appendix 5).

The McDermott motion (Appendix 1) did not request either a temporary restraining order or a preliminary injunction. Instead, the McDermott motion appears to have requested a permanent injunction. In its March 23, 2020, Order (Appendix 3), the trial court in fact permanently enjoined Petitioner as discussed herein and then denied (Appendix 5) Petitioner's March 24, 2020, request (Appendix 4) for a hearing seeking relief from the Order even though the trial court gave Petitioner 14 days

23

from March 23, 2020, to file his request for a hearing to seek such relief. From the time McDermott filed its motion (Appendix 1) to the time the trial court denied Petitioner's request for a hearing seeking relief (Appendix 5), Petitioner was not afforded a single hearing. Not one. Petitioner is left wondering what country he lives in.

## RELIEF SOUGHT

Petitioner seeks a writ of mandamus from this Court quashing the trial court's illegal, unconstitutional, March 23, 2020, Order (permanent injunction). In the alternative, Petitioner seeks a writ of mandamus from this Court ordering the trial court to grant Petitioner a trial on the actions prohibited by the trial court's March 23, 2020, Order. Furthermore, should this Court order a trial on the actions prohibited by the trial Court's March 23, 2020, Order, Petitioner seeks a writ of mandamus disqualifying the current trial court judge (the Honorable David Jones) from presiding over said trial. The trial court's animosity toward Petitioner is so great that Petitioner is concerned that the trial court will simply continue to make unlawful, unconstitutional rulings during a trial on the actions prohibited by its March 23, 2020, Order.

## REASONS WHY THE WRIT SHOULD ISSUE

This Court should issue the writ because, as seen herein, the trial court's March 23, 2020, Order is unlawful and unconstitutional. The Petitioner will be damaged if he cannot visit with trial court personnel, communicate with one of McDermott's bankruptcy lawyers (Mr. Sussberg) and visit the federal courthouse without an escort. Because the trial court's records are public, Petitioner's reputation will be seriously damaged in the public eye by all those who read the trial court's March 23, 2020, Order which makes Petitioner appear to be a very unsavory person.

Furthermore, the trial court's March 23, 2020, Order calls for Petitioner's arrest and subsequent loss of freedom should Mr. Sussberg complain that Petitioner has contacted Mr. Sussberg or his family. This is especially concerning because Mr. Sussberg has already attempted to deceive the trial court through the false allegations against Petitioner made in McDermott's 'Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt Of Court and Prohibited From Further Contact With the Debtors, Their Officers, or Their Counsel'. (Appendix 1, Appendix 2, including Petitioner's Affidavit). Petitioner fears that Mr. Sussberg will use the trial court's March 23, 2020, Order as a means to continue to retaliate against Petitioner by having him

falsely arrested. Petitioner's freedom is now in the hands of a person (Mr. Sussberg) who has previously assaulted Petitioner. (Appendix 2, including Petitioner's Affidavit).

Petitioner has no recourse other than to seek this writ. The trial court is a federal actor and as such cannot be sued under the federal civil rights statute, 42 U.S.C. Section 1983. Neither can Petitioner file a Bivens action because such actions preclude declaratory or injunctive relief and Federal judges are immune from money damages. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

An interlocutory appeal under 28 U.S.C. Section 1292(b) is not available because the March 23, 2020, Order does not involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Furthermore, the chance that the trial court would certify an interlocutory appeal challenging its unlawful and unconstitutional action toward the Petitioner is nil.

WHEREFORE, the premises considered, Petitioner prays that this Court grant the petition and order that an answer to the petition be filed by the respondents.



Dated this 3rd day of June, 2020.

                                      Respectfully submitted,


                                      /s/ Michael Van Deelen
                                      16215 Friar Circle
                                      Spring, TX 77379
                                      823-562-0723

                                      Petitioner Pro Se

## CERTIFICATE OF SERVICE

I certify that I have served copies of this petition on the respondent judge and all other parties to the action in the trial court.

Respectfully submitted,

/s/ Michael Van Deelen
16215 Friar Circle
Spring, TX 77379

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document contains less than 6,000 words, not including appendices.  I further certify that this document has been prepared in a conventional typeface no smaller than 14-point for text.


Dated: June 3, 2020                                  /s/ Michael Van Deelen
                                                     Petitioner



APPENDIX 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
|  | ) |  |
| **MCDERMOTT INTERNATIONAL, INC.**, *et al.*,[1] | ) | **Case No. 20-30336 (DRJ)** |
|  | ) |  |
| **Debtors.** | ) | **(Jointly Administered)** |
|  | ) | **(Emergency Relief Requested)** |

## EMERGENCY MOTION FOR MICHAEL VAN DEELEN
## TO APPEAR AND SHOW CAUSE WHY HE SHOULD NOT BE
## HELD IN CONTEMPT OF COURT AND PROHIBITED FROM FURTHER
## CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL

> **Emergency relief has been requested. A hearing will be conducted on this matter on TBD at TBD in Courtroom 400, 4th Floor, 515 Rusk, Houston, TX 77002. If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Relief is requested not later than March 20, 2020.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

### Relief Requested

1.     Michael Van Deelen has been engaging in harassing and abusive behavior towards a former officer of the Debtors and towards counsel for the Debtors. From showing up at Stuart Spence's home and rattling Mr. Spence's wife, to vulgar remarks both inside and outside the courtroom on March 12, 2020, Mr. Van Deelen's behavior is disgusting and should not be tolerated. Mr. Van Deelen is upset about the equity holders' treatment in the Debtors' plan of

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.



reorganization.   That does not, however excuse his vulgar and threatening behavior towards individuals doing their jobs who are complying with the law, or their families.  The Debtors ask this Court to order Mr. Van Deelen to appear and show cause why he should not be held in contempt and be prohibited from further direct contact with the Debtors, their current or former officers, directors, and employees, and their counsel or other professionals and their families, and any other measures that this Court sees fit to impose to ensure a civil and professional proceeding.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of an order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and the Court's inherent authority as set forth in *Chambers v. NASCO*, 501 U.S. 32 (1991).

5.      On January 21, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases (the "Cases") is set forth in the *Declaration of David Dickson, President and Chief Executive Officer of McDermott International, Inc., in Support of the Chapter 11 Petitions* (the "Dickson Declaration") and the *Declaration of John R. Castellano, Chief Transformation Officer of McDermott International, Inc., in Support of the Debtors' First*



Case 20-30336   Document 939   Filed in TXSB on 06/03/20   Page 35 of 87
Case 20-30336   Document 694   Filed in TXSB on 03/17/20   Page 3 of 9

*Day Motions* (the "Castellano Declaration," together with the Dickson Declaration, the "First Day Declarations"), filed on January 22, 2020, and incorporated by reference herein.

## Background

6.      Mr. Van Deelen is a self-described party-in-interest who filed numerous pleadings in these Cases including:

- Letter/Motion to Intervene and Access to Filing System [Docket No. 253]

- Motion for Appointment of Trustee or Examiner and the Earliest Possible Hearing Date [Docket No. 436]

- Motion to Appoint Trustee [Docket No. 441]

- Objection to Confirmation of Plan [Docket No. 510]

- Exhibit and Witness List [Docket No. 511]

- Notice of Expert Report [Docket No. 527]

- Expedited Motion for an Order Continuing the March 12, 2020 Plan Hearing [Docket No. 557]

7.      On March 12, 2020, the Court conducted a hearing on confirmation of the Debtors' plan of reorganization (the "March 12th Hearing"). During and after that hearing, Mr. Van Deelen made certain threatening and vulgar remarks to Joshua Sussberg ("Mr. Sussberg"), counsel for the Debtors. The undersigned apologizes to the Court in advance for the nature of the language which follows. During the hearing, Mr. Van Deelen can be heard on the audio recording calling the Court a "son of a bitch." (AUDIO CLIP, March 12, 2020 Hearing, 3:19:29-3:21:20).[2] After conclusion of the March 12th Hearing, Mr. Van Deelen waited for Mr. Sussberg outside of the restroom and

---

[2]      This audio clip is an excerpt the Audio File attached to Docket No. 557 and available with a transcription of the interaction as well as the audio at the following link: https://youtu.be/XkyjeEEAkII.

3

called him a "pasty white fuck" and said "I'll have my way with your wife." Attached as **Exhibit A** is the affidavit of Joshua A. Sussberg, who witnessed and heard the out-of-court statements by Mr. Van Deelen (the "Sussberg Affidavit").

8.      Ordinarily, counsel would simply turn the other cheek to such remarks. However, Mr. Van Deelen also appeared unannounced at the home of Stuart Spence ("Mr. Spence"), former Chief Financial Officer of McDermott International, Inc.   Mr. Spence was on a conference call at the time and Mr. Spence's wife answered the door and was rattled by her interaction with Mr. Van Deelen.  Mr. Spence's affidavit describing this encounter is attached hereto as **Exhibit B** (the "Spence Affidavit").  Below is a photograph from Mr. Spence's doorbell camera.



*See* Exhibit 1 to the Spence Affidavit.  Appearing on Mr. Spence's doorstep is harassing and borders on stalking.

9.      In addition to these in-person interactions, Mr. Van Deelen has also sent an email to Mr. Sussberg asking him to confirm their seating positions during the March 12th Hearing:

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Date:** March 13, 2020 at 4:36:33 PM EDT
**To:** "Sussberg, Josh" <jsussberg@kirkland.com>
**Subject: [EXT] March 12, 2020, Plan Confirmation Hearing for Debtor McDermott
International (case number 20-30336)**

Mr. Sussberg:

I was at the above hearing and represented myself as a Party In Interest who opposed the
plan confirmation. You sat across the gap between the two conference tables at
approximately arms length from me. If you deny this, please forward said denial to me at
your earliest convenience, but no later than 5:00 C.S.T. on Wednesday, March 18, 2020.

I recognize you from your picture on the Kirkland & Ellis website which is where I obtained
your email address.

Regards,

Michael Van Deelen

*See* Exhibit 1 to the Sussberg Affidavit. While facially a fairly innocuous inquiry, given Mr. Van

Deelen's pleadings and behavior in these Cases, the email takes on a different and unsettling color.

10.     Mr. Van Deelen has a history of sanctionable behavior. In 2006, Mr. Van Deelen

filed suit against the City of Kansas City, Missouri to determine the constitutionality of an

employment-related residency policy. *Michal Van Deelen v. City of Kansas City, Missouri*, 2006

WL 2077640 (W.D. Mo. 2006). The District Court upheld a prior sanctions order against Mr. Van

Deelen finding that "Van Deelen failed to comply with general rules governing proper courtroom

decorum and respect for the Court and the judicial proceedings which he had initiated. Throughout

the trial Van Deelen repeatedly interrupted and argued with the Judge, counsel for the City and

numerous witnesses. Van Deelen presented a voluminous amount of cumulative and irrelevant

evidence wasting valuable judicial resources. His flippant and disrespectful remarks impeded the

efficient resolution of his constitutional claims. Additionally, and perhaps most offensive, Van

Deelen fabricated evidence to support his claims. *Van Deelen v. City of Kansas City, Missouri,* 2006 WL 2077640 at *1 (W.D. Mo. 2006).

11.     This behavior is not new or different for Mr. Van Deelen.  Mr. Van Deelen's behavior is intended to threaten, harass and intimidate these individuals and their families.  His participation in this case should be limited to the protection of his interest as an alleged former shareholder of the Debtors.

## Argument

12.     Section 105(a) of the Bankruptcy Code permits this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

13.     While Mr. Van Deelen's offensive conduct has been in-person rather than within a pleading, the Court still has the power to sanction and regulate such conduct.  "[A] federal court's inherent power to sanction bad faith conduct serves the dual purpose of covering the gaps where there are no applicable rules and also covering situation where 'neither the statute nor the Rules are up to the task.'" *In re Cochener*, 360 B.R. 542, 569 (Bankr. S.D. Tex. 2007) (quoting *Chambers v. NASCO*, 501 U.S. 32, 50 (1991)).

14.     The Fifth Circuit has affirmed the bankruptcy court's power to issue sanctions under section 105 of the Bankruptcy Code, *see e.g. Placid Ref. Co. v. Terrebonne Fuel & Lube,* 108 F.3d 609 (5th Cir. 21997); and *Mooney v. Green Tree Serv., Inc.*, 340 B.R. 351 (Bankr. E.D. Tex. 2006).

15.     The Debtors understand Mr. Van Deelen's displeasure with the fact that the equity holders will not receive a distribution in this case.  The Debtors also believe that all parties to a case, even those out of the money, deserve to be treated with dignity and are entitled to due process

under the law.  Mr. Van Deelen has been treated with respect and was afforded that process. Regardless, Mr. Van Deelen's conduct, at absolute minimum, rises to the level of bad faith.  His conduct threatens violence against parties in the case and their families and is sanctionable under the Court's inherent power under section 105 of the Bankruptcy Code and pursuant to the Supreme Court's holding in *Chambers*.

### Prayer for Relief

16.     The Debtors ask this Court to order Mr. Van Deelen to appear and show cause why he should not be held in contempt of court and prohibited from further contact with the debtors, their current or former officers, directors, and employees, their counsel or other professionals and their families.

17.     The Debtors ask the Court to prohibit Mr. Van Deelen from contacting the Debtors, their current officers, directors, or employees, their counsel or other professionals, or any of their families in person or via telephone or electronic forms of communication and ask that this Court limit Mr. Van Deelen's contact to any such party to filings on the docket in these Cases.

### Emergency Consideration

18.     Pursuant to Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion.  Mr. Van Deelen has threatened physical violence against family members of counsel in these cases.  Mr. Van Deelen's conduct is continuing and unlikely to cease absent Court intervention.

### Notice

19.     The Debtors will provide notice of this motion to:  (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the United States Attorney's Office for the Southern District of Texas; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The

Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the an order for Mr. Van Deelen to appear and show cause why he should not be held in contempt of court and prohibited or enjoined from contacting the Debtors, their current and former officers, directors, and employees, and their counsel and other professionals except for through pleading on this docket and for any other relief to which the Debtors are justly entitled.

Houston, Texas
March 17, 2020

/s/ Matthew Cavenaugh
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:          mcavenaugh@jw.com
                jwertz@jw.com
                kpeguero@jw.com
                vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Anthony R. Grossi (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                christopher.greco@kirkland.com
                anthony.grossi@kirkland.com

-and-

James H.M. Sprayregen, P.C.
John R. Luze (admitted *pro hac* vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**Certificate of Service**

I certify that on March 17, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Matthew D. Cavenaugh*
Matthew D. Cavenaugh

**Exhibit A**

**Sussberg Affidavit**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | ) | Case No. 20-30336 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**AFFIDAVIT OF JOSHUA A. SUSSBERG
IN SUPPORT OF DEBTORS' EMERGENCY MOTION
FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE
SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM
FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL**

I, Joshua A. Sussberg, hereby declare under penalty of perjury:

1.      I am over the age of 18 and competent to testify.  I am the president of Joshua A. Sussberg, P.C., a partner of the law firm of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022, and a partner of Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively, "Kirkland").  I am one of the lead attorneys from Kirkland working on the above-captioned chapter 11 cases.  I am a member in good standing of the Bar of the State of New York, and I have been admitted to practice in the Southern District of New York.  There are no disciplinary proceedings pending against me.

2.      I submit this Affidavit (the "Affidavit") in support of the Debtors' *Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held in Contempt of Court and Prohibited From Further Contact with the Debtors, their Officers, or their*

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/McDermott.  The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

Counsel (the "Motion").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3.      I am authorized to submit this Affidavit, and, if I were called upon to testify, I could and would testify competently to the facts set forth herein.

**Interactions with Mr. Van Deelen**

4.      On March 12, 2020, the Court conducted a hearing on confirmation of the Debtors' plan of reorganization (the "March 12th Hearing"). During and after the March 12th Hearing, Michael Van Deelen made certain false, threatening, and vulgar remarks to me.

5.      Mr. Van Deelen made false and misleading statements about me, Kirkland, and the Debtors on the record during the March 12th Hearing. During his closing argument, Mr. Van Deelen suggested that the Debtors' chapter 11 plan of reorganization could contain a provision allowing either the Debtors or Kirkland to "come out to [his] house and shoot [him]." Mr. Van Deelen also falsely stated on the record that I threatened him. Mr. Van Deelen also referred to the Court as a "son of a bitch." These statements can be heard on the Court's audio recording of the March 12th Hearing.

6.      After the conclusion of the March 12th Hearing, Mr. Van Deelen waited outside of the restroom to confront me. Mr. Van Deelen first asked for my name. Mr. Van Deelen did not indicate why he was attempting to personally identify me. I responded to Mr. Van Deelen that it "didn't matter" what my name was. Mr. Van Deelen then called me a "pasty white fuck" and said "I'll have my way with your wife."

7.      On March 12, 2020, Mr. Van Deelen also sent me an email asking me to confirm our seating positions during the March 12th Hearing. A copy of this email is attached to this

---

2      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Affidavit as **Exhibit 1**. I believe this email was a further attempt by Mr. Van Deelen to personally identify me.

8.       In light of the statements on the record at the March 12th Hearing and herein, I believe Mr. Van Deelen's behavior is intended to threaten, harass, and intimidate me, the Debtors' officers, and our families. Accordingly, I support the relief sought in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 17, 2020                     */s/ Joshua A. Sussberg*
                                          Joshua A. Sussberg
                                          as President of Joshua A. Sussberg, P.C., as
                                          Partner of Kirkland & Ellis LLP; and as
                                          Partner of Kirkland & Ellis International LLP

## **Exhibit 1**

**Van Deelen Email**




Begin forwarded message:

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Date:** March 13, 2020 at 4:36:33 PM EDT
**To:** "Sussberg, Josh" <jsussberg@kirkland.com>
**Subject:** [EXT] March 12, 2020, Plan Confirmation Hearing for Debtor McDermott International (case number 20-30336)

Mr. Sussberg,

I was at the above hearing and represented myself as a Party In Interest who opposed the plan confirmation. You sat across the gap between the two conference tables at approximately arms length from me.  If you deny this, please forward said denial to me at your earliest convenience, but no later than 5:00 C.S.T. on Wednesday, March 18, 2020.

I recognize you from your picture on the Kirkland & Ellis website which is where I obtained your email address.

Regards,

Michael Van Deelen

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**Exhibit B**

**Spence Affidavit**

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | ) Case No. 20-30336 (DRJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**AFFIDAVIT OF STUART SPENCE
IN SUPPORT OF DEBTORS' EMERGENCY MOTION
FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE
SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM
FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL**

I, Stuart Spence, hereby declare under penalty of perjury:

1.     I am over the age of 18 and competent to testify.  I am the former Executive Vice President and Chief Financial Officer of McDermott International, Inc.

2.     I submit this Affidavit (the "<u>Affidavit</u>") in support of the Debtors' *Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held in Contempt of Court and Prohibited From Further Contact with the Debtors, their Officers, or their Counsel* (the "<u>Motion</u>").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3.     I am authorized to submit this affidavit, and, if I were called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/McDermott.  The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

## Interactions with Mr. Van Deelen

4.     At approximately 10:57 a.m. on February 27, 2020, Michael Van Deelen arrived at my private residence and knocked on the front door to my home.  Mr. Van Deelen's appearance was unannounced and I had never spoken to him or contacted him prior to February 27, 2020.  A photograph captured from my doorbell camera is attached hereto as Exhibit 1.

5.     Because I was on a conference call at the time, my wife answered the door.  Mr. Van Deelen spoke with my wife, purporting to do so to confirm he had my correct address for purposes of sending a subpoena.  Upon realizing the nature of Mr. Van Deelen's presence at our home, my wife became visibly shaken.

6.     Despite this interaction, I voluntarily testified at the hearing in the Debtors' chapter 11 cases on March 12, 2020.  In light of the statements on the record at that hearing and herein, I believe Mr. Van Deelen's behavior is intended to threaten, harass, and intimidate me.  Accordingly, I support the relief sought in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 17, 2020                                   */s/ Stuart Spence*
                                                       Stuart Spence

## Exhibit 1

**Doorbell Camera Photograph**





## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
|  | ) |  |
| **MCDERMOTT INTERNATIONAL, INC.,** *et al.,*[3] | ) | **Case No. 20-30336 (DRJ)** |
|  | ) |  |
| **Debtors.** | ) | **(Jointly Administered)** |
|  | ) | **(Emergency Relief Requested)** |

### ORDER TO SHOW CAUSE
### (Re: Docket No. _____)

Mr. Michael Van Deelen, Party-in-Interest, shall personally appear on _____ at

_____.m. in Courtroom 400, 4th Floor, 515 Rusk, Houston, TX 77002 and show cause why he

should not be held in contempt of court and prohibited from further contact with the Debtors, their

current and former officers, directors, and employees, and counsel and other professionals in these

Cases and their families.

Failure to appear at the time and date above will result in the Court issuing a bench warrant

for Mr. Van Deelen's arrest.

**Dated:** _____, 2020
**Houston, Texas**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

---

[3]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://cases.primeclerk.com/McDermott.  The location of Debtor McDermott
International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is
757 North Eldridge Parkway, Houston, Texas 77079.

APPENDIX 2

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

**MAR 18 2020**

David J. Bradley, Clerk of Court

|  |  |
|---|---|
| In re:<br><br>MCDERMOTT INTERNATIONAL, INC, *et al*<br><br>Debtor(s). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 20-30336<br><br>Chapter 11 |

### PARTY IN INTEREST MICHAEL VAN DEELEN'S RESPONSE TO EMERGENCY MOTION FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL; PROPOSED ORDER

COMES NOW, Michael D. Van Deelen, a Party In Interest in the instant action and for his Response to Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited from Further Contact With the Debtors, Their Officers, or Their Counsel states as follows:

1. Van Deelen did not call the Court a 'son of a bitch' as the movants claim in paragraph 7 of their emergency motion and in paragraph 5 of Exhibit A (Sussberg Affidavit). Van Deelen respectfully asks this Court to listen to that section of the audio in which movants claim Van Deelen calls the Court a 'son of a bitch' (3:19:29 - 3:21:20). Van Deelen was sitting just a few feet from the Court during the hearing. If Van Deelen would have called the Court a 'son of a bitch', the Court would certainly have heard him do so.

1



## The Law

2. Except for the falsely alleged profanity mentioned above, the other alleged improprieties claimed of by the movants are alleged to have taken place when Court was not in session, outside the courtroom and in violation of no Court order. The Court had no jurisdiction over Van Deelen under such circumstances.

3. The Court does not have jurisdiction of Van Deelen's private actions unrelated to the judicial proceedings under 11 U.S.C. 105(a). Section 105(a) authorizes the bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Code:

"The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code." *Gouveia v. Tazbir*, 37 F.3d 295, 301 (7th Cir. 1994) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)). Thus, courts may not use § 105 to create substantive rights unavailable under the Code. *See Taylor v. United States (In re Taylor)*, 263 B.R. 139 (N.D. Ala. 2001) (note: on appeal to 11th Cir.); *MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communications, Inc.)*, 262 B.R. 893, 899 (D. Del. 2001); *Waugh v. Eldridge (In re Waugh)*, 165 B.R. 450, 451 (Bankr. E.D. Ark. 1994); *see also In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 702 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d Cir. 1994) (§ 105 should be used sparingly and then only to supplement, not supplant, the Code).

4. The Court may not issue a contempt of court order for behavior which does not directly defy the Court or **which does not violate a previous court order**. (Note that Appendix A to the Local Rules of the Southern District of Texas deals with Courtroom Etiquette, not with behavior outside of the courtroom.)

5. The movants cite *Chambers v. NASCO*, 501 U.S. 32 (1991), in their argument that the Court can sanction Van Deelen, but do not inform this Court that *Chambers* has been superceded. There currently are no statutes, rules or procedures, either federal or local, which gives the Court the ability to sanction a party's behavior that does not

directly defy the sanctioning court or is beyond the confines of a court order. In *F.D.I.C. v. Maxxam, Inc.*, the district court in Texas sanctioned an attorney for misconduct that occurred in an administrative proceeding in Washington, D.C., a proceeding that was not overseen by the district court. 532 F.3d 566, 591 (5th Cir. 2008). Upon review, the Fifth Circuit held that the court's inherent power to sanction did not extend to the administrative hearing but rather only extended to situations in which "a party engages in bad-faith conduct [that directly defies] the sanctioning court." *Id.* at 591 (internal quotation marks omitted). Later, in *Positive Software Solutions, Inc. v. New Century Mortgage Corporation*, the Fifth Circuit, relying on its *Maxxam* decision, held that misconduct during arbitration was beyond the reach of the district court's inherent power, stating that the misconduct "was neither before the district court nor in direct defiance of its order." 619 F.3d 458, 461 (5th Cir. 2010).

6. The movants also cite *In re Cochener*, 360 B.R. 542, 569 (Bankr., S.D. Tex. 2007) (quoting *Chambers v. NASCO*, 501 U.S. 32 (1991)), *Placid Ref. Co. v. Terrebonne Fuel & Lube*, 108 F.3d 609 (5th Cir. 21997 (sic)) and *Mooney v. Green Tree Serv. Inc.* 340 B.R. 351 (Bankr. E.D. Tex. 2006) to support their claim that this Court can sanction Van Deelen. However, each of these cases involved actions inside the confines of the bankruptcy code or the violation of orders or procedures that the court had jurisdiction over and therefore do not apply to the instant case as seen above.



## The Allegations

### Mrs. Spence

7.  Van Deelen subpoenaed Mr. Stuart Spence to testify during the 3/12/20 Plan Confirmation Hearing. Van Deelen hired Ms. Lisa Moberg, a process server, to serve Mr. Spence. Mr. Spence accepted service on 2/19/20. Exhibit 1.

8.  In reviewing the Proof of Service, Van Deelen noticed that the description of Mr. Spence given by Ms. Moberg stated that he was 65 years old with white hair. Van Deelen called Ms. Moberg who confirmed the description of Mr. Spence.

9.  Van Deelen believed that Mr. Spence was in his early 50's and bald. Accordingly, Van Deelen thought that maybe the wrong person had been served, especially since the address of service was not the address given in public records as Mr. Spence's recent address. Van Deelen and Ms. Moberg tried several times to call Mr. Spence to ask if he was the right person be served. Mr. Spence did not answer his phone or return the calls.

10.  To avoid having possibly served the wrong person, Van Deelen went to the Proof of Service address and rang the bell. A middle-aged lady answered the bell. Van Deelen politely asked if Mr. Stuart Spence was home. The lady said 'no'. Van Deelen then **apologetically and very politely** told the lady that he had had a summons issued to Mr. Spence at that address and that Van Deelen was afraid the wrong person may have been served. Van Deelen then politely asked the lady if Mr. Stuart Spence lived there. She said 'yes'. Van Deelen then politely asked the lady if Mr. Spence had worked at McDermott. She replied 'yes'. At that point, Van Deelen apologized for having bothered the lady and left.

4

11. At no time during the encounter with the lady was Van Deelen disrespectful. Van Deelen never raised his voice. The lady never refused to answer Van Deelen's questions. If the lady would have asked Van Deelen to leave, he would have immediately done so. Mrs. Spence has not presented an affidavit on behalf of the movants' claims that alleges any wrongdoing by Van Deelen.

12. It was within Van Deelen's civil rights to speak to Mrs. Spence. The Court had not previously directed Van Deelen to stay away from Mr. or Mrs. Spence. In fact, the Court declined to hear Van Deelen's explanation of what had occurred with Mrs. Spence when Van Deelen proffered testimony concerning their interaction during the 3/12/20 Plan Confirmation Hearing.

13. If Mr. Spence would have answered his phone or returned Ms. Moberg's or Van Deelen's calls, Van Deelen would not have had to go to his residence to see if he was the right person to have been served.

**Mr. Sussberg**

14. During the 3/12/20 hearing, a person now known as Mr. Sussberg sat directly across the isle between the two conference tables from Van Deelen.

15. Through Van Deelen's objection, the Debtor witnesses were made to testify in person instead of having their written statements adopted into the record. This was time consuming. As the witnesses testified and time proceeded, Van Deelen noticed Mr. Sussberg becoming more and more agitated. Finally, Mr. Sussberg, without any cue from Van Deelen, said to Van Deelen and all who could hear: "You are disgusting!" and other insults. Van Deelen looked at him and told him to be quiet. The Court heard this

exchange because the record will show that the Court told Mr. Sussberg and Mr. Van Deelen to 'hold it down' or words to that effect.

16. After the hearing, Van Deelen did not follow Mr. Sussberg anywhere, including the restroom. Like many at the end of the long hearing, Van Deelen needed to use the restroom. As Van Deelen was entering the restroom, Mr. Sussberg was leaving the restroom. Due to the unprofessional behavior exhibited by Mr. Sussberg towards Van Deelen during the hearing as detailed above, Van Deelen wanted to determine Mr. Sussberg's name so he could make a formal complaint against him. Mr. Van Deelen said to Mr. Sussberg: 'May I have your name, sir?" Mr. Sussberg angrily refused to give Van Deelen his name. Instead, Mr. Sussberg again told Van Deelen: "You are disgusting!" He also told Van Deelen other things including: "You are a fool!" Mr. Sussberg is a young, stocky, man. Van Deelen is a 70 year-old senior citizen. Mr. Sussberg's words, tenor and posture caused Van Deelen to be afraid for his safety. Van Deelen began to have heart palpitations and he remained near the restroom while Sussberg left and went down the hallway towards the elevators. All of a sudden, Sussberg came rushing back down the hallway and towards the restroom area where Van Deelen was and angrily charged Van Deelen. Mr. Sussberg then began calling Van Deelen names again. Mr. Sussberg stood only inches away from Van Deelen, shouting at Van Deelen. Van Deelen was terrified by Mr. Sussberg's actions.  Mr. Sussberg eventually left and again went down the hallway towards the elevators.

17. Van Deelen, terribly frightened, remained in the restroom area for a period of time until he hoped Mr. Sussberg had left. Eventually Van Deelen looked down the hall toward the elevators and saw that Mr. Sussberg had in fact left. Van Deelen was

extremely frightened and upset. So upset, in fact, that he could not locate his vehicle in the parking garage near the courthouse that he had used many times before. Van Deelen had to ask a garage employee for assistance in finding his car.

18. At no time did Van Deelen call Mr. Sussberg a 'pasty white fuck' or say 'I will have my way with your wife'. That Van Deelen would say those things is incredibly insulting and beyond belief.

19. Mr. Sussberg's comments to Van Deelen, of which he fails to inform the Court, violate Rule 14 of the Court's Rules of Etiquette:

*Avoid disparaging remarks and acrimony towards anyone, especially adverse parties and counsel, and discourage ill-will between the litigants. Counsel must abstain from unnecessary references to opposing counsel, especially peculiarities.*

20. The Court will note that, even though there were many persons who had attended the hearing within earshot from Sussberg and Van Deelen, Sussberg does not mention their names or produce affidavits from them substantiating his (false) account of his interaction with Van Deelen.

21. Still trying to determine Mr. Sussberg's identity, Van Deelen found Mr. Sussberg's photo on the Kirkland and Ellis website. Van Deelen then sent Mr. Sussberg an email stating that Van Deelen had identified him from the Kirkland and Ellis website. In an abundance of caution, even though Van Deelen recognized him from his photo, Van Deelen wanted to give Mr. Sussberg the opportunity to deny that he was the one sitting across from Van Deelen during the 3/12/20 hearing. (It was the Kirkland and Ellis employee sitting across from Van Deelen who told Van Deelen and others: "You [Van Deelen] are disgusting!") The email is respectful and contains no threatening language.

22. If Mr. Sussberg would have given Van Deelen his name when Van Deelen politely asked for it after the hearing, Van Deelen would not have had to email Mr. Sussberg.

23. Please see Exhibit 2, Van Deelen Affidavit.

**Other**

24. Paragraph 10 of the movants' Emergency Motion states that Van Deelen was sanctioned by the District Court in *Michael Van Deelen v. City of Kansas City, Missouri,* 2006 WL 2077640 (W.D. Mo. 2006). This was a non-bankruptcy case. What the movants fail to tell this Court is that a significant amount of the sanctions were overturned on appeal. Van Deelen has never fabricated evidence and he never will. On the other hand, the movants have fabricated evidence to support their Emergency Motion, including when they claim that Van Deelen called the Court a 'son of a bitch' during the Plan Confirmation Hearing. Exhibit 2, Van Deelen Affidavit.

25. Paragraph 18 of the movants' Emergency Motion claims that "Mr. Van Deelen has threatened physical violence against family members of counsel in these cases." This statement is unsupported by any facts other than the false allegation that Van Deelen allegedly said that he was going to 'have his way' with Mr. Sussberg's wife. The paragraph 18 statement states 'violence against family *members* (plural) *of counsel* (plural) *in these cases'* (plural). What family members? What counsel? What cases? The egregious manufacturing of false evidence by the movants in their Emergency Motion is beyond the pale. Van Deelen has never threatened violence against family members of counsel or other persons in any case he has been involved with. Exhibit 2, Van Deelen Affidavit.

26.  What is going on here?  It is no secret that Van Deelen plans to file suit against McDermott employees in Texas state court for their malfeasance relating to McDermott's bankruptcy and the events leading up thereto.  Other shareholders have indicated they may also file suit.  Van Deelen believes that the movants' Emergency Motion is an attempt to prevent Van Deelen from filing suit by having this Court enjoin him from doing so.

## Summary

27.  The movants apparently seek sanctions against Van Deelen for the following reasons:

A.  Van Deelen allegedly called the Court a 'son of a bitch' during the Plan Confirmation hearing held on 3/12/20.  This false allegation can be easily refuted by listening to the 3/12/20 audio clip from the Plan Confirmation hearing (time stamp 3:19:29 - 3:21:20).

B.  Van Deelen filed numerous documents in the instant action, which was his Constitutional right.

C.  Van Deelen was sanctioned by a Missouri District Court in 2006.  Not only was a significant portion of the sanction overturned on appeal, but a single resolved non-bankruptcy case from 14 years ago has no bearing on the instant action,

D.  After being unable to contact Mr. Spence by phone, Van Deelen went to Mr. Spence's believed residence, was told by his wife that Mr. Spence was not home, and then respectfully spoke to Mr. Spence's wife for the purpose of dismissing Mr. Spence from the subpoena he had been served if he was not the correct person to have been served.

9

E. After Mr. Sussberg refused to give Van Deelen his name when Van Deelen asked him for it during the 3/12/20 Plan Confirmation Hearing, Van Deelen sent Mr. Sussberg a respectful, non-threatening, email seeking to confirm if Mr. Sussberg was the person seated across from him during the 3/12/20 Plan Confirmation Hearing.

F. The movants allege, without any facts or proof, that "Mr. Van Deelen has threatened physical violence against family members (plural) of counsel (plural) in these cases (plural)."

G. Mr. Sussberg has falsely alleged that Van Deelen called him a 'pasty white fuck' and said 'I will have my way with your wife' after the 3/12/20 Plan Confirmation Hearing had been adjourned. Even though many people were milling around after the hearing, Mr. Sussberg does not produce one affidavit from a single witness (other than himself) discussing Van Deelen's alleged bad behavior. Not only are his allegations patently false, but also Mr. Sussberg conveniently failed to tell the Court that he had violated the Court's rules of etiquette when told Van Deelen "You are disgusting!" during the 3/12/20 Plan Confirmation Hearing and after it had been adjourned; that he had told Van Deelen "You are a fool!" after the 3/12/20 Plan Confirmation Hearing had been adjourned; that he had angrily and physically charged Mr. Van Deelen, stopping just inches from Van Deelen's person after the 3/12/20 Plan Confirmation Hearing had been adjourned; and that he had refused to give Van Deelen his name when Van Deelen politely asked for it after the 3/12/20 Plan Confirmation Hearing had been adjourned.

28. Van Deelen has attempted to contact the movants to resolve their Emergency Motion without the need for a hearing. The movants have not returned the message left with the movants' assistant. Exhibit 2, Van Deelen Affidavit.

WHEREFORE, for the reasons discussed herein, Van Deelen respectfully

requests that this Court deny in its entirety the movants' Emergency Motion for Michael

Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of

Court and Prohibited from Further Contact With the Debtors, Their Officers, or Their

Counsel.

Houston, Texas

March 18, 2020

                                        Respectfully submitted,

                                        Michael Van Deelen
                                        Party In Interest
                                        16215 Friar Circle
                                        Spring, TX 77379
                                        832-562-0723
                                        michaelvandeelen@gmail.com


## CERTIFICATE OF SERVICE

I, Michael Van Deelen, do hereby certify that I caused a copy of the foregoing document,

including Proposed Order, to be served by the Electronic Case Filing System for the

United States Bankruptcy Court for the Southern District of Texas on this 18th day of

March, 2020.

                                        Michael Van Deelen
                                        16215 Friar Circle
                                        Spring, TX 77379
                                        832-562-0723
                                        michaelvandeelen@gmail.com

# EXHIBIT 1

## SPENCE PROOF OF SERVICE



... Appear and Testify at a Hearing or Trial in a Bankruptcy Case or Adversary Proceeding) (Page 2)

# PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*:   **STUART SPENCE**

on *(date)* **Feb. 18, 2020** .

☑ I served the subpoena by delivering a copy to the named person as follows:   **STUART SPENCE**

_____ on *(date)* **Wed., Feb. 19, 2020** ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ **71.00**

My fees are $ _____ for travel and $ _____ for services, for a total of $ **75.00** .

I declare under penalty of perjury that this information is true and correct.

Date: **February 19, 2020**

_____
*Server's signature*

**LISA G. MOBERG, PSC#12076**
*Printed name and title*

**4806 W. Walnut St.**
**Pearland, Texas 77581**
*Server's address*

Additional information concerning attempted service, etc.:

1) Successful Attempt: Feb 19, 2020 @ 8:23 p.m. CST at HOME: ███████████, ███████████
received by STUART SPENCE, Age: 65; Ethnicity: Caucasian; Gender: Male; Weight: 220; Height: 6'1"; Hair: White
I personally and successfully served STUART SPENCE, who willingly accepted service without incident at the listed
address.



# UNITED STATES BANKRUPTCY COURT

_____ Southern _____       District of _____ Texas, Houston Division _____

In re  McDermott International, Inc., et al.
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. _____ 20-30336 _____

Chapter _____ 11 _____

_____
Plaintiff

v.

_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Stuart Spence
_____
*(Name of person to whom the subpoena is directed)*

■ **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the time, date, and place set forth below to testify at a hearing or trial in this bankruptcy case (or adversary proceeding). When you arrive, you must remain at the court until the judge or a court official allows you to leave.

| PLACE | COURTROOM | 400 |
|---|---|---|
| U.S. Bankruptcy Court 515 Rusk St., Houston, TX | DATE AND TIME 03/12/20 | 9:00 A.M. |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable):*

_____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  02/18/20
_____

CLERK OF COURT

_____          OR          _____
Signature of Clerk or Deputy Clerk                              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Michael Van Deelen (party)_____ , who issues or requests this subpoena, are:

6014 Capella Park Drive, Spring, TX; michaelvandeelen@gmail.com; 832-562-0723

_____

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

14

EXHIBIT 2

VAN DEELEN AFFIDAVIT

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 20-30336 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Chapter 11 |
| Debtor(s). | ) | |
| | ) | |
| | ) | |

## AFFIDAVIT OF MICHAEL VAN DEELEN IN SUPPORT OF HIS RESPONSE TO EMERGENCY MOTION FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, personally appeared Michael Van Deelen, who, being by me duly sworn and deposed, stated the following:

"My name is Michael Van Deelen, I am over 21 years of age, of sound mind, capable of making this Affidavit, and have personal knowledge of the facts stated herein. In the following, I refer to myself as 'Van Deelen':

1. Van Deelen did not call the Court a 'son of a bitch' during the 3/12/20 Plan Confirmation Hearing in the instant action or at any other time. Van Deelen was sitting just a

few feet from the Court during the hearing. If Van Deelen would have called the Court a 'son of a bitch', he believes the Court would certainly have heard him do so.

2. Van Deelen subpoenaed Mr. Stuart Spence to testify during the 3/12/20 Plan Confirmation Hearing in the instant action. Van Deelen hired Ms. Lisa Moberg, a process server, to serve Mr. Spence. Mr. Spence accepted service on 2/19/20.

3. In reviewing the Proof of Service, Van Deelen noticed that the description of Mr. Spence given by Ms. Moberg stated that he was 65 years old with white hair. Van Deelen called Ms. Moberg who confirmed the description of Mr. Spence.

4. Van Deelen believed that Mr. Spence was in his early 50's and bald. Accordingly, Van Deelen thought that maybe the wrong person had been served, especially since the address of service was not the address given in public records as Mr. Spence's recent address. Van Deelen and Ms. Moberg tried several times to call Mr. Spence to ask if he was the right person to be served. Mr. Spence did not answer his phone or return the calls.

5. To rectify having possibly served the wrong person, Van Deelen went to the Proof of Service address and rang the bell. A middle-aged lady answered the bell. Van Deelen politely asked if Mr. Stuart Spence was home. The lady said 'no'. Van Deelen then **apologetically and very politely** told the lady that he had had a summons issued to Mr. Spence at that address and that Van Deelen was afraid the wrong person may have been served. Van Deelen then politely asked the lady if Mr. Stuart Spence lived there. She said 'yes'. Van Deelen then politely asked the lady if Mr. Spence had worked at McDermott. She replied 'yes'. At that point, Van Deelen apologized for having bothered the lady and left.

17

6. At no time during the encounter with the lady was Van Deelen disrespectful. Van Deelen never raised his voice. The lady never refused to answer Van Deelen's questions. If the lady would have asked Van Deelen to leave, he would have immediately done so.

7. The Court in the instant action had not previously directed Van Deelen to stay away from Mr. or Mrs. Spence. In fact, the Court declined to hear Van Deelen's explanation of what had occurred with Mrs. Spence when Van Deelen proffered testimony concerning their interaction during the 3/12/20 Plan Confirmation Hearing.

8. If Mr. Spence would have answered his phone or returned Ms. Moberg's or Van Deelen's calls, Van Deelen would not have had to go to his residence to see if he was the right person to have been served.

9. During the 3/12/20 hearing, a person now known as Mr. Sussberg sat directly across the isle between the two conference tables from Van Deelen.

10. At the 3/12/20 hearing, through Van Deelen's objection, the Debtor witnesses were made to testify in person instead of having their written statements adopted into the record. This was time consuming. As the witnesses testified and time proceeded, Van Deelen noticed Mr. Sussberg becoming more and more agitated. Finally, Mr. Sussberg, without any cue from Van Deelen, said to Van Deelen and all who could hear: "You are disgusting!" and other insults. Van Deelen looked at him and told him to be quiet. The Court heard this exchange because the record will show that the Court told Mr. Sussberg and Van Deelen to 'hold it down' or words to that effect.

11. After the hearing, Van Deelen did not follow Mr. Sussberg anywhere, including the restroom. Like many at the end of the long hearing, Van Deelen needed to use the restroom. As Van Deelen was entering the restroom, Mr. Sussberg was leaving the restroom. Due to the

unprofessional behavior exhibited by Mr. Sussberg towards Van Deelen during the hearing as detailed above, Van Deelen wanted to determine Mr. Sussberg's name so he could make a formal complaint against him. Van Deelen said to Mr. Sussberg: 'May I have your name, sir?" Mr. Sussberg angrily refused to give Van Deelen his name. Instead, Mr. Sussberg again told Van Deelen: "You are disgusting!" He also told Van Deelen other things including: "You are a fool!" Mr. Sussberg is a young, stocky, man. Van Deelen is a 70 year-old senior citizen. Mr. Sussberg's words, tenor and posture caused Van Deelen to be afraid for his safety. Van Deelen began to have heart palpitations and he remained near the restroom while Sussberg left and went down the hallway towards the elevators. All of a sudden, Sussberg came rushing back down the hallway and towards the restroom area where Van Deelen was and angrily charged Van Deelen. Mr. Sussberg then began calling Van Deelen names again. Mr. Sussberg stood only inches away from Van Deelen, shouting at Van Deelen. Van Deelen was terrified by Mr. Sussberg's actions. Mr. Sussberg eventually left and again went down the hallway towards the elevators.

12.  Van Deelen, terribly frightened, remained in the restroom area for a period of time until he hoped Mr. Sussberg had left. Eventually Van Deelen looked down the hall toward the elevators and saw that Mr. Sussberg had in fact left. Van Deelen was extremely frightened and upset. So upset, in fact, that he could not locate his vehicle in the parking garage near the courthouse that he had used many times before. Van Deelen had to ask a garage employee for assistance in finding his car.

13.  At no time did Van Deelen call Mr. Sussberg a 'pasty white fuck' or say 'I will have my way with your wife'. That Van Deelen would say those things is incredibly insulting and beyond belief.

4

19

14. Still trying to determine Mr. Sussberg's identity, Van Deelen found Mr. Sussberg's photo on the Kirkland and Ellis website. Van Deelen then sent Mr. Sussberg an email stating that Van Deelen had identified him from the Kirkland and Ellis website. In an abundance of caution, even though Van Deelen recognized him from his photo, Van Deelen wanted to give Mr. Sussberg the opportunity to deny that he was the one sitting across from Van Deelen during the 3/12/20 hearing. (It was the Kirkland and Ellis employee sitting across from Van Deelen who told Van Deelen and others: "You [Van Deelen] are disgusting!") The email is respectful and contains no threatening language.

15. If Mr. Sussberg would have given Van Deelen his name when Van Deelen politely asked for it after the hearing, Van Deelen would not have had to email Mr. Sussberg.

16. Van Deelen was sanctioned by the District Court in *Michael Van Deelen v. City of Kansas City, Missouri*, 2006 WL 2077640 (W.D. Mo. 2006). This was a non-bankruptcy case. The sanctions were reduced significantly on appeal. Van Deelen has never fabricated evidence and he never will.

17. Van Deelen has never threatened violence against family members of counsel or other persons in any case he has been involved with.

18. Van Deelen has attempted to contact the movants to resolve their Emergency Motion (Document 694) without the need for a hearing. The movants have not returned the message left with the movants' assistant.

20

Further Affiant sayeth not."

Michael Van Deelen
Affiant


SUBSCRIBED AND SWORN TO BEFORE ME ON THE 18th day of March, 2020.


Notary Public, State of Texas

William Phongdara
(Print or Type Name)

My Commission Expires: 04/24/2022

WILLIAM PHONGDARA
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 04/24/22
NOTARY ID 13154754-8

21

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) |
|  | ) |
| Debtor(s). | ) |
|  | ) |

Case No. 20-30336

Chapter 11

# ORDER

On _____, 2020, a hearing was held concerning the Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited from Further Contact With the Debtors, Their Officers, or Their Counsel. It is

ORDERED that the Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited from Further Contact With the Debtors, Their Officers, or Their Counsel is denied in its entirety.

Houston, Texas

Dated: _____, 2020

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

APPENDIX 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
03/23/2020

IN RE:                                    §
                                          §      **CASE NO: 20-30336**
**MCDERMOTT INTERNATIONAL, INC.,** *et*  §      **CHAPTER 11**
*al.*,                                     §      **(Jointly Administered)**
                                          §
   **Debtors.**                            §      **DAVID R. JONES**

### ORDER
### (Docket No. 694)

The Court has reviewed the Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not be Held in Contempt and Prohibited from Further Contact with the Debtors, their Officers, or their Counsel [Docket No. 694]. The Court has also reviewed Mr. Van Deelen's response to the motion [Docket No. 701]. Since the filing of the motion, the Court is aware that Mr. Van Deelen came back to the courthouse to file a complaint against Debtors' counsel on the basis of an alleged threat made at or after the confirmation hearing in this case[1]. In addition, the Court has reviewed Mr. Van Deelen's conduct in other hearings before the Court in this case.

The focus of the emergency motion surrounds the recent confirmation hearing held in this case on March 12, 2020. During the hearing, Mr. Van Deelen is alleged to have made certain disparaging remarks about the Court as well as threats toward Debtors' counsel. Mr. Van Deelen denies that he made any disparaging remarks toward the Court and asserts that any threats toward counsel were made outside the courtroom and therefore outside the Court's jurisdiction. Mr. Van Deelen further asserts that he made no such threats.

In the movants' motion, it is alleged that Mr. Van Deelen called the Court a "son of a bitch." Mr. Van Deelen denies that he made any such remark and that he was "sitting just a few feet from the Court during the hearing . . . [and] [i]f Van Deelen would have called the Court a "son of a bitch", the Court would certainly have heard him do so." Mr. Van Deelen's denial is set forth in his sworn affidavit attached to his response [Docket No. 701]. Unfortunately for Mr. Van Deelen, the Court's staff did hear Mr. Van Deelen's statement and immediately reported it to chambers. Moreover, although Mr. Van Deelen was facing away from the microphones located on counsel table, Mr. Van Deelen's statement is audible on the original audio with headphones. While the Court was willing to overlook the insult, it cannot overlook a false statement.

The motion goes on to allege that Mr. Van Deelen made vulgar and threatening comments to Mr. Sussberg and his family. Mr. Van Deelen denies under oath that any such comments were made. Given that Mr. Van Deelen has demonstrated the propensity to make

---

[1]  When the courthouse security officer offered to take the complaint, Mr. Van Deelen declined to make an official report and left the building.

1 / 2

false statements under oath, the Court has grave concerns about Mr. Van Deelen's affidavit and gives it little weight under the circumstances. Moreover, given Mr. Deelen's prior conduct before the Court and reference to "shooting" during the confirmation hearing, the Court has concerns about Mr. Van Deelen's mental stability. The Court concludes that Mr. Van Deelen poses a legitimate risk to the safety of courthouse staff and litigants that oppose his position.

Mr. Van Deelen goes to great length to assert that the Court cannot sanction him for his conduct outside the courtroom and that no court order has been entered that he violated. Mr. Van Deelen is correct in that statement. However, the Court has the authority and the duty to protect those parties that appear before it. Further, the Court has a duty to ensure that the federal courthouse is a place of safety and order for all persons who enter. Accordingly, it is

**ORDERED THAT:**

1.      Michael D. Van Deelen is prohibited from contacting the Court and its staff by any means. Any communication to the Court or its staff must be made in writing and filed with the Clerk of the Court.

2.      Michael D. Van Deelen is prohibited from contacting Joshua Sussberg or any member of his family in any manner. Should Mr. Sussberg find it necessary to seek the assistance of law enforcement officials to protect his family and enforce this order, the Court requests that upon presentation of a copy of this order and a determination that a violation of this paragraph has occurred, such law enforcement officials should detain Mr. Van Deelen and transfer him to this Court for further proceedings.

3.      A copy of this Order shall be delivered to the United States Marshal for further investigation of Mr. Van Deelen's conduct. Further, Mr. Van Deelen may not enter the federal courthouse except with the escort of a court security officer.

4.      A copy of this Order shall be delivered to the United States Attorney for investigation of Mr. Van Deelen's conduct in this case.

5.      The request for sanctions is denied.

6.      Should Mr. Van Deelen wish to seek relief from this order or request a hearing, he may do so by pleading filed within fourteen days.

7.      This order is effective upon entry.

**SIGNED: March 23, 2020.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

APPENDIX 4

United States Courts
Southern District of Texas
F I L E D

MAR 24 2020

David J. Bradley, Clerk of Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

In re:                                              )
                                                    )
                                                    )        Case No. 20-30336
MCDERMOTT INTERNATIONAL, INC, *et al*   )
                                                    )        Chapter 11
             Debtor(s).                             )
                                                    )
                                                    )

## PARTY IN INTEREST MICHAEL VAN DEELEN'S REQUEST FOR HEARING; PROPOSED ORDER

In its Order (Docket 719) entered on 3/23/20, the court notified Party In Interest

Michael Van Deelen that he could request a hearing within 14 days of the entry of the

Order.  Plaintiff accordingly requests the earliest possible hearing date and time

consistent with the court's Order.

Van Deelen will seek, among other things, clarification of the following during

the hearing:

A.  The exact section of the audio made during the 3/12/20 Plan Confirmation

Hearing in which the court claims Van Deelen called him a son-of-a-bitch.  Plaintiff

further requests that the court play said portion of the audio during the hearing.

B.  Clarification on whether or not the court is ordering that Van Deelen is

prohibited from filing a civil lawsuit for assault and possibly other causes of action

against Joshua Sussberg in Harris County District Court.

C.  Clarification on whether or not the court is ordering that Van Deelen is prohibited from filing a federal civil rights lawsuit against David R. Jones.

D.  Clarification on the exact dates, times, places and circumstances in which Van Deelen has been disrespectful to court personnel.

E.  Clarification on the qualifications and training the court has in diagnosing mental health issues.

F.  Clarification on whether or not the court has ever heard Van Deelen say he was going to shoot someone.  If the court claims it has ever heard Van Deelen say he was going to shoot someone, provide clarification on the exact dates, times, places and circumstances under which the court heard Van Deelen say those words.

Houston, Texas

March 23, 2020

Respectfully submitted,

Michael Van Deelen
Party In Interest
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

2

## CERTIFICATE OF SERVICE

I, Michael Van Deelen, do hereby certify that I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on this 23rd day of March, 2020.

Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

In re:　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　Case No. 20-30336
MCDERMOTT INTERNATIONAL, INC, *et al*　)
　　　　　　　　　　　　　　　　　)　　Chapter 11
　　　　　　　　Debtor(s).　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)

# ORDER

On _____, 2020, a hearing was held concerning clarification of the court's Order (Docket 719) entered on 3/23/20.

It is accordingly

ORDERED that :

A. The exact section of the audio made during the 3/12/20 Plan Confirmation Hearing in which the court claims Van Deelen called him a son-of-a-bitch is _____.  The requested portion of the audio was/was not played during the hearing.

B. Van Deelen is not prohibited from filing a civil lawsuit for assault and possibly other causes of action against Joshua Sussberg in Harris County District Court.

C. Van Deelen is not prohibited from filing a federal civil rights lawsuit against David R. Jones.

D. The exact dates, times, places and circumstances in which Van Deelen has been disrespectful to court personnel are as follows:

E.  The court has no qualifications or training in diagnosing mental health issues.

F.  The court has never heard Van Deelen say that Van Deelen was going to shoot

someone.

Houston, Texas

Dated: _____, 2020


_____

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

APPENDIX 5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
04/20/2020

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-30336 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*, | § | CHAPTER 11 |
| | § | (Jointly Administered) |
| Debtors. | § | DAVID R. JONES |
| | § | |

## ORDER
### (Docket No. 723)

In its order entered March 23, 2020 concerning Michael D. Van Deelen, the Court provided in paragraph 6 of the order that if Mr. Van Deelen wished to seek relief from the March 23, 2020 order or request a hearing, he could do so by filing a pleading within 14 days of the order's entry date (Docket No. 719). The intent of the paragraph was to ensure that no ambiguity existed in terms of the Court's directives to Mr. Van Deelen and that a proper balance was achieved between public safety and court access.

On March 24, 2020, Mr. Van Deelen filed a pleading requesting a hearing (Docket No. 723). In his pleading, Mr. Van Deelen identifies six topics for which he seeks "clarification." No other relief is sought. The pleading does nothing more than seek to disrupt further the legitimate ends of the bankruptcy process and has no legitimate purpose. The request for hearing is denied.

SIGNED: April 20, 2020.

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE